## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 18-CR-368** |
| | § | |
| **BRIAN SWIENCINSKI,** | § | |
| **SCOTT BREIMEISTER, and** | § | |
| **VLADIMIR REDKO, M.D.,** | § | |
| | § | |
| **Defendants.** | § | |

## UNITED STATES' RESPONSE IN OPPOSITION
## TO DEFENDANT BRIAN SWIENCINSKI'S MOTION TO COMPEL AN ELECTION AMONG THE THREE MULTIPLICITOUS CONSPIRACY COUNTS AND DISMISS AND STRIKE THE UNELECTED COUNTS

Brian Swiencinski's Motion to Compel an Election Among the Three Multiplicitous Conspiracy Counts and Dismiss and Strike the Two Unelected Counts, Dkt. No. 39, should be denied because the charged conspiracies do not implicate Double Jeopardy concerns for several reasons. First, the healthcare and mail fraud conspiracy in Count 1 is distinct from the conspiracies to make false statements in healthcare matters in Count 3 and to violate the Anti-Kickback Statute in Count 7, and trying the Defendant for all three conspiracies does not implicate double jeopardy concerns. Nor is the kickback conspiracy in Count 7 a lesser included offense of the healthcare and mail fraud scheme. Second, the separate conspiracies in Count 3 and 7 charged under the general conspiracy statute, 18 U.S.C. § 371, encompass two different agreements. There is no multiplicity issue in the Indictment as charged, and the United States respectfully requests that this Court deny the Defendant's Motion.

## BACKGROUND

On June 27, 2018, a Grand Jury returned a nine-count Indictment charging the Defendant in Count 1 with conspiracy to commit healthcare fraud and mail fraud, in violation of 18 U.S.C.

§ 1349 ("the healthcare and mail fraud conspiracy"); in Count 2 with healthcare fraud, in violation of 18 U.S.C. § 1347; in Count 3 with conspiracy to make false statements relating to healthcare matters, in violation of 18 U.S.C. § 371 ( "the false statements conspiracy"); in Count 7 with conspiracy to pay and receive kickbacks, in violation of 18 U.S.C. § 371 ("the kickback conspiracy"); in Count 8 with engaging in a monetary transaction in property derived from specified unlawful activity, in violation of 18 U.S.C. §§ 1957 and 2; and in Count 9 with witness tampering, in violation of 18 U.S.C. § 1512(b)(3).  The charges arise out of the Defendant and his coconspirators' conduct related to a group of pharmacies located in the greater Houston area that purported to dispense compounded drugs.

As listed above, the Indictment charges three separate conspiracies, which are summarized as follows.

### Count 1: The Dual Object Wire Fraud and Healthcare Fraud Conspiracy

The Defendant and his coconspirators Scott Breimeister and physician Vladimir Redko, along with other unnamed individuals owned and operated several mail-order pharmacies in the Houston area.  Dkt. No. 1 ¶ 30.  The pharmacies formulated compounded drugs based on formulas that were designed to maximize insurance reimbursements, rather than based on individualized patient need.  *Id.* ¶ 32.  To market the expensive compounds, the Defendant and his coconspirators utilized a network of Sales Representatives to market the drugs in many states across the country.  *Id.* ¶ 33.  The Sales Representatives—including the Defendant—were paid a commission for each prescription they referred to the pharmacies that insurance reimbursed.  *Id.* ¶ 34.  In addition to marketing the compounded drugs to physicians to encourage them to write prescriptions for them, the Defendant also instructed Sales Representatives to sign up themselves and their families for these expensive compounds, many of which were not medically necessary,

2

not provided, or were based on a prescription that was invalid.  *Id.* ¶¶ 37–39.   Often, prescriptions were invalid because the physician—including codefendant Vladimir Redko—did not actually see or treat the patient being prescribed the medications.  *Id.* ¶ 38.  And the pharmacies often failed to collect copayments as many of the insurance companies, including TRICARE and Medicare, required.  *Id.* ¶ 40.  When the insurance companies confronted the pharmacies, providers, and patients about such prescriptions, the Defendant and his coconspirators lied to the insurance companies.  *Id.* at ¶ 42.

