UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v. § | Criminal No. 18-CR-368 |
| § | |
| BRIAN SWIENCINSKI, § | |
| SCOTT BREIMEISTER, § | |
| VLADIMIR REDKO, M.D., § | |
| CHRISTOPHER INCE, MD, and § | |
| RONNIE MCADA, JR., § | |
| § | |
| § | |
| Defendants. § | |

**UNITED STATES' RESPONSE IN OPPOSITION TO PHARMS LLC'S MOTION TO QUASH RULE 17 SUBPOENA**

The United States of America files this Response in Opposition to Pharms LLC's ("Pharms") Motion to Quash Rule 17 Subpoena served on September 22, 2022. Pharms objects that the subpoena lacks specificity and seeks materials that are irrelevant and inadmissible, arguments that are addressed further below. But the central question for this Court is whether or not Pharms' (and its principals') clear waiver of privilege as to 3,380 emails with former counsel constitutes a subject-matter waiver as to the subjects of those emails.[1]

Pharms concedes that it "withdrew any assertion of privilege as to records and communications in the custody of DOJ's filter team," which were the 3,380 emails released to the prosecution team, *see* Dkt. No. 317 at 11 n.11; and Defendants Swiencinski and Breimeister similarly waived their prior assertions of privilege on behalf of Pharms, listed dozens of communications with counsel and hundreds of pages of billing records on their exhibit lists,

---

[1] The released emails contain communications and advice sought from and provided by attorneys, including: Kathleen DeBruhl, Gil Ganecheau, and David (Beau) Haynes at DeBruhl and Associates ("DeBruhl"); Doug King and others at Shands, Elbert, Gianoulakis, & Giljum, LLP ("Shands"); Jeb and Buster Brown; Michael Clark, and attorneys from Bracewell LLP.

1

confirmed their waiver in writing, and listed some or all of their former attorneys from DeBruhl and/or Shands on their witness lists. As described further below, their waiver is not limited to the emails themselves, but constitutes a waiver of privilege as to all materials on the subjects covered by the disclosed materials. And because Defendants Swiencinski and Breimeister (and to some extent Redko) have placed at issue legal advice purportedly provided to Pharms and its principals and pharmacies, the government is entitled to discovery regarding the full scope of the legal advice sought by and provided to Pharms. Otherwise, the Defendants would be permitted to use the privilege as a sword and a shield.

To be clear: the government does not believe the Defendants have any basis for a good faith reliance on advice of counsel defense, and objects that any testimony and documents, if offered by the Defendants, would be inadmissible hearsay and violative of Federal Rule of Evidence 403. But to prevent a misleading impression being conveyed to the jury, and to avoid unnecessary delay and a waste of judicial resources, the United States respectfully requests that this Court DENY Pharms' Motion to Quash and, in so doing, make a finding that the privilege has been waived as to the full scope of advice Pharms sought from DeBruhl and Shands related to the released emails, and order advance production of the materials responsive to the Subpoena pursuant to Federal Rule of Criminal Procedure 17(c)(1), as requested in Dkt. No. 315.

## **BACKGROUND**

The Superseding Indictment in this case charges the Defendants with conspiracy to commit health care, wire, and mail fraud; wire fraud; health care fraud; health care false statements; and money laundering. In short, the Defendants are alleged to have executed a scheme to defraud health care benefit programs by billing them for compounded and other drugs that were often medically unnecessary, not provided or not provided as billed, based on an invalid prescriber–

2

patient relationship, induced by kickbacks or bribes, dispensed in violation of state licensing requirements, or for which no copayment was collected. *See* Dkt. No. 111. The Defendants did this by billing health care benefit programs through several pharmacies around Houston, Texas. Defendants Swiencinski and Breimeister owned or controlled Pharms (with Leonard Carr), a management company; they were beneficial owners (albeit not on-paper owners) of five pharmacies that fell under the Pharms umbrella and were straw-owned by Pharms employees; and Breimeister owned Alternative Medicine and Pharmacy, d/b/a OmniPlus Pharmacy (with Carr).

