**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | § § § |
| v. | § § |
| BRIAN SWIENCINSKI (01) | §   Case No. 4:18-CR-00368 |
| SCOTT BREIMEISTER (02) | § |
| VLADIMIR REDKO, M.D. (03) | § |
| CHRISTOPHER INCE, M.D. (04) | § |
| RONNIE MCADA, JR. (05) | § |

**DEFENDANTS BRIAN SWIENCINSKI, SCOTT BREIMEISTER, AND RONNIE MCADA JR.'S OPPOSED MOTION TO STRIKE TESTIMONY AND MOTION *IN LIMINE***

Defendants Brian Swiencinski ("Mr. Swiencinski"), Scott Breimeister ("Mr. Breimeister"), and Ronnie McAda, Jr. ("Mr. McAda") (collectively "Defendants"), pursuant to Federal Rule of Evidence 401, 403, 404(b), and its inherent power under Rule 104, respectfully move the Court for an order: (1) striking the email cover page of government exhibits 1113, 1114, and related testimony from the record; and (2) excluding any further testimony on the issue. The Court sustained Defendants' objections that testimony and evidence regarding the copay checks and Express Scripts ("ESI") civil trial were not relevant to this case. *See* Exhibit A (Nov. 17, 2022 Trial Transcript, 113:20–114:12). Despite the Court's sustained objection, the government impermissibly elicited testimony from government witness Leonard Carr regarding allegedly backdated copay checks relevant only to the ESI trial. *Id.* at 113:20-22; 138:2-14.

The testimony elicited by the government in violation of the Court's ruling was both unduly prejudicial to Mr. Swiencinski, Mr. Breimeister, and Mr. McAda and irrelevant to the superseding indictment, necessitating this motion and requested relief. It included a detailed side-by-side

comparison by the witness, before the jury, of two different dates in 2016 relating to those copay checks—one reflecting the date on Mr. McAda's checks and the other reflecting a later date on which email transmissions regarding the checks occurred. This testimony and visual demonstration were intended to show the jury the alleged backdating of copay checks by Mr. McAda by a few weeks. And they did just that, despite the lack of evidence that Mr. McAda had any knowledge of its purported use. The record is uncontroverted that the checks were not offered for the limited purpose permitted by the Court, namely, to show Mr. McAda's 2016 payment of copays that accrued in 2013. The only cure is to correct the record, by striking the email cover page of government exhibits 1113 and 1114, and prevent the government from eliciting further testimony on the issue in violation of the Court's ruling.

Second, Mr. McAda renews his objection that the government exhibits are inadmissible under Rule 404(b) because he did not have notice.

## I. BACKGROUND

On November 17, 2022, the government elicited testimony from Leonard Carr regarding Mr. McAda's alleged backdating and submission of copay checks in 2016. Defendants McAda and Breimeister timely objected, resulting in a bench conference. At the bench, the government advised the Court and counsel that it intended the proffered evidence to show that Mr. McAda owed copays from the 2013 – 2014 and that he submitted payment for those copays in 2016 because "someone was watching."[1] Ex. A, Tr. Trans., 128:2-7. The Court instructed the government not to reference the trial, to which the government did not object. *Id.* at 128:15-19.

---

[1] At this time, the government referred to ALS and MAAD Marketing in regards to "someone watching." In those instances, the references were to a PBM or a state board of pharmacy watching. As discussed below, in context to Mr. McAda's payment of copays, the only "someone watching" would be the ESI District Court trial judge.

At the conclusion of the bench conference, the Court permitted the government to elicit testimony regarding Mr. McAda's 2016 copay payments, but specifically without reference to the ESI trial. *Id.* at 128:8-10. However, the government did ***not*** advise the Court that it also intended to present evidence of—indeed, to emphasize—two distinct dates in 2016: March 22, 2016, the date reflected on Mr. McAda's copay check, and April 6, 2016, the date of correspondence related to that check. As described below, the distinction between March and April 2016 was relevant only to the prohibited ESI trial, and therefore not relevant to this trial at all. But immediately following the Court's bench ruling, the government improperly used Carr's testimony as the delivery vehicle to show the jury that Mr. McAda allegedly backdated a copay check, like earlier government witnesses. The prejudicial message to the jury was both clear and improper: that Mr. McAda backdated copay checks in the same manner and with the same fraudulent intent as government witnesses and cooperators Brickman and Buckingham and to defraud a PBM.

