UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Criminal No. 18-CR-368 |
| § | |
| BRIAN SWIENCINSKI, § | |
| SCOTT BREIMEISTER, § | |
| VLADIMIR REDKO, M.D., § | |
| CHRISTOPHER INCE, MD, and § | |
| RONNIE MCADA, JR., § | |
| § | |
| Defendants. § | |

**UNITED STATES' OPPOSITION TO DEFENDANTS SWIENCINSKI, BREIMEISTER, AND MCADA'S MOTION TO STRIKE TESTIMONY AND MOTION *IN LIMINE*__**

Defendants Swiencinski, Breimeister, and McAda seek to strike parts of government exhibits 1113 and 1114 and related testimony, and to exclude any further testimony relating to backdated copay checks that Defendant McAda submitted. Those checks were precipitated by a civil trial between one of the pharmacies and Express Scripts ("April 2016 Trial"). This evidence is intrinsic to the scheme and is not unduly prejudicial. Further, defense counsel opened the door to further explanation of this evidence through cross examination. Defendants' motion should therefore be denied and the government should be permitted to elicit clarifying testimony from Mr. Carr on redirect examination.

I.  BACKGROUND

During trial on November 17, 2022, the United States attempted to elicit testimony from Leonard Carr regarding the circumstances surrounding a Defendant McAda copayment check in April 2016. Counsel for Defendant McAda (joined by others) objected to this line of questions, citing Rules 402, 403, and 404(b). The Court limited the line of questions, but ultimately overruled the objection when the government agreed not to ask Mr. Carr about the April 2016 Trial. Tr. of

1

Nov. 17, 2022 Trial Proceedings, 135:17-138:3. By the end of Mr. Carr's direct examination, the jury had heard that there was an effort to collect a copayment in 2016 from McCada relating to prescriptions from "years prior," and that the copay check had been backdated by a few weeks. Obeying the Court's instruction following defense objections, the United States did not connect the backdated checks to the April 2016 Trial.

In their motion and during trial, Tr. of Nov. 17, 2022 Trial Proceedings, 135:24-138:3, defense counsel expressed surprise that the government intended to offer evidence related to the backdated copay checks as connected to the April 2016 Trial. To the contrary, the government has disclosed and discussed with defense counsel its intent to use this evidence for this purpose numerous times and Defendant McAda has not previously objected. Specifically:

- On August 18, 2022, the government produced to all defendants a memorandum of an August 2, 2022 interview of Leonard Carr, summarizing at length Mr. Carr's statements on this topic consistent with the testimony the government has introduced and seeks to further introduce on this topic.

- On August 26, 2022, the government produced its exhibit list containing exhibits 1113 and 1114 to all defendants. Defendant McAda objected to other exhibits, but raised no objection to exhibits 1113 or 1114.

- In a telephone call on or around August 30, 2022, counsel for the government and counsel for Defendant McAda discussed the probative nature of McAda's back-dated copay checks.

- On November 16, 2022, the day before this issue came up in Mr. Carr's testimony, counsel for Defendant McAda notified the Court that she intended to object when it was raised based on "where [she] expect[ed] this testimony is going based on some of the government's exhibits." Tr. of Nov. 16, 2022 Trial Proceedings, 216:11-12.

- While all defendants had previously filed a motion *in limine* seeking to preclude reference to the jury verdict and judgment reached in the April 6, 2016 Trial, Dkt. No. 228, until today, no defendant had moved to preclude evidence relating to the backdated McAda copay check, despite receiving notice on several occasions of the government's intent to present this evidence at trial.

While the government followed the Court's limitations, counsel for Defendant McAda subsequently opened the door to the full circumstances on cross examination by giving the jury a misleading impression that Defendant McAda wrote the copayment check in April 2016—years after copayment was due—simply because that was the first time he had been asked:

> Q. I understand that ESI terminated the contract with Omni September 1st of 2014, correct?
> A. Correct.
> Q. And what we heard you testify to is Mr. Swiencinski was told to ask Mr. McAda to write a co-pay check, correct?
> A. Yes.
> Q. But you have no personal knowledge of what was actually said to Mr. McAda?
> A. No.
> Q. And we saw that Mr. McAda did write co-pay checks?
> A. Yes.
> Q. One was deposited?
> A. Yes.
> Q. And you testified that it related to prescriptions that he and his family received?
> A. Yes.
> Q. You're not aware of any earlier time when Mr. McAda was asked to pay a co-pay?
> A. No. No.

