IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

– v. –

BRIAN SWIENCINSKI,
SCOTT BREIMEISTER,
VLADIMIR REDKO, M.D.,
CHRISTOPHER INCE, M.D.,
RONNIE MCADA, JR.,

      *Defendants*.

No. 4:18-cr-00368

**DEFENDANT BRIAN SWIENCINSKI'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF HOMER ZULAICA, REFERENCES TO WHITE ENVELOPING, AND RELATED EVIDENCE**

Defendant Brain Swiencinski hereby respectfully moves *in limine* to exclude the testimony of anticipated government witness Homer Zulaica, and Government Exhibits 524, 525, 527, 529, 530, 531, and 541, which are recordings of conversations between Mr. Zulaica and Mr. Swiencinski that took place during the investigation in this case. Mr. Swiencinski also moves to exclude any reference by a witness to "white enveloping"—or bribing doctors with envelopes of money.

Critically, Mr. Zulaica played no part in the alleged scheme or conduct at issue in this case. Rather, Mr. Zulaica and Mr. Swiencinski are affiliated primarily because—prior to the timeframe of the scheme alleged in the indictment—they both worked for a compounding pharmacy called QMedRx ("QMed"). QMed was based in Florida, and is a completely separate pharmacy from the pharmacies at issue in this case. QMed was the subject of a separate investigation, and in 2018, in connection with his employment with QMed, Mr. Zulaica pleaded guilty to conspiracy to commit an offer or payment of a healthcare kickback. That conduct is not at issue or relevant to this case. But if Mr. Zulaica is permitted to testify—or if his recorded conversations with Mr. Swiencinski

1

were admitted—then evidence of a completely separate conspiracy involving Mr. Swiencinski's former employer and colleague will be put before the jury. Such testimony and evidence should be excluded because it is improper under Federal Rules of Evidence 404(b), 402, and 403. In addition, in the context of this case, references to "white enveloping" would violate the rule against hearsay.[1]

### I. BACKGROUND

#### A. Procedural Background

In a pretrial motion, the Government provided notice of its intent to introduce evidence "pertaining to Defendants Swiencinski and Ince's affiliation with QMed, another compounding pharmacy based in Florida." Dkt. 229 at 8. QMed is separate pharmacy, and not part of the scheme or conduct alleged in the indictment in this case. And QMed was the subject of an entirely different investigation, in a different State, that is unrelated to the conspiracy and other conduct alleged here. As such, Defendants opposed the Government's pretrial notice on the grounds that it would violate Federal Rules of Evidence 404(b) and 403. *See* Dkt. 258 at 5-7.

In this vein, at the hearing on pretrial motions, counsel for Mr. Swiencinski identified concerns related to evidence that would violate Rule 404(b) if offered by the Government. *See* Ex. 2, Mot. Hr'g Tr. 124:17-127:20 (Sept. 7, 2022) (identifying concerns relating to Government Exhibits 529 to 533 and Homer Zulaica). The Court noted that "we're trying the . . . . five-defendant case," but ultimately deferred ruling on specific exhibits in light of the Government's representation that it did not plan to mention in opening statement evidence pertaining to QMed or Mr. Zulaica. *See id.*

---

[1] This Court already sustained under Rule 404(b) an objection made by counsel to Mr. Swiencinski, when the government began eliciting testimony from government witness Leonard Carr about Mr. Swiencinski's role at QMed. *See* Ex. 1, Tr. 14:17-15:12, attached hereto.

### B. Mr. Zulaica's Anticipated Testimony

If Mr. Zulaica is permitted to testify, his testimony will impermissibly link Mr. Swiencinski to the extrinsic conspiracy involving QMed. That is, QMed was the subject of an entirely different investigation, that again, is unrelated to the scheme alleged in this case. And in connection with the QMed investigation, Mr. Zulaica ultimately pleaded guilty to conspiracy to commit an offer or payment of a healthcare kickback, in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(2). *See* Dkt. 3, *United States v. Zulaica*, No. 18-cr-151 (M.D. Fla. June 26, 2018). The Government moved for a downward departure of Mr. Zulaica's sentence based upon the substantial assistance he provided "in two separate investigations," including the investigation in this case. *See id.* Dkt. 35.

