IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA,

– v. –

BRIAN SWIENCINSKI, ET AL.,

*Defendants*.

No. 4:18-cr-00368

DEFENDANTS' SUPPLEMENT TO THE JOINT MOTION
FOR AN EVIDENTIARY HEARING AND, ALTERNATIVELY, MOTION TO
RECONSIDER THE DENIAL OF THEIR MOTION TO DEPOSE WITNESSES

TO THE HONORABLE ALFRED H. BENNETT:

The defendants file this supplement to the joint motion for an evidentiary hearing (Dkt. 413) to investigate the governmental misconduct that caused the Court's "heavy decision that justice require[d] a mistrial." *See* Trial Tr. 9:12-13 (Dec. 13, 2022) (rough transcript). An evidentiary hearing is necessary to fully develop the facts related to the misconduct, which occurred outside the trial record. *See United States v. Changra*, 735 F.2d 870, 873-74 (5th Cir. 1984).

Given how critical it is to examine individuals involved in the misconduct, if the Court denies the defendants' pending motion for an evidentiary hearing, they alternatively request that the Court reconsider and grant their motion to depose the same witnesses.

## BACKGROUND

The Court declared a mistrial *sua sponte*, not on the motion of any defendant, because of governmental misconduct. *See* Trial Tr. 9:14-15 (Dec. 13, 2022) (rough transcript); *id. at* 17-18 ("It is the job of this Court to ensure a level playing field where justice is the rule of the game"). After five weeks of testimony, it was not a decision that the Court "reached lightly." *Id.* at 9:13-14. Instead, it was the direct result of numerous instances of governmental misconduct that

1

occurred during the investigation, pretrial, and trial proceedings, but was not discovered until late in the Government's case-in-chief.

Thereafter, the defendants moved to depose the case agents and trial prosecutors to develop how and why the misconduct occurred (Dkt. 391). That information will inform how the Court proceeds with the case and, potentially, how the Fifth Circuit and Supreme Court resolve any contested appellate issues that flow from the mistrial. The Court denied the motion to depose witnesses.[1] The defendants then moved for an evidentiary hearing to examine the same witnesses in the Court's presence (Dkt. 413). That motion is pending.

The Court held a hearing on January 17, 2023, to consider how to proceed with the case. It asked the government about the reasons for the discovery violations and related misconduct, as well as the status of the government's "internal investigation" into what happened.

Supervising prosecutors assigned to the same unit of the Department of Justice (DOJ) as the trial prosecutors reported that they had conducted a partial investigation of the trial prosecutors' conduct. The supervising and trial prosecutors are colleagues and collaborate on fraud cases throughout the country. Despite this conflict of interest and the incomplete "internal investigation," the supervising prosecutors predictably reported that the trial prosecutors' flagrant discovery violations and other misconduct was the result of negligence and bad judgment but not "bad faith." *See, e.g.*, Hr'g Tr. 13:2-5 (Jan. 17, 2023); Dkt. 418. The supervising prosecutors admitted that they reached this conclusion without interviewing any of the case agents who repeatedly omitted favorable information from their typewritten summaries of witness interviews—the misconduct at the heart of the case. *Id.* at 15:13-17:7. The Court questioned how

---

[1] The case manager informed the parties by email on January 13, 2023, that the Court had denied the motion to depose; but the Court told the parties on January 17 that it was doing so without prejudice and subject to reconsideration.

such a perfunctory investigation could yield a reliable conclusion that the prosecution team did not act in bad faith. At the Court's urging, the government agreed to continue this conflicted self-investigation and report back to the Court by March 24, 2023.[2]

At the January 17 hearing, the Court also asked the defendants if any precedent or authority permitted prosecutors to testify at an evidentiary hearing. The Court stated that it will consider the defense request for an evidentiary hearing after the government reports on the balance of its investigation on March 24.

The defendants anticipate that the government's investigation will, once again, fall short because the supervising prosecutors already have concluded that no misconduct occurred. What are the chances that they will change their tune in March after asserting in January that no misconduct occurred, nothing was done in bad faith, and the Court should not impose any sanctions?

