IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– v. –<br><br>BRIAN SWIENCINSKI,<br>SCOTT BREIMEISTER,<br>CHRISTOPHER INCE, M.D.,<br>RONNIE MCADA, JR.,<br><br>    *Defendants*. | No. 4:18-cr-00368 |

**DEFENDANTS' OPPOSED MOTION FOR *IN CAMERA* REVIEW
AND TO INSPECT GRAND JURY MATERIAL**

TO THE HONORABLE ALFRED H. BENNETT:

**INTRODUCTION**

    Defendants respectfully request that this Court order the government to produce certain transcripts of the grand jury proceedings that resulted in the return of the initial indictment and superseding indictment. This request is predicated on significant discovery violations and other government misconduct that occurred in this case. Examples of this misconduct include inaccurate and late-disclosed 302 reports of witnesses interviewed both before and during trial, the government's failure to correct false testimony, the government's knowing overstatement to the jury of the scope and bases of the alleged fraud and related dollar amount (including reshaping and recalculating this amount in real time during trial), and unabashed witness coaching. Given how these issues pervaded the trial and infected its every aspect, including the government's pretrial conduct, it is likely these issues also pervaded the grand jury proceedings that led to the indictments in this case. If such misconduct before the grand juries occurred, dismissal of the superseding indictment is the appropriate remedy. *E.g.*, *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-57 (1988).

1

Defendants reasonably believe that misconduct infected the grand juries. In other words, the government's conduct before the grand jury likely mirrored its established trial and post-indictment misconduct. Thus, the defendants request disclosure of grand jury materials to determine if misconduct actually occurred, and if so, its character and extent. Specifically, the defendants request that the Court first conduct an *in camera* review of a list of all witnesses appearing before the grand jury to determine if any of them are the same individuals about whom the defendants have ongoing concerns related to ethics, *Brady*, or other evidentiary or disclosure issues. If so, then the defendants request that the Court order the government to produce those grand jury transcripts to the defendants, as well as any other transcripts or evidence that might uncover irregularities occurring before the grand jury.[1]

The defense previously asked the government whether any of the individuals that defense counsel is concerned about testified before the grand jury. The government refused to provide that information, and cited as the basis for its refusal the grand jury secrecy provisions of Federal Rule of Criminal Procedure 6(e). However, as discussed below, secrecy concerns are diminished after the grand jury proceedings conclude. And any such concerns, if the Court concludes they still stand, can be addressed by the Court's preliminary *in camera* review of a list of grand jury witnesses before determining whether to order disclosure of any transcripts. Moreover, the defendants have a particularized need for this information and have tailored their request so it is no broader than necessary.

Courts must allow examination of grand jury materials where cause exists because "disclosure, rather than suppression, of relevant [grand jury] materials ordinarily promotes the

---

[1] The individuals whose grand jury testimony the defendants specifically seek are listed in Part III below.

proper administration of criminal justice." *Dennis v. United States*, 384 U.S. 855, 870 (1966). As described below, the defendants have good cause to examine the grand jury materials, and disclosure of those materials would certainly promote—and is necessary to—the proper administration of justice.

In addition, defense counsel believes the government failed to comply with Department of Justice policy that specifically requires prosecutors to present and disclose to the grand jury evidence that negates the guilt of a subject of the investigation. *See* Dep't of Justice Manual 9-11.233. This policy was intended to enable courts to review allegations of grand jury abuse and refer violations to the Department of Justice Office of Professional Responsibility. *See id.* Given the information revealed in this case after this Court ordered the production of handwritten notes of the prosecutors and agents, it is clear the government possessed information favorable to the defense, but that was pointedly not voluntarily disclosed. Defense counsel believes such egregious actions by the government warrant review of the grand jury proceedings and ultimately dismissal of the superseding indictment.

## **ARGUMENT**

This Court has the authority to order disclosure of grand jury material, including "preliminarily to or in connection with a judicial proceeding," or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E); *see also Dennis*, 384 U.S. at 869-70 (confirming district court's authority to order disclosure of grand jury testimony). A party seeking grand jury material must show "that 'a particularized need' exists for the materials that outweighs the policy of secrecy." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959)).

To make this showing, the party must demonstrate the materials sought are "needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979). All three criteria are met here.

I. **Disclosure Is Needed to Avoid Injustice Because There Is a Significant Risk the Misconduct that Required a Mistrial Also Infected the Grand Jury Proceedings.**

Discovery of grand jury material is needed to avoid possible injustice in this case. A defendant has a constitutional right to not be brought to trial except after a valid indictment. *See United States v. McKenzie*, 678 F.2d 629, 631-32 (5th Cir. 1982). Moreover, this Court has supervisory power to protect the integrity of the grand jury process. *Id.* at 631. Thus, where government misconduct before the grand jury occurs, the indictment should be dismissed. *Id.*; *see also Bank of Nova Scotia*, 487 U.S. at 256-57.