Additionally, rather than the patient's need driving the prescriptions, the Defendant and other Sales Representatives often instructed prescribers to authorize prescriptions for compounded drugs that patients did not need or request.  *Id.* at ¶ 35.  To incentivize those prescribers, the pharmacies paid physicians in one of several ways, including through a "Share Program," in which physicians could "invest" in the pharmacies and would soon receive a high-yield return on their investment, as well as through kickbacks to physicians and Sales Representatives that sometimes were paid in violation of the Anti-Kickback Statute.  *Id.* at ¶ 36.

The pharmacies mostly mailed the filled prescriptions for the compounded drugs to the recipients, although many times the recipients resided in states where the pharmacies or the physicians were not licensed.  *Id.* ¶ 41.  To get around the licensing issues, the pharmacies often mailed packages for out-of-state patients to the Defendant's personal residence in Dallas, Texas, and the Defendant occasionally failed to deliver the compounds to the patient.  *Id.*

Between around 2013 and around 2017, the pharmacies billed private and government insurance for compounded drugs that were often medically unnecessary, not provided, based on invalid prescriptions, or predicated on payoffs or illegal kickbacks.  *Id.* ¶¶ 43–44.  The insurance

companies—both private and government—collectively paid at least approximately $100 million on claims for compounded drugs.  *Id.* ¶ 44.

### Count 3: The False Statement Conspiracy

In February 2015, Express Scripts, an insurance company, audited several prescriptions that defendant Vladimir Redko, who practiced out of Houston, Texas, purportedly wrote for patients who lived in Ohio.  *Id.* ¶ 53.  One of those patients was Sales Representative James Buckingham, whom the Defendant had recruited to become a Sales Representative for the pharmacies.  *Id.*  Through a series of e-mails and communications, the Defendant and his coconspirators instructed Buckingham and, by extension, the patients Buckingham referred to the pharmacies, to falsify answers that would be sent to Express Scripts in response to the audit. *Id.*  Over a year later, Express Scripts questioned Vladimir Redko about those same patients, and Dr. Redko provided false information to Express Scripts about seeing the patients in question— all of whom lived in Ohio and had never been seen or treated by Dr. Redko.  *Id.*

### Count 7: The Kickback Conspiracy

The Indictment alleges that the Defendant and his coconspirators agreed to pay or receive illegal kickbacks and bribes in exchange for the referral of patients covered by government health insurance programs, including Medicare, TRICARE, and Workers' Compensation.  *Id.* ¶ 58.

During the course of the conspiracy, Pharms, LLC—the parent company that managed the pharmacies the Defendant and his coconspirators owned or operated—and the Defendant himself paid Sales Representatives and prescribers on prescriptions that were reimbursed by Medicare, TRICARE, and other government insurance.  *Id.* ¶¶ 58, 60.  The Indictment lists

several specific instances of $100,000-plus payments to Sales Representatives, Physician 2, and

Physician 3, during the course of the conspiracy.  *Id.* ¶ 60

## LEGAL STANDARD

A multiplicitous indictment charges a single offense in multiple counts.  *United States v.*

*Lankford*, 196 F.3d 563, 577 (5th Cir. 1999).  This type of indictment implicates Double

Jeopardy concerns because a defendant could receive multiple punishments for a single crime.

*United States v. Cluck*, 143 F.3d 174, 179 (5th Cir. 1998).

If the counts at issue are based on different conspiracy statutes—as is the case when

considering Count 1 (18 U.S.C. § 1349) with respect to Counts 3 and 7 (18 U.S.C. § 371)—

courts look to the Supreme Court's *Blockburger* test, asking "'whether each provision [of a

charged statute] requires proof of a fact which the other does not.'"  *United States v. Sanjar*, 876

F.3d 725, 736 (5th Cir. 2017) (quoting *Albernaz v. United States*, 450 U.S. 333, 337 (1981));

*Blockburger v. United States*, 284 U.S. 299 (1932).  In making that determination, courts look to

the elements of the statutes charged and how the offenses were charged in the indictment.

*Sanjar*, 876 F.3d at 736.

If an Indictment charges two conspiracies under the same statute—as with in Counts 3

and 7 that charge violations of 18 U.S.C. § 371—courts look to whether one or more agreements

existed under the factors set forth in *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978).