In preparation for trial, the parties agreed to exchange exhibits on August 26, 2022. On August 23, 2022, counsel for Breimeister notified the United States by phone of the Defendants' intent to waive privilege as to nearly all emails that the filter team previously withheld from the prosecution team (aside from those with current counsel).[2] The government requested written confirmation of "what privilege is being waived and on behalf of whom," copying counsel for Pharms along with the Defendants. *See* Exhibit A at 3. Counsel for Breimeister responded, confirming "that Breimeister and Swiencinski waive any assertion of attorney-client privilege previously made regarding the emails in the possession of the filter team."[3] *Id.* at 2. The government responded to confirm that counsel for Pharms also had no objection, and he responded: "As company counsel for Pharms, I have no objection." *Id.* at 1.

The filter team released 3,380 previously withheld emails to the prosecution team. Of those, just over 800 appear to include a member of DeBruhl or refer to one of the DeBruhl lawyers,

---

[2] Between May 2021 and June 2022, the Defendants and an attorney for the Government not on the prosecution team undertook a lengthy review of nearly 140,000 emails to protect the Defendants' attorney-client privilege pursuant to this Court's May 3, 2021 Order. *See* Dkt. No. 175. That litigation resulted in over 135,000 emails being released to the prosecution team, and just under 4,000 remaining segregated from the prosecution team's access.

[3] Breimeister and Swiencinski were apparently the only parties who had asserted privilege over material withheld by the filter team.

approximately 250 appear to include or refer to Doug King at Shands, and nearly 800 appear to include or refer to Jeb or Buster Brown (fewer emails relate to the other attorneys listed in note 1).

On August 26, 2022, the parties exchanged exhibits. Defendant Breimeister listed detailed billing invoices from three lawyers and dozens of communications with various lawyers, including DeBruhl, Shands, and Jeb Brown, which include both advice provided by those lawyers and the Defendants' self-serving responses. Defendant Swiencinski similarly lists billing invoices from attorney Kathleen DeBruhl and several communications with lawyers.

In light of this clear signal that the Defendants were attempting to build a defense based on good faith reliance on advice of counsel, on September 1, 2022, the Government requested notice of their intent to rely on advice of counsel. *See* Exhibit B at 1. Counsel for Swiencinski responded:

> While it is impossible for us to say until you present your evidence, we have waived the privilege in an abundance of caution so that you can properly prepare to rebut such a defense and will not be surprised . . . Thus we collectively waived it to make sure there was no issue of surprise. I think you should prepare for the possibility of that here, as you seem to be presenting evidence on areas where the expert legal advice is contrary to your notions of legality.

*Id.* In its reply, the government notified counsel that it intended to subpoena former counsel for communications and records relating to their representation of Pharms and the Defendants, and request an interview with them regarding the advice they provided. *Id.*

After the pretrial motions hearing on September 7, 2022, in which the government noted for the record it intended to issue subpoenas to former counsel, the government called Kathleen DeBruhl. Ms. DeBruhl notified the government that she had no responsive records in her possession because she turned over to counsel for Pharms "every single" document the DeBruhl generated or received relating to their representation. Further, Ms. DeBruhl notified the government she and her colleagues were represented by counsel ("counsel for DeBruhl"). According to counsel for DeBruhl, Ms. DeBruhl remembered providing counsel for Pharms

4

approximately four bankers boxes of paper, and counsel for DeBruhl confirmed that any emails to or from Pharms and the pharmacies' principals have been preserved.[4]

On September 13, 2022, the government called Doug King, who explained that he provided his file to Breimeister.[5] King confirmed by email on October 4, 2022 that he represented only "Alternative Medicine and Pharmacy d/b/a OmniPlus Pharmacy," and that his role was "limited to the litigation before Judge Perry after [Express Scripts] gave notice of termination."

Knowing that DeBruhl and Shands turned their files over to Pharms and Breimeister, respectively, the government issued the September 22, 2022 Rule 17 subpoena to Pharms specifically requesting the records "provided to the Client" by DeBruhl and Shands. In addition to requesting representation letters, the Rule 17 subpoena also requests three other categories of material associated with DeBruhl and Shands:

1) Memoranda, legal opinions, or reports drafted by former counsel for the Client and all factual information, records, or communications from the client upon which such memoranda, legal opinions, or reports were based;
2) Communications relating to advice sought or obtained from former counsel during the relevant time period (excluding email communications already in the government's possession); and
3) Notes or memoranda created or obtained by the Client during the relevant time period related to legal advice provided to or sought by the Client from former counsel.