There is no evidence in the record that Mr. McAda had any knowledge of the ESI trial. On April 6, 2016, Mr. McAda was asked to pay his copays, so he did. That is the limited scope of what the Court ruled could be presented to the jury on this issue.

### A. The Government's Initial Argument for Relevance of Mr. McAda's Co-Pay Check.

The government's theory of relevance shifted with the winds of trial. First, while Mr. Carr was on the stand, the government argued the exhibits were relevant because of the following:

> **Government:** Sure. I'll give you a little background. So during the Express Scripts trial, there was a summary chart showing different families and the lack of co-payments associated.
>
> **Court:** That was the exhibit attached to the email?
>
> **Government:** Yes, and that one said Ronnie M and that's Mr. McAda and the testimony will be from Mr. Carr that after trial on one day when that was shown, Mr. Breimeister said to him, you know, I saw this on the screen. We need to collect a co-payment for Mr. McAda. And through a series of conversations and events,

>which we will get in through some of the evidence, a co-pay check was written by Mr. McAda and backdated and then later presented as if it were a real co-pay check.

Ex. A., Tr. Trans. 111:2-16. Initially, the government did not hide its aim to elicit inflammatory testimony and evidence regarding Mr. McAda's alleged intent to backdate copay checks in the course of the ESI trial. The government argued that it "goes to the intent to defraud. It is a backdated essentially false co-payment check that was used to make it appear that they were collecting co-payments when they were not." *Id.* at 112:21-24.

That argument is misleading and, more importantly, was rejected by the Court. The only relevance for OmniPlus to collect co-pays from Mr. McAda on April 6, 2016 was for the breach of contract trial with ESI and for a single summary exhibit the parties—not including Mr. McAda—proffered was inaccurate in that trial. It is wholly irrelevant to the current matter before the Court. Sensing the winds shifting against it, after the Court stated that there may be another way to get the exhibits in unrelated to the ESI civil trial, the government charted a different course.

### B. The Government's Second Theory of Relevance of the Allegedly Backdated Co-Pay Checks.

In response to the Defendants' sustained objections, the government pivoted to Mr. Carr's testimony from the previous day about ALS and MAAD Marketing. It argued that Mr. McAda's payment of his copays were the same as the clawback of MAAD Marketing's commissions, thus making the allegedly backdated copay checks relevant. But MAAD and ALS are entities unrelated to Mr. McAda, and the issues with MAAD and ALS are not remotely similar to Mr. McAda's conduct. On the previous day, Mr. Carr testified to the following about MAAD Marketing and ALS:

>**Q:** Did Pharms ever claw back the money from ALS?
>**A:** No.
>**Q:** Did it make any adjustments like it did for MAAD Marketing?
>**A:** No.
>**Q:** Why was there different treatment for MAAD Marketing and for ALS?

> **A:** We clawed back the money from MAAD Marketing specifically because it was the subject of a Nevada board of pharmacy investigation.

Exhibit B, 11/16/22 Tr. Trans. 98:6-15. The government argued that the purpose of eliciting testimony regarding the allegedly backdated copay checks was to tie Mr. McAda's conduct to MAAD Marketing's conduct. Ex. A at 128:2-9. On that narrow basis alone, the Court permitted the questioning to continue. *Id.* The conflation of the two issues is misleading, improper, and unduly prejudicial to Mr. McAda.

OmniPlus clawed back *commissions* from MAAD Marketing because it was the subject of a Nevada board of pharmacy investigation. Mr. McAda paid *copays*.