Tr. of Nov. 17, 2022 Trial Proceedings, 258-59.  The cross examination was further misleading[1] because it highlighted that Defendant McAda's copay check was *not* in response to an audit, without clarifying what the check *was* in response to:

> Q. And the co-pay check -- the co-pay check that we saw was not submitted for an ongoing audit, correct?
> A. Correct.
> Q. Not a CVS Caremark audit?
> A. No.
> Q. And not an ESI audit?
> A. No.

*Id.* at 259.

---

[1] The United States does not allege that counsel misrepresented anything to the Court or the jury; however, the questions asked gave the jury an incomplete, inaccurate, and misleading picture.

Given the misleading impression of what the copayment check was "not submitted for" left by cross examination, the government should be allowed on redirect examination to ask Mr. Carr what the check was "submitted for."

The government does not intend to elicit testimony regarding the outcome of the April 2016 Trial or how Defendant Breimeister and others attempted to present the backdated copay check during that trial. Instead, the government merely seeks an opportunity to clarify the misleading impression left by cross examination. Specifically, the government seeks to elicit testimony that:

- Defendant Swiencinski, Defendant Breimeister, and Mr. Carr were put on notice on or about April 3, 2016 that Express Scripts knew that the McAda family had received $424,636.77 worth of prescription drugs from OmniPlus, owed $10,900 in copays, and had paid $0 in copays (for prescriptions the pharmacies dispensed in 2013 and 2014 to Mr. McAda and his family).

- They took steps, including contacting Defendant McAda, to obtain and deposit a backdated copay check from Defendant McAda to make it appear as if Defendant McAda had in fact paid copays on the prescriptions for his family when in reality Defendants only took these actions at this time because they were under scrutiny.

II. **ARGUMENT**

    a. **The Backdated Copay Check and Related Evidence Is Intrinsic to the Scheme**

The Superseding Indictment is replete with references to the pharmacy defendants' (Swiencinski and Breimeister) failure to collect payments and the sales representative/"patient" defendants' (Swiencinski and McAda) failure to pay copays. The Superseding Indictment alleges that: the Defendants' fraudulent scheme involved prescriptions for which "copayments were not properly collected" (para. 44); it was an object and purpose of the scheme for the Defendants and their coconspirators to unlawfully enrich themselves by submitting false and fraudulent claims to health care benefit programs for drugs "for which copayments were not properly collected" (para. 46); Defendants Swiencinski, McAda, and others "signed up themselves and their families" to

4

receive compounded and other drugs "for which copayments were rarely paid" (para. 53); "[m]any times, the Pharmacies waived copayments" even though health care benefit programs "required the Pharmacies to collect copayments" (para. 56); the Pharmacies submitted claims and the health care benefit programs reimbursed the Pharmacies "in reliance on representations" that "copayments were properly collected" (para. 61); "[b]etween in or around 2013 and in or around 2017" health care benefit programs over approximately $140 million for drugs for which, among other things, "copayments were not properly collected" (para. 62).

This evidence is plainly intrinsic, and such intrinsic evidence is "not prohibited by Rule 404(b), when it is part of the crime charged." *United States v. Barnes*, 803 F.3d 209, 220 (5th Cir. 2015). That is because an "act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." *Barnes*, 803 F.3d at 220 (quoting *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997)) (alterations in original).

Indeed, the failure to collect and pay copays was one of several ways Defendants carried out the scheme alleged in Count One, which charges all five defendants with a conspiracy to commit mail fraud, wire fraud, and health care fraud that spanned from 2013 to 2018. Evidence in 2016 of an effort to cover up their improper copay practices is part and parcel of the scheme. And evidence relating to the April 2016 Trial is relevant to clarify the misleading testimony elicited during Mr. Carr's cross examination by Defendant McAda's counsel.