If Mr. Zulaica is permitted to testify, the jury will almost certainly hear evidence that Mr. Zulaica and Mr. Swiencinski used to work together at QMed. In fact, Leonard Carr has already testified that Mr. Swiencinski used to work at QMed. *See* Ex. 1, Tr. 13:24-14:2. Also, the jury will almost certainly hear evidence that, in connection with his work at QMed, Mr. Zulaica pleaded guilty to conspiracy to commit an offer or payment of a healthcare kickback.

### C. The Recorded Conversations and White Enveloping

Exhibits 524, 525, 527, 529, 530, 531, and 541 are recordings of conversations between Mr. Swiencinski and Mr. Zulaica, which took place during the investigation for this case. Intermingled in these recordings are discussions of activities that occurred at Qmed. For example, Exhibit 529 is a recording of a conversation in which Mr. Zulaica states that "in the years that we were over there [at Qmed]—and you and I were on the phone talking about—you know—white envelopes to doctors . . . . and I want to make sure that you and I are on the same page because

3

you and I have had some conversations about . . . white enveloping our doctors." *See* GX 529. The evidence will likely show that "white enveloping" refers to paying bribes.[2]

To the extent the recorded conversations refer to conduct relevant to this case, there is a significant risk that eliciting testimony about these recorded conversations will nonetheless implicate QMed. Mr. Swiencinski and Mr. Zulaica's relationship is based on QMed, and it is nearly impossible to extricate QMed from their relationship and conversations.

In addition, another Government witness—Brad Madrid—might also testify that Mr. Swiencinski made comments about bribing doctors with envelopes of money.

**II.    ANALYSIS.**

Evidence or argument pertaining to any suggestion of misconduct that occurred in connection with QMed—and in turn, tying Mr. Swiencinski to QMed—should not be permitted for two reasons.

*First*, it is improper evidence under Rule 404(b). The indictment identifies specific pharmacies that were part of the alleged scheme. Dkt. 111, ¶ 31. QMed is not one of them. *See id.* It is a completely different pharmacy, unrelated to the pharmacies identified in the indictment. Thus, any conduct related to QMed is extrinsic because it is unrelated to the charged scheme. In addition, QMed was the subject of an entirely different investigation, in a different State, that is unrelated to the conspiracy and other conduct alleged here. The Government should not be permitted to use unrelated, alleged bad acts, and inflammatory statements, involving QMed to suggest Mr. Swiencinski is guilty of the crimes charged here. For example, in *United States v. Hays*, the Fifth Circuit held that evidence of misconduct involving a different company, which

---

[2] The Government has indicated it might not offer Exhibit 529. Even if the Government does not offer Exhibit 529, the other recorded conversations between Mr. Zulaica and Mr. Swiencinski risk implicating QMed and should not be permitted.

4

occurred years earlier than the conduct charged, was impermissible under Rule 404(b). 872 F.2d 582, 588 (5th Cir. 1989). There, the Fifth Circuit reasoned:

> According to the indictment, [defendants] conspired to misapply Lancaster's funds, not Colony's funds. The indictment alleged conspiracy to make false entries in Lancaster's books, not Colony's books. The indictment alleged misapplication of Lancaster's funds and making false entries in Lancaster's books, not Colony's.

*Id.*

In short, the Government must prove its case based on conduct involving the pharmacies alleged in the indictment—not based on conduct related to a pharmacy the government did not charge. *See United States v. Fortenberry*, 860 F.2d 628, 635 (5th Cir. 1988) (holding that evidence of extrinsic offenses was improper under Rule 404(b) where prosecutor attempted to use the evidence to draw "the conclusion that [the defendant's] character was in conformity with the character of the person who committed those acts").