The defendants researched how other courts have investigated similar governmental misconduct. District courts have scheduled evidentiary hearings to investigate the cause and extent of governmental misconduct. The defendants provide that authority in this supplemental pleading and urge the Court to grant their request for an evidentiary hearing to get to the bottom of the discovery violations and other misconduct that infected this case. Alternatively, the defendants request that the Court reconsider and grant their motion to depose the same witnesses.

---

[2] Although the supervising prosecutors contend that the trial prosecutors acted negligently but not in "bad faith," even "governmental ineptitude and carelessness could be so abhorrent as to warrant a dismissal with prejudice." *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018); *see also United States v. Bundy*, 968 F.3d 1019, 1044-45 (9th Cir. 2020) (affirming district court's dismissal of indictment with prejudice based on *Brady* violations as proper exercise of supervisory authority).

3

**ARGUMENT**

I. **AN EVIDENTIARY HEARING IS REQUIRED WHERE THE CIRCUMSTANCES OF THE MISCONDUCT ARE OUTSIDE THE TRIAL RECORD.**

This Court has the authority to conduct an evidentiary hearing to investigate prosecutorial misconduct. *See, e.g.*, *Changra*, 735 F.2d at 873. A court abuses its discretion by *not* having a hearing where a hearing is necessary to conduct a "thorough inquiry" into the circumstances of the misconduct. *Id.* at 874. A hearing is required to facilitate a "thorough inquiry" when information and details informing the misconduct are "extraneous to and outside of the trial record." *Id.*

The Fifth Circuit has held that a district court abuses its discretion in refusing to hold an evidentiary hearing where the defendant's "allegations of prosecutorial misconduct[,] knowing use of perjured testimony and violation of the sequestration rule[ ] were matters outside the trial record." *United States v. Stephenson*, No. 92-3054, 1993 WL 67139, at *6 (5th Cir. 1993) (unpublished); *see also Richardson v. United States*, 360 F.2d 366, 369 (5th Cir. 1966) (district court erred in failing to conduct evidentiary hearing where allegations of misconduct could not be resolved by reference to trial record). The *Richardson* Court reasoned that the district court abused its discretion "[i]n failing to conduct 'a thorough inquiry . . . to determine exactly what . . . occurred' before overruling the motion [for new trial]." *Id.* (quoting *Johnson v. United States*, 207 F.2d 314, 322 (5th Cir. 1953)). By contrast, in *Changra*, the Fifth Circuit affirmed the district court's decision not to hold an evidentiary hearing only because the misconduct had been fully developed. 735 F.2d at 874 (record "sufficiently negatived any prosecutorial overreaching . . . so as to obviate the need to take further evidence as to" alleged misconduct).

Here, the defendants have identified extensive misconduct—including dozens of discovery violations, evidence of witness coaching, presentation of uncorrected false testimony, and misrepresentations made directly to the Court by the prosecutors. *See, e.g.*, Brian Swiencinski's

4

Ex Parte Supplemental Notice of Government Misconduct, Dkt. 412; Defendants' Omnibus Motion, Dkt. 385.  The government has conceded that discovery violations occurred, *e.g.*, Hr'g Tr. 11:20-12:3 (Jan. 17, 2023).  As a direct result of this misconduct, it dismissed defendant Vladimir Redko, MD, from the case with prejudice in the middle of trial.  Yet, in response to violations egregious enough to cause Dr. Redko's dismissal, the government told the Court that the trial prosecutors simply "fell short" of their constitutional duties.  *Id.* at 52:6.

The DOJ has a policy to pursue consistent resolutions among similarly situated defendants.  *See* DOJ Manual 9-27.001 (principle of federal prosecution is to "assure regularity" and "prevent unwarranted disparity").  It has failed to apply that policy in this case.  Instead, the government now focuses its energy and resources on trying to deny and excuse its misconduct.