Here, given the significant history of government misconduct in this case, the defendants have good reason to believe the misconduct and errors revealed during trial also infected the grand jury proceedings. At least four examples demonstrate why this belief is well founded and sufficiently particularized to justify disclosure of the materials the defendants request.

First is the misconduct surrounding William Chan. Mr. Chan was a critical witness for the government at trial. He testified as to bank records and the purported flow of money among participants in the alleged scheme. Before he testified, prosecutors directed Mr. Chan to include incomplete sources in his purported "summary" exhibits, and coached Mr. Chan to lie if defense attorneys asked questions related to the sources of his financial summaries. *See, e.g.*, Tr. Trans. Day 16 at 7-12, 23-34, 41-44 (Dec. 7, 2022). And working hand-in-hand with Mr. Chan, the government crafted a false narrative of the financial transactions at issue in this case. *See, e.g.*,

4

Brian Swiencinski's Ex Parte Supp. Notice of Gov't Misconduct, Dkt. 412 at 4-12 (detailing issues with Mr. Chan's testimony and related summary exhibits). This misconduct and witness coaching by the government's trial team, while unfortunately not the sole factor, was a driving force behind the Court's declaration of a mistrial.

In light of what happened with Mr. Chan at trial, similar false and misleading financial or other evidence was likely put before the grand juries. If that occurred, there would be serious questions as to the validity of either of the indictments returned by the respective grand juries.

A second example is the government's knowing and repeated overstatements to the jury of the scope of the alleged fraud. For instance, the government included in their fraud calculations specialty prescriptions, even though government witness Leonard Carr specifically told the government the specialty prescriptions were 100% legitimate (this statement is clearly *Brady* material, but was concealed by the government until the Court ordered additional disclosures mid-trial). The government also included in its fraud numbers more than $7 million in claims that it knew were not actually adjudicated or paid. *Id*. 11-12, 26-27 (detailing problems with the scope of the alleged fraud as presented to the jury by the government).

Given this conduct during trial, it is likely the government made similar false representations to the grand jury as to the scope of the alleged fraud presented to it for indictment. Such misconduct before the grand jury would have compromised the grand jury proceedings, rendered them fundamentally unfair, and unfairly biased the grand jurors. *See Bank of Nova Scotia*, 487 U.S. at 256-57 (explaining that such circumstances require dismissal of the indictment); *see also McKenzie*, 678 F.2d at 631 (same).

Third, the Court-ordered disclosures during trial revealed discrepancies between agent notes and 302 reports (including omission of information from 302 reports materially helpful to

5

the defense), and that the prosecutors had failed to correct false testimony during trial. This misconduct is detailed in previous filings and incorporated herein.[2] At this stage, it is reasonable to believe—and indeed, would be unreasonable *not* to believe—that false testimony and other similar misconduct occurred before the grand jury, particularly if the agents who authored the flawed notes and 302 reports testified before the grand jury (which is very likely, given those were the main case agents).

Fourth, there is also a potential for mischief before the grand jury involving government informant Eric Underwood. The defendants have long suspected the government infiltrated the defense camp pretrial through Underwood who, among other things, made undercover recordings of conversations with counsel for some of the defendants, and then turned those recordings over to the government. In addition, the defense believes the government conducted illegal searches and seizures through informant Underwood. *See* Defs.' Mot. for a *Kastigar*-Like Evidentiary Hr'g, Dkt. 200-1 (detailing government's misconduct related to Underwood); *see also* Brian Swiencinski's Ex Parte Supp. Notice of Gov't Misconduct, Dkt. 412 at 31. If this information—that was illegally recorded, or illegally searched and seized—was somehow used or revealed before the grand jury, it would require dismissal of the indictment. *See United States v. Melvin*, 650 F.2d 641, 646 (5th Cir. 1981).

For all of these reasons, given the high likelihood that misconduct occurred before the grand jury, justice requires disclosure of the grand jury material requested herein so that the defendants can determine if misconduct actually occurred.

---

[2] *See* Defs.' Joint Mot. for Provisional Relief, Dkt. 378; Def. Christopher Ince's Mot. in Support of Defs.' Joint Mot. for Provisional Relief, Dkt. 379; Def. Christopher Ince's Supp. Resp. to Court's Request for Gov't Production Deficiencies, Dkt. 383; Omnibus Mot. for Relief, Dkt. 385; Brian Swiencinski's Ex Parte Supp. Notice of Gov't Misconduct, Dkt. 412.