*See also United States v. El-Mezain*, 664 F.3d 467, 546 (5th Cir. 2011) ("In a conspiracy case,

the central issue for double jeopardy purposes is whether there was one agreement and one

conspiracy or more than one agreement and more than one conspiracy.").

**ARGUMENT**

The Indictment properly charges three separate conspiracies against the Defendant under the specific fraud conspiracy statute, 18 U.S.C. § 1349, and the general conspiracy statute, 18 U.S.C. § 371, and is not multiplicitous.  The Defendant argues that (1) that the specific conspiracy in Count 1 cannot be charged along with the general conspiracy in either Count 3 or 7, and (2) the conspiracies charged in Counts 3 and 7 are multiplicitous of each other.  With respect to his first argument, the Defendant ignores controlling case law confirming that charging violations of § 1349 and § 371 complies with *Blockburger*'s requirements and thus does not violate the Double Jeopardy Clause.  Moreover, the kickback conspiracy in this case is not a lesser included offense of the healthcare and wire fraud conspiracy.  *Cf. United States v. Ogba*, 526 F.3d 314 (5th Cir. 2008).  As for the second argument regarding the separate § 371 conspiracies in Count 3 and Count 7, the Indictment alleges two distinct agreements, and thus does not implicate double jeopardy concerns.

**I.     Count 1 and Counts 3 and 7 Satisfy the *Blockburger* Test**

The conspiracies charged in Count 1 (the healthcare and mail fraud conspiracy) and both Counts 3 (the false statement conspiracy) and 7 (the kickback conspiracy) are charged under separate conspiracy statutes, and should therefore be analyzed under *Blockburger* to determine whether each "requires proof of a fact which the other does not."  *Blockburger*, 84 U.S. at 304.

To establish a violation of 18 U.S.C. § 1349, the United States must prove that (1) the defendant and another made an agreement to commit wire fraud or health care fraud; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the

agreement willfully, with the intent to further the unlawful purpose.  *See United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014).[1]

Conversely, to establish a violation of 18 U.S.C. § 371, the United States must prove "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy."  *United States v. Brooks*, 681 F.3d 678, 699 (5th Cir. 2012); *see also* Fifth Circuit Pattern Jury Instructions Criminal, § 2.15A (2015).  The object crime for Count 3 is making false statements relating to healthcare matters in violation of 18 U.S.C. § 1035, while the object for Count 7 is the payment and receipt of illegal healthcare kickbacks and bribes in violation of 42 U.S.C. § 1320a-7b(b).[2]

A review of the elements of the statutes and "how the offenses were charged in the indictment" makes clear that the healthcare and mail fraud conspiracy could have occurred independently of the kickback conspiracy.  *See Sanjar*, 876 F.3d 725, 737 (5th Cir. 2017).

---

[1] To prove the object crimes of mail fraud and healthcare fraud, the government would have to prove for mail fraud that (1) the defendant devised or intended to devise a scheme to defraud; (2) the scheme employed false material representations; (3) the defendant mailed something through the U.S. postal service or a private or commercial interstate carrier; and (4) the defendant acted with specific intent to defraud, *see* Fifth Circuit Pattern Jury Instructions Criminal, § 2.56 (2015); 18 U.S.C. § 1341, and for healthcare fraud that the defendant knowingly and willfully executed a scheme to defraud a government health care program or used false pretenses to obtain money from a federal health care program, *see* 18 U.S.C. § 1347; *United States v. Njoku*, 737 F.3d 55, 63 (5th Cir. 2013).

[2] To prove the object crime of false statements in healthcare matters, the United States would have to prove that the defendant knowingly and willfully made a materially false, fictitious, or fraudulent statement or representation in connection with the delivery of healthcare benefits, items, or services involving a healthcare benefit program.  *See* Fifth Circuit Pattern Jury Instructions Criminal, § 2.50.  To sustain a conviction under the Anti–Kickback Statute, the Government must prove "(1) the defendant solicited or received any remuneration, including any kickback or bribe, directly or indirectly, overtly or covertly, in cash or in kind, to any person; (2) that the remuneration was solicited or received to induce such person to refer an individual to a person for furnishing or arranging of an item or service; (3) that the item or service was one for which payment may be made in whole or in part under a federal healthcare program; and (4) that the defendant acted knowingly and willfully."  *United States v. St. Junius*, 739 F.3d 193, 210 n.18 (5th Cir. 2013).