See Exhibit C.

On October 4, 2022, the Government filed a Motion for Advance Inspection of Materials Sought by Rule 17(c) Subpoena, Dkt. No. 315. The same day, the government contacted counsel for Swiencinski and Breimeister requesting notice of whether they intended to rely, as part of any

---

[4] The government may also issue a Rule 17 subpoena to DeBruhl to obtain the emails preserved in their records. That said, DeBruhl is likely not in possession of internal discussions between the principals regarding advice sought or obtained from DeBruhl.
[5] Breimeister was an owner of Alternative Medicine and Pharmacy, d/b/a OmniPlus Pharmacy along with Leonard Carr.

defense during trial, on any advice from Doug King at Shands, whose representation was limited to the Express Scripts civil lawsuit in 2016. The government offered to withdraw the portions of the Rule 17 subpoena seeking King's records should they agree that they were not relying on King's advice at trial. Defense counsel responded that they would confer and respond, but never provided a further response. On October 11, 2022, counsel for Pharms filed the instant Motion to Quash. The government now responds.

## LAW AND ARGUMENT

I. **The Subpoena does not seek Documents Subject to a Valid Claim of Privilege because the Attorney–Client Privilege has been Waived with Respect to the Subject Matter of the Representation.**

Pharms and Defendants Swiencinski and Breimeister have already waived privilege as to the subject matter of all emails released to the prosecution team and all the documents listed on their exhibit lists. Specifically, the emails—and thus the waivers—relate to at least the following issues: billing insurance (including Medicare and TRICARE), the physician investment program, state licensure, sales representative commissions, kickbacks, purchase and sale transactions, pharmacy ownership, PBM audits and investigations, and the Express Scripts civil lawsuit.

Nevertheless, while Pharms concedes that it "withdrew any assertion of privilege as to records and communications in the custody of the DOJ's filter team," it argues "it has not waived privilege as to all records and communications in this case." Dkt. No. 317 at 11 n.11.

Preliminarily, the government is not seeking "all records and communications in this case," a fact which is made clear by the Rule 17 subpoena's limiting language. And in a phone conversation on October 4, 2022 with counsel for Pharms, the government confirmed as much, explaining that it sought the files from DeBruhl and King that it knew had been provided to Pharms

and Breimeister (an agent of OmniPlus), as well as any communications and records pertaining to the advice they provided (excepting emails already in the government's possession).

Moreover, a waiver of privilege as to certain communications "constitutes a waiver as to all other communications on the same matter . . . because the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former." *United States v. Woodall*, 438 F.2d 1317, 1324 (5th Cir. 1970) (internal citation and quotation marks omitted). This is because the "attorney–client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991); *see Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege.").

Pharms cannot have it both ways: they cannot waive privilege as to thousands of emails on multiple subjects, but claim privilege as to the notes, emails, and records that animated the advice and communications on those subjects.

To illustrate: Breimeister lists as an exhibit an email from himself (using his @pharmsmgmt.com email address, which the government is not in possession of[6]) to Ms. DeBruhl, her law partner, Swiencinski, and Carr that states, in part:

---

[6] While the government is in possession of emails to/from Breimeister and Swiencinski's personal email accounts dated between January 1, 2013 and the time the searches were executed on their email accounts in 2017, it is *not* in possession of emails relating to advice sought or obtained from former counsel that does not include either of their personal accounts (those were never obtained during the investigation). The government is aware that Breimeister often used his Pharms email account, scott.breimeister@pharmsmgmt.com, to communicate with counsel on relevant topics, as is clear from several of the released emails, including the one excerpted below.