A state pharmacy board investigation and a civil breach of contract action are not remotely similar. The claw back of commissions and the payment of copays are not remotely similar. Yet, the government sought to mislead the jury by conflating two unrelated issues in order to draw false parallels between an individual in Nevada's bad acts and Mr. McAda's payment of copays. The government conjured a connection between these in an effort to elicit clearly inflammatory testimony by Mr. Carr against Mr. McAda—with no arguable relevance to the matters before the Court.[2]

### C.  The Testimony Elicited for the Jury

The government elicited a number of irrelevant and unduly prejudicial statements regarding the allegedly backdated copay checks and the ESI civil trial. The jury heard the following:

- **Q:** Mr. Carr, during the course of the Express Scripts trial, was there discussion about families whose co-pays were not collected? **A:** Yes. [Ex. A, Tr. Trans. 108:13-16].

---

[2] To be clear, Mr. McAda is not alleging bad faith or intentional misconduct by the government. However, the evidence is unduly prejudicial, confusing, and inflammatory. It is not relevant to the issues before the Court. The Court had just ruled that the ESI trial was not relevant and could not be further delved into. Regardless, the government proceeded to introduce two exhibits which have no bearing on this case and instead deal only with the ESI trial.

- **Q:** During the course of the Express Scripts trial was there an effort to collect a co-payment for prescriptions from years prior? **A:** Yes. [*Id.* at 123:24 – 123:2].

- [Referring to GX 1113 and 1114] **Q:** If we could go to the attachment, please and put it side by side, please, with 659(a)? How much is the check for on the right? **A:** $10,900. **Q:** Is that the same amount listed in your text message to Medallion Medical? **A:** Yes **Q:** What's the dates of you text message to Ms. Mayeur? **A:** April 6, 2016 **Q:** What's the date listed on the check? **A:** March 22, 2016. **Q:** And what was what does it say under the memo line? **A:** Co-pays **Q:** Why was that check dated a few weeks before – do you know why that check was dated a few weeks before the April 6, 2016, date? **A:** Yes. **The Court:** Just a moment. The question was do you know. The answer is yes. **Mr. Cogdell:** I'm just anticipating the next question. **The Court:** Yes, Sir. **Q:** Do you know the answer? **A:** Yes **Q:** Who told you about why this check was dated a certain date? **A:** Scott asked that it be dated back. [*Id.* at 132:5 – 133:5].

- **Q:** Do you know whether or not there was any instruction about back dating the check? **The Court:** Just a moment. **Ms. Goodman:** Hearsay, lack of personal knowledge. **The Court:** Sir, do you personally know if someone instructed that check to be backdated? Do you personally know? **A:** No. [*Id.* at 135:17-23].

- **Q:** Was it common practice for the pharmacy to take certain, when somebody was looking, when somebody was watching? **A:** Yes. **Mr. Louis:** Objection. Vague. "Looking." **The Court:** Sustained alleges to vague. **Q:** Without giving detail, would the pharmacies have collected the co-payment on April 6, 2016, had nobody been double-checking that they were collecting? **Mr. Louis:** Objection asked and answered amount cumulative. **Ms. Goodman:** Also facts not in evidence 403. **The Court**: Sustained. Counsel, let's find an ending point for this. [*Id.* at 138:2-14].

Ultimately, the jury was presented with facts only relevant to conduct that occurred during the ESI breach of contract trial. It heard that Mr. McAda's check was allegedly backdated, even though this witness testified that he had no personal knowledge of that. It also heard that the check was backdated while there was an ongoing effort to collect copays during the ESI breach of contract trial. The problem is that the Court previously ruled that the ESI trial was irrelevant and also that it may be unduly prejudicial to the defendants. *Id.* at 138:2-14 The government forged ahead anyway presenting irrelevant and unduly prejudicial information. The government does not have a witness or any evidence that can attribute knowledge of the purpose of the copay check to Mr. McAda. However, based on the line of questioning and the testimony elicited, it was inferred that he backdated a check to mislead a PBM. That is an inaccurate representation of the facts of

this case. The testimony and cover page of the exhibits should be stricken, and the government should be prevented from eliciting further testimony on this irrelevant issue.

## II. ARGUMENT

### A. Under Federal Rules of Evidence 401 and 403, Government Exhibits 1113 and 1114 Should be Stricken and Further Inquiry Barred.