As discussed above, the government followed the Court's instruction not to delve into the April 2016 Trial in eliciting testimony from Mr. Carr regarding the backdated Defendant McAda copay check, but counsel for Defendant McAda then opened the door to testimony about the April 2016 Trial during cross examination by creating a misleading impression about Defendants'

5

motivation in collecting the copayment in 2016. The government seeks only to clarify this otherwise misleading testimony. As the Fifth Circuit has stated, "counsel may not mislead the jury or convey an erroneous impression without opening the avenue for cross-interrogation for purposes of clarification." *United States v. Plato*, 593 F. App'x 364, 374 (5th Cir. 2015) (quoting *United States v. Ruppel*, 666 F.2d 261, 269 (5th Cir. 1982)).

Further, as discussed above, Defendants were in no way prejudiced by a lack of notice, but instead were made aware on numerous occasions that the government intended to introduce this evidence in this manner and Defendant McAda did not object to the exhibits or move *in limine* for exclusion.[2]

### b. Evidence Relating to the Backdated Copay Check is Not Unduly Prejudicial

The evidence relating to the backdated copay check is probative of Defendants' failure to pay or to collect copayments during the period of Defendant McAda's submitted claims (September 2013 through July 2014) and their intent to cover up that practice whenever it came under scrutiny and put their profits at risk. The conspiracy continued until and after the April 2016 trial and, while Defendant McAda was no longer submitting claims for himself and his family in 2016, he at no point withdrew from the conspiracy. To the contrary, Defendant McAda's company, Medallion Health Group LLC, continued receiving payments from Pharms LLC until in or around February 2017. Defendant McAda received emails from Defendant Breimeister in furtherance of the scheme in July and August of 2016. *See* Defendant Breimeister Exhibits 279

---

[2] And while the government did not discuss the April 2016 Trial during opening statements, Defendant Breimeister did. Tr. of Nov. 10, 2022 Trial Proceedings, 35:24-36:16. In fact, counsel for the government carefully avoided mention of the April 2016 Trial, instead noting the evidence would likely show that the pharmacies collected back-dated copayments from Mr. McAda and others in an effort to "dupe the insurance companies into thinking that the pharmacies were regularly collecting copayments when they were not." *Id.* at 18:19-22.

and 280 (not yet admitted). And the Defendants' effort to cover their tracks in 2016 related directly back to the 2013-14 claims submitted for Defendant McAda and his family. This evidence is prejudicial—though not unfairly so—precisely because of its probative value. It is highly relevant and it is admissible.

Because "all probative evidence is by its very nature prejudicial" and the Federal Rules of Evidence "embody a strong and undeniable preference" in favor of admitting probative evidence, district courts should exclude evidence under Rule 403 in very few circumstances. *United States v. Curtis*, 635 F.3d 704, 716-17 (5th Cir. 2011) (internal citations omitted); *see also Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir.2006) ("'Unfair prejudice' as used in rule 403 is not to be equated with testimony that is merely adverse to the opposing party. Virtually all evidence is prejudicial; otherwise it would not be material. The prejudice must be 'unfair.'") (internal quotations omitted). The Court should therefore stand by its prior rulings and, further, allow the government to elicit clarifying testimony on redirect examination.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendants Swiencinski, Breimeister, and McAda's motion and allow the United States to elicit evidence regarding the circumstances of Defendant McAda's copay check.

Respectfully submitted,

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

By: */s/ Katherine Raut*
    Aleza Remis
    Assistant Chief
    Devon Helfmeyer
    Katherine Raut
    Trial Attorneys
    Fraud Section, Criminal Division
    United States Department of Justice
    1000 Louisiana Street, 23rd Floor
    Houston, Texas 77002
    (713) 567-9000
    Katherine.Raut@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on November 21, 2022.

                                     */s/ Katherine Raut*
                                     Katherine Raut
                                     Trial Attorney