*Second*, even if this evidence satisfies Rule 404(b), it is irrelevant, and it does not pass muster under Rule 403. *See United States v. Jackson*, 339 F.3d 349, 355-56 (5th Cir. 2003) ("Extrinsic offense evidence that is relevant to a non-character purpose must still possess probative value that is not substantially outweighed by its undue prejudice."). That is, any suggestion that Mr. Swiencinski was connected with illegal conduct while at QMed, or affiliated with a pharmacy (QMed) at which misconduct was occurring, is unduly and highly prejudicial. *See id.* ("The prior conviction in this case had very little probative value when considering the other evidence going to intent and the nature of [the] defense but the potential to cause unfair prejudice was substantial."); *see also United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998) (holding that evidence that defendant's colleagues were convicted of similar crimes to that charged is prohibited "guilt by association evidence"). And the probative value is low to non-existent because this evidence relates to separate, uncharged conduct that there is little evidence Mr. Swiencinski

5

actually committed. *See Fortenberry*, 860 F.2d 628, 633 (5th Cir. 1988) (evidence of extrinsic offenses was inadmissible under Rules 403 and 404(b) where the prosecution did not actually establish that the defendant committed those offenses).

Finally, any statements about paying doctors envelopes of money should not be permitted because those statements can only refer to QMed. There is no evidence that such conduct occurred in this case. Further, the statements by Mr. Zulaica as to "white enveloping" are inadmissible hearsay. The government might attempt to offer Mr. Zulaica's statements against Mr. Swiencinski under the hearsay exclusion for co-conspirator statements offered against an opposing party. *See* Fed. R. Evid. 801(d)(2)(E). But that rule requires that the statement be "made by the party's coconspirator during and in furtherance of the conspiracy." *Id.* And any purported conspiracy between Mr. Swiencinski and Mr. Zulaica related to QMed was long over by the time the recorded conversation in question occurred in November 2017. *See Dutton v. Evans*, 400 U.S. 74, 81 (1970) ("It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise."). Further, the references to "white enveloping" are "mere idle chatter" and "mere narratives of past conduct," which "are not in furtherance of [any] conspiracy" involving QMed. *See United States v. Cornett*, 195 F.3d 776, 783 (5th Cir. 1999) ("Conversations that represent 'mere idle chatter' or which are mere narratives of past conduct are not in furtherance of the conspiracy because the statement and the conversation were not intended to further the conspiracy.").

## CONCLUSION

For the foregoing reasons, Mr. Swiencinski respectfully submits that Homer Zulaica should not be permitted to testify. Further, Government Exhibits 524, 525, 527, 529, 530, 531, and 541, any related or similar testimony or evidence that relates to QMed, and any evidence pertaining to white enveloping, should not be permitted at trial.

November 21, 2022

Michael A. Villa, Jr.
State Bar No. 24051475
S.D. Federal ID No. 3256126
MEADOWS, COLLIER, REED,
COUSINS, CROUCH & UNGERMAN, LLP
901 Main Street, Suite 370
Dallas, TX 75202
(214) 744-2700
(214) 747-3732 (facsimile)
mvilla@meadowscollier.com

Scottie D Allen (admitted *pro hac vice*)
THE ALLEN LAW FIRM
4144 N. Central Expressway
Suite 650
Dallas, TX 75204
(214) 824-7711
scottiedallen@scottiedallenlaw.com

Respectfully submitted,

*/s/ Brandon McCarthy*
Brandon McCarthy (admitted *pro hac vice*)
Attorney-in-Charge
State Bar No. 24027486
Rachel M. Riley
State Bar No. 24093044
S.D. Bar No. 2810706
KATTEN MUCHIN ROSENMAN LLP
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
(214) 765-3600
(214) 765-3602 (facsimile)
brandon.mccarthy@katten.com
rachel.riley@katten.com

Mary C. Fleming (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street NW, North Tower - Suite 200
Washington, DC 20007-5118
(202) 625-3754
mary.fleming@katten.com

***Attorneys for Brian Swiencinski***

## CERTIFICATE OF CONFERENCE

I hereby certify that, on November 21, 2022, counsel for Mr. Swiencinski conferred with counsel for the United States, who stated that the United States is opposed to this motion.

                                             */s/ Brandon McCarthy*
                                             Brandon McCarthy
                                             (admitted *pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Motion in Limine to be served on all counsel of record by filing it with the Clerk on November 21, 2022, using the Court's CM/ECF System.

                                             */s/ Brandon McCarthy*
                                             Brandon McCarthy
                                             (admitted *pro hac vice*)