That misconduct began with government witness Eric Underwood, an IT contractor, who was cooperating with the government as a confidential informant when he surreptitiously recorded defense counsel while also working with the joint defense team and when he conducted warrantless searches of company records.  *See* Dkts. 200, 209, 249.  The defendants repeatedly tried to explore Underwood's misconduct pretrial, but the Court denied multiple requests for an evidentiary hearing based on the lead trial prosecutor's word—as an officer of the Court—that the government was not complicit in his misconduct.  That "word" is now incredible.

As the Court and the parties contemplate how to proceed—including whether the law permits the government to retry the case even if it wants to do so—critical information surrounding the misconduct is outside the trial record.  An evidentiary hearing is necessary to determine how and why the misconduct occurred and, most important, the culpable mental states of the prosecutors, law enforcement agents, and other members of the prosecution team.  Why did multiple case agents repeatedly omit information favorable to the defendants from the typed 302s

that summarized interviews with multiple witnesses? Why did the trial prosecutors—who were present for, and probably led, most if not all of these witness interviews—fail to correct the repeated omissions of favorable information from the 302s before producing them to the defendants? Why did the trial prosecutors then repeatedly misrepresent to the Court and the defendants—on the record in open court—that they had complied with their *Brady* obligations and produced all favorable information to the defendants? Without an evidentiary hearing, the defendants will be denied their due process rights to participate in this important inquiry, to be heard, and to develop the record in support of the relief that they will seek.

Of note, DOJ's Office of Professional Responsibility (OPR) typically investigates allegations that DOJ prosecutors engaged in misconduct. That procedure helps to ensure that any DOJ investigation is independent, thorough, and impartial. But the supervising prosecutors refuse to acknowledge whether OPR is investigating the allegations of misconduct by the prosecution team in this case. This reinforces why the Court should conduct an evidentiary hearing at which defense counsel can participate. The public's interest in fair, impartial, and transparent legal proceedings; the public's confidence in the integrity of the criminal justice system; and the due administration of justice require that the Court conduct this inquiry with the participation of the defendants in an adversarial proceeding instead of relying on DOJ's Fraud Unit to investigate itself under a cloak of darkness.

The Court must conduct an evidentiary hearing so it can make reliable findings of fact and conclusions of law regarding the governmental misconduct. *Cf. United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977) (in ruling on motions for new trial, "[w]here evidentiary hearings are ordered, it is because of certain unique situations typically involving allegations of jury tampering, *prosecutorial misconduct*, or third party confession" (emphasis added)).

## II. DISTRICT COURTS HAVE HELD EVIDENTIARY HEARINGS IN SIMILAR CIRCUMSTANCES.

Precedent supports the defendants' request for an evidentiary hearing at which defense counsel may examine prosecutors and agents.[3]

For example, in *United States v. Jain*, the district court conducted an evidentiary hearing to investigate the government's failure to timely produce discovery located on "three electronic devices that had been turned over to the government by a key cooperator." No. 19-cr-59, 2020 WL 6047812, at *1 (S.D.N.Y. Oct. 13, 2020). This violation was discovered approximately five weeks before the trial was scheduled to begin and required a continuance. *Id.* at *6-7. The defendant moved to dismiss the indictment, arguing that the discovery violations were "an act of deliberate misconduct that violated his right[s] to" due process, counsel of his choice, and a speedy trial. *Id.* at *2. The court conducted an evidentiary hearing on the motion.

At the evidentiary hearing, the Court allowed the defendant to examine a prosecutor and an FBI agent. *Id.*; *see also* Hearing Transcript, *United States v. Jain,* No. 19-cr-59, Dkt. 124, attached as Exhibit 1. Other members of the prosecution team provided sworn declarations. *Jain*, 2020 WL 6047812, at *2. The court denied the motion to dismiss but strongly admonished the government and ordered the prosecution and FBI "to meet and confer on the corrective actions they will undertake to ensure that this sorry chapter cannot be repeated." *Id.* at *9-10, *12. The defendant, initially charged with four counts alleging a $20 million scheme to commit securities and wire fraud, eventually pled guilty to one count of obstruction of justice and was sentenced to three months in prison, one year of supervised release, and a $15,000 fine. Judgment, *United*

---

[3] In complex cases such as this one, where the governmental misconduct is extensive, fact-specific, and requires a detailed inquiry into metadata and dozens of pages of handwritten agent notes, it would be exceedingly difficult and unhelpful to the Court to have a hearing at which defense counsel were not permitted to examine the relevant witnesses.