**II.      The Need for Disclosure is Greater than the Need for Continued Secrecy.**

For the same reasons explained in Part I above, the need for disclosure is greater than the need for continued secrecy. Though "a general rule of secrecy shrouds the proceedings of grand juries," *Shields v. Twiss*, 389 F.3d 142, 147 (5th Cir. 2004), disclosure is "wholly proper" after the grand jury's functions are ended "where the ends of justice require it," *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234 (1940). The interest in grand jury secrecy is diminished in this case because the grand jury has ended its activities. *Douglas Oil*, 441 U.S. at 222.

In these circumstances, it is an abuse of discretion not to allow a tailored inspection of grand jury materials. For example, in *Dennis*, the Supreme Court held the district court abused its discretion by refusing to disclose the grand jury testimony of witnesses who had testified years earlier and who had publicly testified as to the same matters. 384 U.S. at 875. The Court reasoned, "[T]he defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked." *Id.* at 873.

Relying on *Dennis*, the Fifth Circuit held the district court abused its discretion by not allowing the defendant to inspect grand jury materials where the defendant suspected infirmities requiring dismissal of the indictment. *United States v. Bullock*, 448 F.2d 728, 729 (5th Cir. 1971). The Fifth Circuit remanded with instructions to allow the defendant to inspect the relevant grand jury records. *Id.*; *see also McKenzie*, 678 F.2d at 631 (explaining district court had ordered the release of grand jury transcripts to the defendants, and the defendants then moved to dismiss the indictments for prosecutorial misconduct before the grand jury); *In re Corrugated Container Antitrust Litig.*, 687 F.2d 52, 55-56 (5th Cir. 1982) (affirming district court's release of grand jury transcripts).

Moreover, in circumstances similar to those here, the U.S. District Court for the District of Columbia ordered the government to produce grand jury transcripts following the mid-trial revelation of the government's redaction of critical *Brady* material from a 302 report. *See United States v. Stevens*, No. 08-cr-231, Trial Tr. Day 9 52:22-53:3, Dkt. 359.

Here, inspection of the grand jury materials is essential to determine whether prosecutorial misconduct occurred before the grand juries. Moreover, the need for secrecy is lessened given the grand jury proceedings have ended. The defendants are entitled to information that would help to determine whether their rights were violated in the grand jury proceedings that led to their indictments.

### III. The Defendants Have Reasonably Structured Their Request to Cover Only the Material Needed.

The defendants' request is reasonable because it is narrowly tailored. Though defendants might later determine disclosure of additional grand jury testimony is required, they limit their request at this stage to individuals specifically implicated in prominent instances of government misconduct in this case—as well as any other material that might uncover irregularities occurring before the grand jury. To that end, at a minimum, if any of the nine individuals listed below testified before the grand jury, the transcripts of their grand jury testimony should be produced:

1. Amel Khirieh
2. Ashley Tucker
3. Derek Harmon
4. Dino Vergara
5. Grace Hinton
6. Marrion Eppright
7. Patricia Garcia
8. Steven Sandh
9. William Chan

The first eight individuals are key agents who worked on this case. They were each present at interviews resulting in notes or 302 reports that were late disclosed and/or contained material

8

inaccuracies, or they are otherwise implicated in the government misconduct revealed during trial. *See* App'x to Brian Swiencinski's Ex Parte Supp. Notice of Gov't Misconduct, Dkt. 412, Exhibit 11 (index of late disclosures of interview notes and reports, including those involving Khirieh, Tucker, Harmon, Vergara, Eppright, Garcia, and Sandh); Brian Swiencinski's Ex Parte Supp. Notice of Gov't Misconduct, Dkt. 412 at 5-7 (discussing how the government instructed Chan not to refer in his trial testimony to Grace Hinton or her files); *id.* at 27 (discussing email between Hinton and prosecution team that over $7 million in claims had not been adjudicated—claims which the prosecution team then nonetheless presented to the jury).[3] The ninth listed individual, William Chan, is the government's witness whose stricken testimony was infected with the issues discussed above.

So that the grand jury's realm is invaded no more than necessary, the defendants first request that the Court conduct an *in camera* inspection of the list of witnesses who testified before the grand jury. If any of the above-listed individuals testified, then the defendants request transcripts of their grand jury testimony.