Reference to the Indictment's detailed allegations demonstrates that the Defendant could be found guilty of healthcare and mail fraud without having paid any illegal kickbacks whatsoever. In fact, the Indictment specifically differentiates between payments to Sales Representatives and physicians and payments that qualified as illegal kickbacks made in violation of the Anti-Kickback Statute.  *See* Dkt. No. 1 ¶¶ 37, 44.  Likewise, the Defendant could be convicted of paying or receiving illegal kickbacks without having conspired to commit healthcare fraud or mail fraud.  Because the conspiracies and their elements do not overlap and each § 371 count requires proof of a fact that the § 1349 count does not, there is no double jeopardy concern.

In addition, Count 1 does not require proof of an overt act while Counts 3 and 7 do.  The Fifth Circuit has held that this distinction is meaningful for multiplicity purposes when examining both statutes.  *See United States v. Njoku*, 737 F.3d 55, 67–68 (5th Cir. 2013) (recognizing that "Section 371 requires proof of an overt act, which Section 1349 does not" in holding that conspiracy to commit health care fraud and conspiracy to pay and receive illegal health care kickbacks did not violate Double Jeopardy); *Sanjar*, 876 F.3d at 737 (same); *United States v. Jones*, 733 F.3d 574, 584 (5th Cir. 2013) (same); *United States v. Nowlin*, 640 F. App'x 337, 346 (5th Cir. 2016) (same).

Moreover, the statutory maximum penalty for a violation of § 1349 is ten years, while the statutory maximum penalty for each violation of § 371 is 5 years.  Each of these distinctions evinces Congressional intent to regulate the "separate evils" of fraud, including healthcare and wire fraud, violations of the Anti-Kickback Statute, and false statements in the healthcare context.  *See Albernaz v. United States*, 450 U.S. 333, 343 (1981) (holding that similar drug conspiracy statutes were aimed at combatting different offenses).

And the Fifth Circuit has repeatedly found that crimes charged under 1349 and 371 satisfy the *Blockburger* test.  *See, e.g.*, *Sanjar*, 876 F.3d at 737 (pointing out that a healthcare fraud conspiracy "can occur independent of any kickbacks paid for referrals," and a kickback conspiracy "can occur without the submission of any fraudulent Medicare claims," and holding that no multiplicity problem existed) (citing *Jones*, 733 F.3d at 584); *Njoku*, 737 F.3d at 68; and *United States v. Moran*, 778 F.3d 942, 964 (11th Cir. 2015)); *United States v. Nowlin*, 640 F. App'x 337, 346 (5th Cir. 2016) (rejecting defendant's argument that indictment charging healthcare fraud and kickback conspiracies was multiplicitous); *United States v. Ngari*, 559 F. App'x 259, 269 (5th Cir. 2014) (same).[3]

Despite the controlling case law analyzing multiplicity issues under *Blockburger*, the Defendant's Motion merely mentions *Blockburger* in passing but fails to apply it.  Instead, the Defendant incorrectly relies on *United States v. Mori*, 444 F.2d 240 (5th Cir. 1971), decided over 45 years ago, and *United States v. Ogba*, 526 F.3d 314 (5th Cir. 2008), which is distinguishable.