> From: Scott Breimeister <Scott.Breimeister@pharmsmgmt.com>
> To: 'Kathleen L. DeBruhl' <kdebruhl@md-law.com>
> CC: David Haynes (dhaynes@md-law.com) <dhaynes@md-law.com>;Leonard Carr <leonard.carr@omnipluspharmacy.com>;Brian Swiencinski <brianski9966@gmail.com>
> Sent: 5/29/2015 3:36:00 PM
> Subject: Medicare Seminar - May 28th
>
> Kathy:
>
> We appreciate you, Beau and Johnathan taking the time to meet with Leonard, Brian and myself yesterday.
>
> We felt it was an extremely productive meeting and helped clarify the policies, procedures and legal structure we need to follow moving forward with our strategy of dispensing prescriptions to Medicare Advantage patients. We plan to follow your instructions to the letter to ensure that we avoid potential problems and can address any claims or accusations of impropriety should they arise. As you know, our intent is, and always has been to operate a fully compliant pharmacy business.

Swiencinski also lists additional communications with counsel and 188 pages of DeBruhl's detailed billing records with statements like: "Meet with Brian Swiencinski and Scott Breimeister re: pharmacy company and physician investors." Again, the government objects to the admission of this hearsay statement. Nevertheless, Swiencinski (and Breimeister) presumably plan to point to the hundreds of pages of bills to show *just how much* advice they sought and the significant money the spent on such advice.

Whether or not these proposed exhibits are admitted, "[w]here a party asserts reliance on advice of counsel as an essential element of his defense, that party waives the attorney-client

8

privilege with respect to *all* communications, whether written or oral, to or from counsel *concerning the transactions for which counsel's advice was sought*." *In re Taxable Mun. Bond Sec. Litig.*, No. MDL 863, 1993 WL 323069, at *3 (E.D. La. Aug. 18, 1993) (emphasis added). Moreover, even "otherwise-privileged communications that defendants do not intend to use at trial, but which are relevant to proving or undermining the advice-of-counsel defense, are subject to disclosure 'in their entirety.'" *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) (citation omitted)).

The law is clear: The "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999); *see Bilzerian*, 926 F.2d at 1293 ("[T]he privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."). Accordingly, Pharms' waiver as to the 3,380 emails certainly constituted a waiver as to all materials responsive to the subpoena on the same subjects, and the government respectfully requests this Court make such a finding and order Pharms to comply with the subpoena.

**II.     The September 22, 2022 Subpoena Complies with Rule 17.**

Pharms also moves to quash the subpoena on the grounds that it lacks specificity, seeks irrelevant and inadmissible documents, and is facially overbroad. Courts interpreting Federal Rule of Criminal Procedure 17(c) require that subpoenas requesting documents be limited to relevant and admissible materials, and the requests must be made with adequate specificity. *United States v. Nixon*, 418 U.S. 683, 698–99 (1974).

The materials sought by the Rule 17 subpoena are relevant. All of the materials sought relate to the operation and management of Pharms and its pharmacies—both of which are central

9

to the allegations in the Superseding Indictment—and during the period alleged in the Superseding Indictment.

The materials sought by the Rule 17 subpoena are admissible. The subpoenaed materials fall into two categories: communications from Pharms and its agents to counsel, and communications from counsel to Pharms and its agents. With respect to communications from Pharms and its agents, such communications fall squarely in the class of statements excluded from the hearsay rule by Fed. R. Evid. 801(d)(2) as statements of an opposing party, an opposing party's agent, or an opposing party's employee. Although Pharms LLC is not a party to this case, as described here, its principals were the Defendants and their coconspirators. With respect to communications from counsel to Pharms and its agents, such communications are also admissible as non-hearsay statements of agents. *See Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991) (recognizing that the hearsay exclusion for statements by agent of party opponent includes statements by attorney in representational capacity).

The Rule 17 Subpoena is made with adequate specificity. "The specificity requirement is intended to provide the subpoenaed party with enough knowledge about the documents being requested to lodge objections based on relevancy and admissibility." *United States v. Potts*, 2017 WL 1314193, at *2 (S.D. Tex. Apr. 6, 2017) (Lake, J.). The Rule 17 subpoena does just that. Although the Rule 17 subpoena may request many documents, it is narrowly tailored to only capture the records put in issue by Defendants' implication of the good faith reliance on advice of counsel defense. Pharms accurately mentions courts' skepticism of subpoenas requesting "all" of certain classes of records. However, skepticism is typically directed at subpoenas requested by defendants, when such over-inclusive language "often indicate[s] that a defendant 'seeks to obtain information helpful to the defense by examining large quantities of documents, rather than to

10

use Rule 17 for its intended purpose—to secure the production for a court proceeding of specific admissible evidence.'" *Id.* at n. 3 (quoting *United States v. Louis*, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005)).