The email cover page to government exhibits 1113 and 1114 and related testimony should be stricken from the record and the government precluded from eliciting further testimony on this topic because it is inextricably linked to the ESI trial which is irrelevant and unduly prejudicial.

Evidence is not relevant if it does not have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED. R. EVID. 401. The two government exhibits and resulting testimony are irrelevant to the matter before the Court. The only arguable relevance is that the checks were allegedly backdated in order to undermine a summary exhibit in the ESI breach of contract trial. This fact is not relevant to the matter before the Court, and the Court rightly ruled to exclude this evidence. *See* Ex. A, Tr. Trans., 113:20 – 114:12. The specific events that occurred at the ESI trial are not relevant to the indictment nor the matters before this Court. The Court's ruling necessarily requires exclusion of the evidence, because the only possible relevance is in relation to the ESI civil trial. Further, on cross-examination, Mr. Carr stated that the copay checks were not written for an ESI audit or CVS/Caremark audit—which undermines the only possible relevance of the copay checks presented by the government. *See* Ex. A, Tr. Trans. 249:9-18. Knowing these facts prior to asking Mr. Carr the questions, the government still elicited irrelevant testimony that was unduly prejudicial.

The evidence was unduly prejudicial, confused the issues, and misled the jury. Evidence should be excluded when the probative value of the evidence is substantially outweighed by unfair

prejudice, confusing the issues, or misleading the jury. FED. R. EVID. 403. Here, the evidence and testimony hit the rare Rule 403 trifecta.

The evidence was unduly prejudicial because certain Defendants—not Mr. McAda—allegedly sought to mislead a court in a separate civil trial in April 2016. However, Mr. McAda had no knowledge of this. No government witness will be able to even infer that Mr. McAda knew the purpose others allegedly had when requesting him to write copay checks. Further, Mr. McAda is prejudiced because the government elicited the fact that the check was allegedly backdated, despite the witness not having any personal knowledge of that fact. *See* Ex. A, Tr. Trans., 135:17-23. Mr. McAda did not seek to mislead any court; however that is what the government injected into this trial.

The evidence and testimony also confuses the issues and misleads the jury. The government conflated the issue of MAAD Marketing and Mr. McAda's actions, despite no arguable parallel existing. Additionally, the government drew misleading parallels to the testimony proffered by witnesses James Buckingham and Terry Brickman. Those witnesses testified about backdated copays that were only relevant to PBM audits. As explained by Mr. Carr, Mr. McAda's payment of copays were not related to any PBM audit. *See* Ex. A, Tr. Trans. 249:9-18. The sole purpose of his payment of copay checks was for use in the ESI breach of contract lawsuit.

Further, the government will attempt to elicit more testimony on the ESI civil trial. Stacey Mayeur, the Pharms audit coordinator, may testify about her knowledge of the alleged backdated copay checks. She previously stated that when a PBM wanted proof of copayment, OmniPlus would attempt to collect copayments after the fact. *See* Stacey Mayeur 06/30/2022 FBI 302, p. 2. But those issues are separate and distinct from Mr. McAda's copay checks. Ms. Mayeur has personal knowledge of the audits Pharms underwent. But, just like Mr. Carr, she cannot have

personal knowledge as to the facts and circumstances of Mr. McAda's copayments. The government may elicit further testimony that Mr. McAda submitted an allegedly backdated check. *See* GX659A. It will again publish the GX 1113 and 11114 side by side for the jury and inquire regarding the alleged backdating of the checks. And it will again infer that it was done to mislead a PBM, when in fact, it is only related to undermining an ESI exhibit in an unrelated civil case. Mr. McAda did not pay copays until April 6, 2016. That fact is in evidence. The government only seeks admission of GX 1113 and 1114 and the line of testimony to inflame, mislead the jury, and confuse the issues regarding his purpose in backdating. On this basis, the testimony should be stricken and the email cover pages of GX 1113 and 1114 excluded.