7

*States v. Jain,* No. 19-cr-59, Dkt. 160, attached as Exhibit 2.[4]

In *United States v. Franicevich*, a district court conducted a pretrial evidentiary hearing to investigate an alleged *Brady* violation. 471 F.2d 427 (5th Cir. 1973). The defendant "call[ed] as a witness the Assistant United States Attorney who was assigned to prosecute the case and was familiar with the report [that allegedly was suppressed], and was permitted to examine him at length concerning the report." *Id.* at 429. The Fifth Circuit ultimately rejected the *Brady* claim but did not reject the district court's decision to conduct the evidentiary hearing and permit examination of the prosecutor by defense counsel. *Id.*

Other examples abound:

- *United States v. Lashley*, No. 09-cr-307, 2011 WL 5237291, at *2 (E.D. Pa. Nov. 3, 2011), *aff'd*, 524 F. App'x 843 (3d Cir. 2013) (district court held post-trial evidentiary hearing at which lead prosecutor testified concerning government's failure to produce plea agreement for cooperating witness);

- *United States v. Morgan*,[5] No. 18-cr-108, 2022 WL 2826382, *3-4 (W.D.N.Y. July 20, 2022) (district court ordered evidentiary hearing regarding discovery violations and "inaccurate statements … made by the government"; but to avoid hearing, government offered plea agreements with little or no prison time, which defendants accepted in $500 million fraud case);[6] *see also* Judgments, *United States v. Morgan*, No. 21-cr-32,

---

[4] *Jain* involved a discrete but voluminous discovery violation in the form of failing to timely disclose materials on three electronic devices. At about the same time as *Jain*, then-District Judge Allison Nathan (who now serves on the Second Circuit) presided over a case involving facts more similar to this case. *See United States v. Nejad*, 487 F. Supp. 3d 206 (S.D.N.Y. 2020). In *Nejad*, "before, during, and after trial," the government "made countless belated disclosures of arguably (and, in one instance, admittedly) exculpatory evidence." *Id.* at 207. The defendant was convicted, but following post-trial briefing, the government agreed to dismiss the indictment with prejudice. *Id.* at 209. In a decision relied on by the court in *Jain*, Judge Nathan ordered additional fact finding—including the government's submission of affidavits—to determine whether to impose sanctions. *Id.* at 224-25. The court considered having an evidentiary hearing. *Id.* at 225. Ultimately, a hearing was unnecessary, likely because the indictment was dismissed with prejudice.

[5] *Morgan* also is referred to as *United States v. Giacobbe*.

[6] After the case was resolved, the court concluded, "[I]t would not be a prudent exercise of

8

      Dkts. 141, 143, 145, 147, attached as Exhibit 3;

- *United States v. Slayton*, No. 16-cr-40, 2019 WL 3892426, at *1, 5 n.2 (S.D. Miss. Aug. 19, 2019) (evidentiary hearing held on alleged *Brady* violations at which law enforcement officers testified);

- *DeMarco v. United States*, 415 U.S. 449, 450 (1974) (issue of whether witness received promises in exchange for testimony should have been "remanded for initial disposition by the District Court after an evidentiary hearing"); and

- *Giglio v. United States*, 405 U.S. 150, 152-53 (1972) (discussing affidavits filed by government prosecutors, including U.S. Attorney, swearing to circumstances of government's promise to witness that was not disclosed to defense).