The government might be tempted to suggest that instead of turning over the grand jury transcripts, the more appropriate course is for the Court to conduct an *in-camera* review of any requested testimony. But that would be inappropriate because "[t]he determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis*, 384

---

[3] *See also, e.g.*, Omnibus Mot. for Relief, Dkt. 385 at 16-17 (identifying material discrepancies between interview notes and reports for interviews conducted by Amel Khirieh); *id*. at 5, 7-8, 12 (same as to Ashley Tucker); *id*. at 5, 13-14, 19 (Derek Harmon); *id*. at 2-8, 10, 15 (Dino Vergara); *id*. at 5 (Patricia Garcia); *id*. at 16-17 (Steven Sandh); Brian Swiencinski's Ex Parte Supp. Notice of Misconduct, Dkt. 412 at 12-13, 21-22 (identifying material discrepancies between interview notes and reports authored by Dino Vergara); Ince's Supp. Response, Dkt. 383 (identifying material discrepancies between interview notes and reports as to interviews conducted by Dino Vergara and Ashley Tucker).

U.S. at 875. "In our adversary system, it is enough for judges to judge," and thus, "[t]he trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervise the process." *Id.*

In short, the defendants request that the court conduct an *in camera* review to determine who testified before the grand jury. If any of the individuals listed above testified, then those transcripts should be made available to the defense. This is a narrowly crafted, reasonable request and the defendants are entitled to this information.

## CONCLUSION

The defendants respectfully request that this Court grant this motion, conduct an *in-camera* review to determine who testified before the grand jury, and if any of the individuals listed herein testified, order the production of that testimony to the defendants.

Dated: March 16, 2023

Respectfully submitted,

*/s/ Samuel Louis*
Samuel Louis
Texas Bar No. 12588040
samuel.louis@hklaw.com
Holland & Knight LLP
811 Main Street, Suite 2500
Houston, Texas 77002
(713) 244-6861
(713) 821-7001 (facsimile)

Justo Mendez
Texas Bar No. 24057616
Greenspoon Marder
1318 Crystal Hills Dr.
Houston, TX 77077
281-757-1305
justo.mendez@gmlaw.com

**Attorneys for Dr. Christopher Ince**

*/s/ Josh Schaffer*
Josh Schaffer
Texas Bar No. 24037439
1021 Main, Suite 1440
Houston, Texas 77002
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

Dan Cogdell
State Bar No. 04501500
Jones Walker
811 Main Street, Suite 2900
Houston, TX 77002
(713) 437-1869
(713) 437-1810 (facsimile)
dcogdell@joneswalker.com

**Attorneys for Scott Breimeister**

| | |
|---|---|
| */s/ Jeffrey J. Ansley*<br>Jeffrey J. Ansley<br>Texas Bar No. 00790235<br>Arianna G. Goodman<br>Texas Bar No. 24109938<br>Samuel M. Deau<br>Vedder Price, P.C.<br>300 Crescent Court, Suite 400<br>Dallas, Texas 75201<br>(469) 895-4790<br>jansley@vedderprice.com<br>agoodman@vedderprice.com<br>sdeau@vedderprice.com<br><br>**Attorneys for Ronnie McAda, Jr.** | */s/ Brandon McCarthy*<br>Brandon McCarthy (admitted *pro hac vice*)<br>Texas Bar No. 24027486<br>Rachel M. Riley<br>Texas Bar No. 24093044<br>Katten Muchin Rosenman LLP<br>2121 N. Pearl Street, Suite 1100<br>Dallas, TX 75201<br>(214) 765-3600<br>brandon.mccarthy@katten.com<br>rachel.riley@katten.com<br><br>Mary C. Fleming (admitted *pro hac vice*)<br>Katten Muchin Rosenman LLP<br>2900 K Street NW, North Tower - Suite 200<br>Washington, DC 20007<br>(202) 625-3754<br>(202) 298-7570 (facsimile)<br>mary.fleming@katten.com<br><br>Michael A. Villa, Jr.<br>Texas Bar No. 24051475<br>Meadows, Collier, Reed,<br>Cousins, Crouch & Ungerman, LLP<br>901 Main Street, Suite 370<br>Dallas, TX 75202<br>(214) 744-2700<br>(214) 747-3732 (facsimile)<br>mvilla@meadowscollier.com<br><br>**Attorneys for Brian Swiencinski** |

## CERTIFICATE OF CONFERENCE

I hereby certify that defense counsel has conferred with counsel for the United States, and that they are opposed to this motion.

*/s/ Brandon McCarthy*
Brandon McCarthy

## CERTIFICATE OF SERVICE

      I hereby certify that I caused a true and correct copy of the foregoing Opposed Motion for *In Camera* Review and to Inspect Grand Jury Material to be served on all counsel of record by filing it with the Clerk on March 16, 2023, using the Court's CM/ECF System.

                                                */s/ Brandon McCarthy*
                                                Brandon McCarthy