In *Mori*, the Fifth Circuit considered whether two narcotics conspiracies charged under distinct statutes constituted a single conspiracy.  444 F.2d at 241.  In both counts, the indictment alleged the same *exact* parties, duration, and overt acts.  *Id.* at 243.  The court held that because both conspiracies proscribed the importing of narcotics, the specific conspiracy statute governed

---

[3] The United States was not able to find any cases in this jurisdiction that considered indictments charging a fraud conspiracy under 18 U.S.C. § 1349 and a false statements conspiracy under 18 U.S.C. § 371, but contends the same rationale for finding that *Blockburger* is satisfied when the object of the § 371 is the Anti-Kickback Statute holds whether the § 371 charges a conspiracy to violate 42 U.S.C. § 1320a-7b or 18 U.S.C. § 1035.  Moreover, the object offenses of § 1347 and § 1035 penalize different conduct, and therefore do not implicate double jeopardy.  *See United States v. Wheeler*, 753 F.3d 200, 209 (D.C. Cir. 2012) ("Given that § 1347 merely requires an attempt to execute a scheme or artifice to defraud, whereas § 1035 requires actual falsification or making a false or fraudulent statement, some violations of § 1347 might not be violations of § 1035. Statutes that overlap but retain different elements pose no risk of double jeopardy.").  There is thus no reason to analyze Count 1 and Count 3 differently from Count 1 and Count 7.

and the general conspiracy statute was subsumed into it. The court held that the defendant was "involved in only a single conspiracy, not 'independent' and 'distinguishable' conspiracies." *Id.* at 245.

Since *Mori* was decided in 1971, however, the Supreme Court decided *Albernaz v. United States*, 450 U.S. 333 (1981), and held that charging conspiracies under two separate statutes does not offend the Double Jeopardy clause when the *Blockburger* test is satisfied. The Fifth Circuit since *Mori* and following *Albernaz* has routinely upheld convictions for violations of both § 1349 and § 371 in the face of multiplicity or double jeopardy challenges. *See Njoku*, 737 F.3d at 67; *Sanjar*, 876 F.3d at 737; *Jones*, 733 F.3d at 584; *Nowlin*, 640 F. App'x at 346.

And other circuit courts have also distinguished *Mori* in light of *Albernaz*, *see United States v. Nakashian*, 820 F.3d 549, 552–53 (2d Cir. 1987) (holding that there is no principle in *Albernaz* "for carving out a general conspiracy-specific conspiracy exception" and that *Mori* was decided prior to *Albernaz* and was contrary to more recent Sixth Circuit caselaw (internal quotation marks omitted)); *United States v. Lanier*, 920 F.2d 887, 895 (11th Cir. 1991) ("[W]e concur with the other circuits that have addressed this issue and hold that a defendant may properly be prosecuted under the general conspiracy statute and a specific conspiracy"), and have held that indictments charging § 1349 and § 371 are not multiplicitous, *see United States v. Patel*, 694 F. App'x 991, 994 (6th Cir. 2017); *United States v. Moran*, 778 F.3d 942, 964 (11th Cir. 2015).

In a further attempt to distinguish the controlling case law, the Defendant contends that *Sanjar*, *Jones*, and *Njoku* did not involve "overlap" of the allegations supporting the § 1349 and § 371 conspiracies. Dkt. No. 39 at 8. The Defendant is incorrect: the Superseding Indictments in *Sanjar* and *Njoku* both allege that paying kickbacks was a means of committing the healthcare

fraud conspiracies charged in Count One in both indictments.  *See United States v. Sanjar*, No. 4:11-CR-861, Dkt. No. 76 ¶ 30 (S.D. Tex. filed July 24, 2012) (Exh. A); *United States v. Njoku*, No. 4:10-CR-416, Dkt. No. 129 ¶¶ 3, 4 (S.D. Tex. filed Oct. 7, 2010) (Exh. B).  Though not as clear in *Jones*, the indictment in that case alleges that certain defendants "would recruit Medicare beneficiaries" for whom the defendants filed claims with Medicare for medically unnecessary services.  *See United States v. Jones*, 2011 WL 10632878 ¶ 22 (M.D. La. filed Feb. 2, 2011).

Relying on this flawed conception of the allegations and proof in *Sanjar*, *Njoku*, and *Jones*, the Defendant points out the overlapping allegations in Count 1 and Count 3 and 7 in this case, and incorrectly states that "Counts 3 and 7 explicitly rely on the same over acts," when those counts in fact contain no overlapping overt acts.  Dkt. No. 39 at 8–9; *compare* Dkt. No. 1 ¶ 53, *with id.* ¶ 60.  Nevertheless, overlapping proof does not translate into a multiplicity issue. *See United States v. Felix*, 503 U.S. 378, 386 (1992) ("[O]ur precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation."); *Patel*, 694 F. App'x at 994 ("After all, the multiplicity doctrine 'draws a crucial distinction between multiple punishments for the same *conduct* (permissible) and multiple punishments for the same *offense* (impermissible).'" (quoting *White v. Howes*, 586 F.3d 1025, 1027 (6th Cir. 2009)); *see also Iannelli v. United States*, 420 U.S. 770, 785, n.17 (1975) (holding that even where there is "substantial overlap" between two crimes, Double Jeopardy does not preclude them from being separate offenses).