Moreover, as part of its argument that the subpoena is overbroad, Pharms complains that the subpoena seeks both privileged and non-privileged materials while also complaining that the face of the subpoena states that it is "not intended to call for the production of any material that is subject to a *valid* claim of attorney-client or other privilege recognized by the courts of the United States." *See* Exhibit C. The purpose of this language is to clarify that the government is not seeking materials that remain subject to a valid privilege despite the subject-matter waiver described above. But it is Pharms that is in the best position to know which of the materials in its possession remains privileged. Indeed, it is Pharms' burden to assert the privilege in the first place—preferably through a privilege log—so that the government can then challenge the assertion, if need be. *See EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) ("Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof."). Pharms must therefore review the four banker's boxes of materials DeBruhl purportedly provided to it and any other responsive materials, and assert privilege over any documents it believes remain privileged.

Finally, with a ruling by this Court that Pharms waived privilege as to the subject matter within the disclosed emails, the government would also be amenable, in the alternative, to narrowing the scope of the subpoena or to the Court's modifying the subpoena pursuant to Rule 17(c)(2). For example, while DeBruhl's materials are apparently limited to four banker's boxes, it is possible that Pharms is in possession of hundreds of responsive emails. To streamline Pharms' response, the government could provide specific search terms. At bottom, the government is

11

willing to confer with Pharms regarding the materials sought, but respectfully requests a ruling from this Court related to privilege in order to do so.

### III. Pharms Should be Ordered to Produce the Designated Items before Trial or Before they are to be Offered in Evidence.

Finally, for the reasons already described in its October 4, 2022, Motion for Advance Inspection of Materials Sought by Rule 17(c) Subpoena, Dkt. No. 315, Pharms should be ordered to produce responsive materials in advance of trial and certainly before they or related materials are to be offered into evidence. This request is an effort at streamlining the trial and avoiding unnecessary delay. *See United States v. Dallmann*, 433 F. Supp. 3d 804, 812 (E.D. Va. 2020) (stating that the advice-of-counsel defense is "fact intensive" and "likely to create substantial problems of fairness and efficiency if raised for the first time during the trial" (citation omitted)). For that reason, the government twice requested by letter that counsel notify it of their intent to rely advice of counsel, and moved in limine for such notice, *see* Dkt. No. 232.[7]

By waiving privilege as to thousands of emails, listing several communications with counsel on their exhibit lists, and listing former counsel on their witness lists, Defendants Swiencinski and Breimeister have made clear they intend to make advice of counsel an issue in this trial. To wait until trial to provide materials responsive to the subpoena would create further delay, inconveniencing this Court and the jury.

---

[7] Although the Federal Rules of Criminal Procedure do not specifically require defendants to provide pretrial notice of an advice-of-counsel defense, "the majority of district courts that have considered the question have sensibly exercised their inherent authority to impose a pretrial notice and discovery requirement regarding the advice-of-counsel defense." *Dallmann*, 433 F. Supp. 3d at 812 (collecting cases)); *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) (finding that courts have broad inherent authority to order notice and discovery of any advice-of-counsel defense outside Rule 16).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court find that Pharms' waiver of the attorney–client privilege as to the thousands of emails provided to the prosecution team constituted a subject-matter waiver; that it deny Pharms' Motion to Quash or, in the alternative, modify the subpoena in accordance with Rule 17(c)(2); and that it order Pharms to produce any responsive materials in advance of trial.

        Respectfully submitted,

        JENNIFER B. LOWERY
        UNITED STATES ATTORNEY

By:  */s/ Devon Helfmeyer*
      Aleza Remis
      Assistant Chief
      Devon Helfmeyer
      Katherine Raut
      Trial Attorneys
      Fraud Section, Criminal Division
      United States Department of Justice
      1000 Louisiana Street, 23rd Floor
      Houston, Texas 77002
      (713) 567-9513
      Devon.Helfmeyer@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Aleza Remis, hereby certify that on October 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties of interest.

/s/ Aleza Remis
Aleza Remis
Assistant Chief