### B. The Evidence was Inadmissible Under Federal Rule of Evidence 404(b).

Additionally, the exhibits should be stricken and any further reference excluded because the government did not provided Mr. McAda with Rule 404(b) notice, and he is prejudiced by this lack of notice. The significance of the checks—and the government's use of the checks—was unknown to Mr. McAda until the government's opening statement. Fed. R. Evid. 404(b) specifically requires the government to provide notice to avoid this type of surprise.

A two-part test determines the admissibility of evidence under Rule 404(b). *United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013). A court must first determine if the extrinsic evidence is relevant to an issue other than the defendant's character. *Id.* If so, the court determines whether the probative value of the evidence is not substantially outweighed by the undue prejudice, as well as the other requirements of Federal Rule of Evidence 403. *Id.* Intrinsic evidence does not implicate Rule 404(b). *United States v. Carillo*, 660 F.3d 914, 927 (5th Cir. 2011). Evidence is intrinsic when it is necessary to "complete the story of the crime by proving the immediate context of events in time and place[.]" *Id.* When evidence is a "distinct and distinguishable event[,]" which is not a

necessary preliminary for another event, then the evidence is extrinsic. *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). Here, the evidence is extrinsic to the counts alleged against Mr. McAda in the superseding indictment.

### 1. The evidence is extrinsic to the offense.

The evidence is extrinsic because the payment of the copay during the ESI trial are distinct and distinguishable from the events alleged in the conspiracy. The timing of the payments create an impossibility that the act was in furtherance of the conspiracy and it is irrelevant to the object of the conspiracies and substantive conduct alleged in Counts One or Four of the indictment.

On September 1, 2014, ESI terminated its relationship with Omni. Therefore, Omni no longer had a contractual relationship with ESI. Mr. McAda's payment of his copays was not an act in furtherance of the alleged conspiracy, nor was it necessary to explain any alleged "story of the crime." His copay check on April 6, 2016 had no effect on the alleged object of the conspiracy. The alleged object of the conspiracy is that Mr. McAda conspired to enrich himself through the submission of false claims to health care benefit programs administered through Pharmacy Benefit Managers ("PBMs"). ECF No. 111, p. 9-10. Absent from the indictment is any indication of how Mr. McAda's act of paying his copays on prescriptions he received is in furtherance of the act of submitting false claims to PBMs, making this point irrelevant to the alleged conspiracy.

The government alleged that a number of similar documents were intrinsic to the offenses in its 404(b) notice, including other allegedly back dated documents. *See* ECF No. 229. However, the government did not include this evidence in its Rule 404(b) notice, nor explain how they are intrinsic. Furthermore, the other documents referenced in the government's notice relate to the underlying facts of the Superseding Indictment. The Superseding Indictment is void of any reference to a check used to mislead a civil lawsuit against ESI.

Finally, the evidence unduly prejudices Mr. McAda by referencing a backdated check for an unrelated civil suit. The government has presented evidence by cooperators who paid backdated copay checks in order to defraud PBMs. The parallel the government is trying to make between those individuals and Mr. McAda's reasoning for writing the check are improper, unduly prejudicial, and a misrepresentation of the facts of this case, exactly what Rule 403 aims to prevent.

### 2. The government provided Mr. McAda with no notice, instead it affirmatively stated it had no 404(b) evidence as to Mr. McAda.

The government affirmatively stated it had no Rule 404(b) evidence as to Mr. McAda. *See* Exhibit C at 2, Email from Government. Fed. R. Evid. 404(b) requires the government to "provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any [Rule 404(b)] evidence it intends to introduce at trial." FED. R. EVID. 404(b). It is within the Court's discretion to determine whether the government complied with the Rule's reasonable notice requirement. *See id.*, Advisory Committee's Note. In past cases, courts generally impose reasonable pre-trial notice periods. *See*, *e.g.*, *United States v. Evengelista*, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days' notice required in multi-defendant case); *United States v. Green*, 144 F.R.D. 631, 645 (W.D.N.Y. 1992) (30-days' notice required in multi-defendant, multi-count case).