In short, ample precedent exists where district courts have conducted or ordered evidentiary hearings to investigate governmental misconduct, at which defense counsel has examined trial prosecutors and case agents. There is nothing unusual about the defendants' request here.[7]

### III. THE DEFENDANTS PROPOSE A NARROWLY TAILORED EVIDENTIARY HEARING.

Although the misconduct in this case is broad, the defendants do not seek to undertake a fishing expedition. Rather, they want to examine a narrowly tailored list of law enforcement agents and trial prosecutors directly connected to the misconduct and responsible for the Court's decision to declare a mistrial. To the best of the defendants' knowledge at this time, these witnesses are:

1. Steven Sandh
2. Dino Vergara
3. Angela Tucker
4. Derek Harmon
5. Patricia Garcia

---

its discretion to investigate on its own the allegations that were to be the subject of the evidentiary hearing in this case." *Morgan*, 2022 WL 2826382, at *4.

[7] Most allegations of prosecutorial misconduct occur *post-conviction* because defendants usually do not discover misconduct until after the trial and appeal. In that context, under Rule 8 of the Rules Governing § 2254 and § 2255 Proceedings, district courts may conduct evidentiary hearings on these claims. *See United States v. Auten*, 632 F.2d 478, 482 (5th Cir. 1980) (remanding § 2255 motion for evidentiary hearing to investigate allegation of governmental misconduct because, under § 2255, evidentiary hearing should be held unless motion and record conclusively show that relief should be denied).

      6.     Amel Khirieh
      7.     Aleza Simone Remis
      8.     Devon Morel Helfmeyer
      9.     Katherine Shettig Raut

Misconduct unquestionably occurred in this case. Precedent supports conducting an evidentiary hearing. The defendants promise to keep it tight.

## **CONCLUSION**

The defendants respectfully request that the Court order an evidentiary hearing. Alternatively, they request that the Court reconsider and grant their motion to depose witnesses.

Dated: March 3, 2023

Respectfully submitted,

*/s/ Samuel Louis*
Samuel Louis
Texas Bar No. 12588040
Holland & Knight LLP
811 Main Street, Suite 2500
Houston, Texas 77002
(713) 244-6861
(713) 821-7001 (facsimile)
samuel.louis@hklaw.com

Justo Mendez
Texas Bar No. 24057616
Greenspoon Marder
1318 Crystal Hills Dr.
Houston, TX 77077
281-757-1305
justo.mendez@gmlaw.com

**Attorneys for Dr. Christopher Ince**

*/s/* Jeffrey J. Ansley
Jeffrey J. Ansley
Texas Bar No. 00790235
Arianna G. Goodman
Texas Bar No. 24109938
Samuel M. Deau
Vedder Price, P.C.
300 Crescent Court, Suite 400
Dallas, Texas 75201
(469) 895-4790
jansley@vedderprice.com

*/s/ Josh Schaffer*
Josh Schaffer
Texas Bar No. 24037439
1021 Main, Suite 1440
Houston, Texas 77002
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

Dan Cogdell
State Bar No. 04501500
1000 Main Street, Suite 2300
Houston, TX 77002
(713) 426-2244
dan@cogdell-law.com

**Attorneys for Scott Breimeister**

*/s/* Brandon McCarthy
Brandon McCarthy (admitted *pro hac vice*)
Texas Bar No. 24027486
Rachel M. Riley
Texas Bar No. 24093044
Katten Muchin Rosenman LLP
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
(214) 765-3600
(214) 765-3602 (facsimile)
brandon.mccarthy@katten.com

agoodman@vedderprice.com
sdeau@vedderprice.com

**Attorneys for Ronnie McAda, Jr.**

rachel.riley@katten.com

Mary C. Fleming (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
2900 K Street NW, North Tower - Suite 200
Washington, DC 20007
(202) 625-3754
(202) 298-7570 (facsimile)
mary.fleming@katten.com

Michael A. Villa, Jr.
Texas Bar No. 24051475
Meadows, Collier, Reed,
Cousins, Crouch & Ungerman, LLP
901 Main Street, Suite 370
Dallas, TX 75202
(214) 744-2700
(214) 747-3732 (facsimile)
mvilla@meadowscollier.com

**Attorneys for Brian Swiencinski**

## CERTIFICATE OF SERVICE

I served a true and correct copy of this document on all counsel of record by using the Court's CM/ECF System on March 3, 2023.

        Respectfully submitted,

        */s/ Josh Schaffer*
        Josh Schaffer