As a final attempt to overcome unhelpful caselaw, the Defendant contends that "the situation here is similar to one that the Fifth Circuit condemned in *United States v. Ogba*, 26 F.3d 214 (5th Cir. 2008)."  But the court in *Ogba* considered whether the substantive healthcare fraud (18 U.S.C. § 1347) and Anti-Kickback (42 U.S.C. § 1320a-7b(b)(2)(A)) statutes were

multiplicitous, not their conspiracy counterparts. *See id.* at 232–33 (comparing the language of the substantive statutes to apply *Blockburger*). When the court considered the proof required to prove each element, the Court held that if the healthcare fraud conviction "were based *entirely* on proof of [the defendant's] receipt of kickbacks, which he did dishonestly, then a conviction of illegal remuneration is a lesser included offense of healthcare fraud." *Id.* at 234 (emphasis added). Critically, however, "if a jury convicted [the defendant] for other types of fraud, unrelated to illegal remuneration, and the court sentenced [him] based on that conviction, there is no double jeopardy." *Id.* at 235.

In this case, the payment and receipt of kickbacks is just one purpose and means of committing the broad healthcare and mail fraud conspiracy. As described above, the healthcare and mail fraud conspiracy relies on significant proof that has nothing to do with illegal kickbacks, including (at least): the failure to individualize compound creams based on patient need, *see* Dkt. No. 1 ¶ 32; the sale of some of the pharmacies in straw purchases to employees, *id.* ¶ 31; the Defendant and his coconspirators' directing prescribers to authorize medically unnecessary compounded drugs, *id.* ¶ 35; the financial incentives—that did not violate the Anti-Kickback Statute—that the Defendant and his coconspirators paid to prescribers, Sales Representatives, and patients, *id.* ¶¶ 36, 39; the physicians' prescribing expensive and excessive compounded drugs to people the physicians had never seen or treated, *id.* at ¶ 38; and the pharmacies' waiving required copayments, *id.* ¶ 40. The Indictment thus alleges significant fraud that is unrelated to illegal kickbacks in this case. Therefore, the kickback conspiracy cannot be a lesser-included offense of the healthcare and mail fraud conspiracy as in *Ogba*.

Because the § 1349 conspiracy and the § 371 conspiracies satisfy the *Blockburger* test, they are not multiplicitous, nor are the § 371 counts subsumed in the § 1349 conspiracy. The

Court should therefore deny the Defendant's Motion with respect to the § 1349 and the § 371 counts, and find that the United States need not elect between the § 1349 and § 371 conspiracies.

## II.     Counts 3 and 7 are Not Multiplicitous

Although Counts 3 and 7 charge conspiracies under the same general conspiracy statute, 18 U.S.C. § 371, they are not multiplicitous because the conspiracies involve different object offenses and overt acts, distinct scopes, and encompass different activity.  Thus, there is no Double Jeopardy concern with the Defendant standing trial for both of these counts.

To determine whether separate and distinct conspiracies exist, the Fifth Circuit has identified five factors; none of which is solely determinative: (1) the time of the conspiracy; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) the places where the events alleged as part of the conspiracy took place.  *See Marable*, 578 F.2d at 154.

Count 3 charges a false statement conspiracy that primarily took place in February and March 2015 and later in July 2016, when an insurance company audited several prescriptions that physician and codefendant Vladimir Redko—acting in his capacity as a physician as opposed to an owner of the pharmacies—purportedly wrote for patients in Ohio, including James Buckingham, whom Redko had never seen or treated.