The government did not notify Mr. McAda of its intent to use evidence of a backdated document. In its 404(b) notice, the government provided notice that it intended to use evidence of false information provided in response to audits relevant to Count Four. However, it did not indicate that it intended to use evidence of the backdated checks in Government Exhibits 1113 and 1114. *See* ECF No. 229, p. 5.

As a result, Mr. McAda suffered great prejudice because the first time that the purpose of the government's evidence was presented to Mr. McAda was during the government's opening

statements. *Supra* Sec. 1A. Until then, Mr. McAda did not possess any knowledge how the government intended to use this 404(b) evidence against him or the false parallels that would be made between others who wrote copay checks to mislead PBMs versus Mr. McAda's purpose of writing a copay check for a civil lawsuit. This new information is unduly prejudicial to Mr. McAda.

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court strike the testimony from the record, strike the email cover pages of government exhibits 1113 and 1114, and prevent further testimony on the irrelevant and unduly prejudicial issue.

Dated: November 20, 2022.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeff Ansley*<br>Jeffrey J. Ansley<br>Texas Bar No. 00790235<br>jansley@vedderprice.com<br>Arianna G. Goodman<br>Texas Bar No. 24109938<br>agoodman@vedderprice.com<br>Samuel M. Deau<br>S.D. Tex. No. 3791231<br>sdeau@vedderprice.com<br>Vedder Price, P.C.<br>100 Crescent Court, Suite 350<br>Dallas, Texas 75201<br>(469) 895-4790<br><br>**Attorneys for Ronnie McAda Jr.**<br><br><br>*/s/ Josh Schaffer*<br>Josh Schaffer<br>State Bar No. 24037439<br>1021 Main, Suite 1440<br>Houston, Texas 77002<br>(713) 951-9555<br>(713) 951-9854 (facsimile)<br>josh@joshschafferlaw.com | */s/ Brandon McCarthy*<br>Brandon McCarthy (admitted *pro hac vice*)<br>Attorney-in-Charge<br>State Bar No. 24027486<br>Rachel M. Riley<br>State Bar No. 24093044<br>S.D. Bar No. 2810706<br>KATTEN MUCHIN ROSENMAN LLP<br>2121 N. Pearl Street, Suite 1100<br>Dallas, TX 75201<br>(214) 765-3600<br>(214) 765-3602 (facsimile)<br>brandon.mccarthy@katten.com<br>rachel.riley@katten.com<br><br>Mary C. Fleming (admitted *pro hac vice*)<br>KATTEN MUCHIN ROSENMAN LLP<br>2900 K Street NW, North Tower - Suite 200<br>Washington, DC 20007<br>(202) 625-3754<br>(202) 298-7570 (facsimile)<br>mary.fleming@katten.com<br><br>Michael A. Villa, Jr.<br>State Bar No. 24051475<br>S.D. Federal ID No. 3256126 |

| | |
|---|---|
| Dan Cogdell | MEADOWS, COLLIER, REED, |
| State Bar No. 04501500 | COUSINS, CROUCH & UNGERMAN, LLP |
| Jones Walker | 901 Main Street, Suite 370 |
| 811 Main Street, Suite 2900 | Dallas, TX 75202 |
| Houston, TX 77002 | (214) 744-2700 |
| (713) 437-1869 | (214) 747-3732 (facsimile) |
| (713) 437-1810 (facsimile) | mvilla@meadowscollier.com |
| dcogdell@joneswalker.com | |
| | **Attorneys for Brian Swiencinski** |
| **Attorneys for Scott Breimeister** | |

### CERTIFICATE OF CONFERENCE

I certify that on November 20, 2022, I attempted to confer with Assistant U.S. Attorney Aleza Remis, lead counsel for the government in this case, regarding this motion. I did not hear back from the government at the time of filing, so in an abundance of caution, I have indicated that the government is opposed.

*/s/ Arianna Goodman*
Arianna G. Goodman

### CERTIFICATE OF SERVICE

I certify that on November 20, 2022, I electronically transmitted the foregoing document to the Clerk for the U.S. District Court, Southern District of Texas, using the ECF system of the Court.

*/s/ Jeff Ansley*
Jeffrey J. Ansley