In contrast, Count 7 charges a kickback conspiracy that took place during the time the pharmacies were in operation.  The kickback conspiracy is also limited to those claims that government insurance reimbursed, and is not related to claims submitted to and reimbursed by private insurance providers.

A comparison of the overt acts charged in Counts 3 and 7 further supports two separate conspiracies, as none of the overt acts overlaps:

| Count 3 | Count 7 |
|---|---|
| On or about February 27, 2015, James Buckingham forwarded to **SWIENCINSKI** a questionnaire that ESI had sent to Buckingham's wife regarding prescriptions she and their children purportedly received from Omni-One-Med. | Physician 4 prescribed compounded drugs and other pharmaceuticals to TRICARE beneficiaries.  In or around December 2014, TRICARE reimbursed the Pharmacies at least approximately $278,000 for those prescriptions. |
| On or about February 27, 2015, **SWIENCINSKI** forwarded the same questionnaire to **BREIMEISTER**. | In or around December 2014, Pharms paid a Sales Representative over approximately $141,000—approximately 50% of the amount TRICARE reimbursed—for TRICARE prescriptions that Physician 4 wrote to the Pharmacies. |
| On or about March 2, 2015, **BREIMEISTER** forwarded the same questionnaire to **REDKO**, the prescribing physician on the claims under review, requesting advice on how the patients should respond to ESI. | In or around October 2015, the Pharmacies processed prescriptions for compounded drugs and other pharmaceuticals written by Physician 2 to Medicare beneficiaries.  Medicare, in turn, reimbursed the Pharmacies for those prescriptions. |
| **SWIENCINSKI**, **BREIMEISTER**, or one of their coconspirators, instructed Buckingham on how to respond to ESI's questionnaire.  Based on that instruction, Buckingham falsely notified ESI that his wife and children: paid copays for the compounded drugs they purportedly received from Omni-One-Med; obtained the prescriptions by mail in Dallas; and received treatment from **REDKO**, who was the prescriber.  Buckingham signed and dated the questionnaires on or about March 2, 2015. | Between in or around October and in or around November 2015, **SWIENCINSKI** paid or caused the payment of Physician 2 over approximately $40,000 from JPMorgan Chase accounts ending *6280 and *9708. In or around October 2015, the Pharmacies processed prescriptions for compounded drugs and other pharmaceuticals written by Physician 3 to Medicare beneficiaries.  Medicare, in turn, reimbursed the Pharmacies for those prescriptions. |
| Buckingham later instructed at least one other individual he referred to the Pharmacies on how to fill out similar questionnaires from ESI using the same false information, which were later sent to ESI. | Between in or around October and in or around November 2015, **SWIENCINSKI** paid or caused the payment of Physician 3 over $7,500 from JPMorgan Chase account ending *9708. |
| In or around July 2016, **REDKO** provided false information to ESI in response to an inquiry regarding compounded drugs **REDKO** purportedly prescribed to several patients, including Buckingham's wife and children.  Specifically, **REDKO** falsely | |

| | |
|---|---|
| responded to ESI that he had seen the patients under review and that he authorized prescriptions for compounded drugs for those individuals, among other falsehoods. **REDKO** signed and dated the questionnaires on or about July 5, 2016. | |

Dkt. No. 1 ¶¶ 53, 60. None of the overt acts is overlapping or even similar.

And the purposes and objects of the two conspiracies differ, and the conduct being punished is not the same. Whereas the goal of the conspiracy in Count 3 was to obtain insurance reimbursements by providing false information in response to an insurance audit, in violation of 18 U.S.C. § 1035, the purpose of the conspiracy in Count 7 was for the Defendant and his coconspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.[4] *Compare* Dkt. No. 1 ¶ 51, *with id.* ¶ 58. Additionally, the false statement conspiracy in Count 3 relates to prescriptions that codefendant Vladimir Redko wrote for patients in Ohio whom Redko never saw or treated. Nowhere does the Indictment state that those claims were covered by Medicare, TRICARE, or other government insurance. Conversely, the conspiracy in Count 7 only relates to prescriptions that were covered by those government insurance providers, which fall under the Anti-Kickback Statute's proscriptions.

---

[4] In addition to the *Marable* factors weighing in favor of finding separate conspiracies, the two object offenses certainly satisfy the *Blockburger* test. Both objects require proof of a fact that is not required to prove the other—the object of Count 3 requires a false statement, whereas Count 7 does not; the object in Count 7 requires the offer, payment, solicitation, or receipt of illegal kickbacks and bribes, whereas the object in Count 3 requires no transfer of payment or money at all. *See supra* note 2; *see also United States v. Morad*, 2014 WL 68704, at *4–6 (E.D. La. Jan. 8, 2014) ("When an indictment charges violation of the general conspiracy statute, the relevant elements of the violation for purposes of the *Blockburger* test include the elements of the specific substantive offense that the defendant has conspired to commit." (citing *United States v. Arlt*, 252 F.3d 1032, 1038 (2d Cir. 2001)).

Though the Defendant is correct that all three codefendants are charged in both conspiracies, even when certain *Marable* factors might support a finding of one conspiracy, they may be outweighed by the remaining factors.  *See United States v. Thompson*, 690 F. App'x 244, 245 (5th Cir. 2017) (finding that although conspiracies alleged similar time and statutory offenses, the other factors demonstrated the defendant was involved in separate conspiracies); *Jones*, 733 F.3d at 577–79, 582–83 (examining how a defendant's involvement with different durable medical equipment companies supported the finding that he was involved in two separate conspiracies).  Here, the controlling factors are the completely distinct overt acts, the different purposes, and the different claims and insurance providers associated with the schemes—different victims.  *See United States v. Cruce*, 21 F.3d 70 (5th Cir. 1994) (pointing out that although successive § 371 conspiracies occurred over the same time period, took place at the same facility, and charged the same statutory offenses, the second indictment charged additional crimes and "[m]ore importantly" there was no overlap in the overt acts and holding that the two conspiracies were separate).

The Defendant relies on *Braverman v. United States*, 317 U.S. 49 (1942), in which the defendants were charged with and convicted of seven counts of conspiracy under the same general conspiracy statute (now 18 U.S.C. § 371) for various violations of the Tax Code. *Braverman*, 317 U.S. at 50–51. The Court held that a single unlawful agreement with multiple objects to commit tax violations constituted a single conspiracy. *Id*. at 50–54.  In deciding that only one conspiracy existed, the Court focused on "the Government's concession at the trial and [on appeal], reflected in the charge to the jury, that only a single agreement to commit the offenses alleged was proven."  *Id.* at 52.  And the Court acknowledged that when "each of the counts of an indictment alleges a conspiracy to violate a different penal statute it may be proper

16

to conclude, in the absence of a bill of exceptions bringing up evidence, that several conspiracies are charged rather than one." *Id.*

The indictment in this case alleges two agreements to commit two different criminal violations—one involving making false statements to the insurance company with respect to a specific set of claims and patients in response to an audit, and a second to engage in the payment and receipt of illegal kickbacks. The two conspiracies do not intersect. *See United States v. Coscarelli*, 209 F.3d 720, 2000 WL 284044, at *3 (5th Cir. 2000) ("[W]here the second conspiracy has a different goal than the first, a second prosecution is *not* barred by double jeopardy."); *United States v. Njoku*, at 71 (finding that although there was "some overlap in the description of the offenses charged" in successive indictments, "the Government sought to punish different activities," and "the possible overlap . . . involves only a portion of the activity involved in both" cases).

In sum, the Indictment alleges two separate offenses in Counts 3 and 7, and this Court should therefore deny the Defendant's Motion and decline to compel the United States to elect between Counts 3 and 7.

**CONCLUSION**

Accordingly, the United States respectfully requests that this Court find that the

Indictment alleges three separate conspiracies, and therefore DENY the Defendant's Motion.


Respectfully submitted,

RYAN K. PATRICK
UNITED STATES ATTORNEY

By:    s/ Aleza Remis

Aleza Remis
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1000 Louisiana Street, 23rd Floor
Houston, Texas 77002
(713) 567-9406
Aleza.remis@usdoj.gov

## CERTIFICATE OF SERVICE

I, Aleza Remis, hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties of interest.

On this, the 20th day of November, 2018.

s/ Aleza Remis
Aleza Remis
Trial Attorney