UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 18-CR-368 |
| | § | |
| BRIAN SWIENCINKSI, | § | |
| SCOTT BREIMEISTER, | § | |
| CHRISTOPHER INCE, and | § | |
| RONNIE MCADA, | § | |
| | § | |
| Defendants. | § | |

**UNITED STATES' OMNIBUS RESPONSE IN OPPOSITION TO BREIMEISTER, SWIENCINSKI, AND MCADA'S MOTIONS TO WITHDRAW THE ORDER DENYING DOUBLE JEOPARDY MOTION AND TO CONDUCT A HEARING, AND RESPONSE TO MOTION TO MAKE FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DOUBLE JEOPARDY ISSUE (DKT. NOS. 456, 463, 465); AND DEFENDANT INCE'S MOTION TO DISMISS (DKT NO. 464) BASED ON DOUBLE JEOPARDY**

While the parties have presented the Court with a number of oral and written motions, which create a complex procedural chain to follow, the myriad requests can be distilled to two issues: (i) whether double jeopardy requires the dismissal of the superseding indictment; and (ii) whether this Court has enough evidence to and should enter findings of fact and conclusions of law with respect to its ruling on the double jeopardy question.

Although the Court has now withdrawn its prior ruling, this Court previously ruled correctly on the first question presented. The additional motions filed by the defendants have not changed the basic facts or law concerning the double jeopardy question, so the Court should once again rule that double jeopardy does not preclude a retrial of these defendants. Not only did several of the defendants here *request* a mistrial, they did not object when the court declared a mistrial. The government's conduct did not "goad" the defendants into making their multiple requests for

1

a mistrial or failing to object to the Court's *sua sponte* declaration of mistrial.  Moreover, even if the defendants had objected to the Court's declaration of mistrial, the Court identified the manifest necessity for a mistrial that would have overcome such (illusory) objections.  Accordingly, double jeopardy is inapplicable to bar retrial, and the Court should deny defendants' motions to dismiss based on double jeopardy.

Next, the parties agree that written findings of fact and conclusions of law with respect to the double jeopardy ruling are appropriate. While the government believes this Court's original denial of certain defendants' motions was proper, and while the record already contains the Court's findings supporting its declaration of a mistrial, the government has no objection to distilling the record in this manner.  To that end, the government is contemporaneously providing this Court and parties with proposed findings of fact and conclusions of law that reflect the Court's prior statements. *See* Attachment A.  Because the record is already complete, no hearing or further evidence is necessary, as acknowledged by defendant Breimester's counsel.  *See* Hrg. Tr. 4/4/2023 at 64:25–65:2 ("The Court can resolve the legal claim regarding double jeopardy and barring a retrial without necessarily conducting an evidentiary hearing.").

## BACKGROUND

On December 13, 2022, trial in this matter had been ongoing for several weeks.  During the trial proceedings, and in the wake of additional mid-trial disclosures by the government, several defendants moved for a mistrial on numerous occasions:

- On December 6, 2022, counsel for Swiencinski, Ince, Breimeister (and Redko) moved for mistrials.  *See* Tr. Trans. 12/6/22 at 95:15–20 (Redko, Breimeister); 166:4–7, 11–15 (Swiencinski, Ince).

- On December 7, 2022, counsel for Swiencinski again moved for a mistrial twice. *See* Tr. Trans. 12/7/22 at 37:24–38:2 (Swiencinski); 214:7–20 (Swiencinski).

- On December 12, 2022, this Court suggested a mistrial was a potential remedy.  In response, Swiencinski requested a mistrial, Tr. Trans. 12/12/22 at 33:18–21. Ince

2

responded he "was not asking for a mistrial," but did not explicitly object to one. *Id.* at 36:16–36:21. The other three defendants did not clearly request or object to a mistrial. The Court further forecasted that if the additional disclosures impacted more than the four witnesses it believed, based on defense counsel's contentions, had already been impacted, the Court would "entertain the possibility of a mistrial." *See* Tr. Trans. 12/12/22 at 48:25–49:9.

On December 13, 2022, this Court declared a mistrial *sua sponte*.[1] *See generally* Tr. Trans. 12/13/22 at 12. The Court provided the following reasons as to why it ordered a mistrial:

- At least six of the twenty-one witnesses who had testified had been impacted by additional factual disclosures made by the government during trial ("Additional Disclosures"), and "[t]he six witnesses impacted at a minimum represent a quarter by number of the witnesses called to the stand so far. Mr. Carr was one of the more lengthy witnesses so I'm sure if I would add the time up, the impact of the testimony would be significantly greater than a quarter of the testimony that has occurred";

- If the Court determined that only certain witnesses and exhibits were impacted by the Additional Disclosures, "the Court would have to halt the trial, call up the transcript, and dissect the witnesses' testimony to pull out the testimony and exhibits impacted by the late disclosures from the government, a time-consuming exercise";

- The Court had already struck "portions of [Mr. Chan's] testimony and … [struck] certain exhibits and had to give an instruction to the jury to disregard said testimony and exhibits";

- In light of the Additional Disclosures, the Court believed it "[w]ould now have to order the striking of testimony and exhibits related to other witnesses, potentially the entire testimony of witnesses; but at a minimum, certain testimony and certain exhibits";

- The Court would have had to "instruct the jury as to which portions of testimony and which portions of that witness's testimony and exhibits to be ignored during their deliberations or the Court would have to allow the recall of witnesses to the stand to allow the defense, now in possession of materials that they should have been in possession of prior to the start of the trial, to continue or reopen their cross-examination of these witnesses, another time-consuming exercise"; and

---

[1] The government later learned that defendant Breimeister had submitted an *ex parte* sealed filing on the morning of December 13, 2022, prior to the Court's declaration of mistrial, stating that he opposed a mistrial unless it was accompanied by particular conditions. Dkt. No. 385 at 27. Notwithstanding his discussion of the issue in this *ex parte* filing, Breimeister did not raise any objection in Court in response to its mistrial declaration.

- In light of the dismissal of defendant Vladimir Redko, the Court questioned whether it would have had "to unwind the questioning of counsel and/or the exhibits used by the Defendant Redko that are before this jury."

*See* Tr. Trans. 12/13/22 at 9:2–11:14.

The Court therefore found that continuing the trial would have placed on the jury a "heavy burden to go back and follow any crafted instruction regarding their ability to disregard testimony and exhibits in reaching a decision on these defendants' guilt, it is a burden too heavy not only for this trial, but it is a burden too heavy for this jury." *Id.* at 12:6–11. The Court also stated that "taking as a whole all of the disclosures, the wide-ranging impact, the surgery that would be required to the testimony and the exhibits that would ultimately be before this jury, in this Court's opinion, has the real possibility of altering the outcome of this trial. A just result would be in jeopardy." *Id.* at 12:21–13:1.[2]

Upon returning to the courtroom to notify the jury of the Court's decision on December 13, 2022, the Court specifically inquired whether the parties wished to raise any issues prior to bringing in the jury. *Id*. at 14:8 ("THE COURT: Counsel for the defense, anything before we bring the jury in?"). None of the defendants raised any objection to the mistrial, despite the intervening recess and the Court providing an explicit opportunity to do so. *See id.* at 14:4–10. Further, none of the defendants have made any subsequent filings seeking to belatedly object to the Court's declaration of mistrial.

On March 22, 2023, more than three months after this Court declared a mistrial, defendant Breimeister moved to dismiss the superseding indictment on two Constitutional grounds: the Fifth Amendment's protection against double jeopardy; and the Due Process Clause's protections

---

[2] The Court reaffirmed its reasoning for its declaration of a mistrial at a hearing on January 17, 2023. *See* Hrg. Trans. 1/17/23 at 5:1–6:8.

4

against "outrageous government misconduct."  *See* Dkt. No. 428.  Defendants Swiencinski and McAda also filed motions to dismiss on the same bases, Dkt. Nos. 439, 444, and defendant Ince apparently moved to dismiss orally, *see* Rough Hrg. Trans. 4/4/23 at 72:5–9.

On April 4, 2023, the Court held a hearing during which it orally denied the defendants' motions to dismiss based on double jeopardy.  *See* Rough Hrg. Trans. 4/4/23 at 93:1–3 ("As to the motions to dismiss the superseding indictment and to bar a retrial based upon double jeopardy, those motions are denied."); *see also* Minute Entry, 4/4/23.[3]  This Court took under advisement the defendants' motions to dismiss based on due process.  *Id.*

On April 11, 2023, defendant Breimeister filed (i) an opposed motion to withdraw the order denying the motion to dismiss based on double jeopardy and requesting the Court to conduct a hearing on the double jeopardy issue, and (ii) an unopposed motion requesting the Court make findings of fact and conclusions of law on the double jeopardy issue.  Dkt. No. 456.[4]

On April 12, 2023, the government filed a written opposition to the defendants' motion to dismiss based on due process.  *See* Dkt. No. 461.[5]

---

[3] On April 18, 2023, defendant Swiencinski filed a Notice of Appeal of this Court's April 4, 2023, oral denial of his motion to dismiss based on double jeopardy, which remains pending with the Fifth Circuit.

[4] Although the Court already granted, in part, defendant Breimeister's request to withdraw the Court's April 4, 2023, oral denial of his motion to dismiss based on double jeopardy, it does not appear that the Court has clearly withdrawn its order as to the other defendants, at least as of now. To the extent that the Court also intends to reconsider its oral denial of any other motion to dismiss based on double jeopardy made by any other defendant, the government submits that this Court should once again deny these additional defendants' motions to dismiss based on double jeopardy, as it properly did in response to their oral motions on April 4, 2023.

[5] The motions to dismiss the indictment on due process grounds are fully briefed and currently pending before the Court.  *See* Defendants' Motions (Dkt. Nos. 428, 439); Government Opposition (Dkt. No. 461); Defendant Swiencinski's Reply (Dkt. No. 471).

On April 17, 2023, the Court granted defendant Breimeister's motion to withdraw the Court's order denying his motion to dismiss based on double jeopardy, ordered the government to respond to the motion to dismiss by April 28, 2023, and set a hearing for May 4, 2023. Dkt. No. 462.

Soon thereafter, later on April 17, 2023, defendant Swiencinski filed what was essentially a motion for reconsideration of this Court's earlier denial of his motion to dismiss based on double jeopardy grounds, and also requested the Court make findings of fact and conclusions of law, adopting defendant Breimeister's motion that this Court partially granted earlier that day. *See* Dkt. No. 463 at 2.

Defendant Ince also filed on April 17, 2023, for the first time, a written motion to dismiss based on double jeopardy and due process. *See* Dkt. No. 464. And while defendant Ince styles his motion to dismiss as based, in part, on double jeopardy, he makes no argument on that basis other than to "fully adopt[]" defendant Breimeister and defendant McAda's motions to dismiss, which had already been rejected by the Court. *See id.* at 1.

Last, on April 18, 2023, defendant McAda filed a motion requesting reconsideration of the Court's order denying the motion to dismiss based on double jeopardy, and requesting findings of fact and conclusions of law on the Court's declaration of mistrial. Dkt. No. 465.

The government now responds in opposition to the defendants' various (or collective) requests that the Court dismiss based on double jeopardy.[6]

## **LEGAL STANDARD**

---

[6] For ease of reference, the government refers herein to defendant Breimeister's specific arguments, but this response applies equally to all defendants' arguments that incorporated by reference other defendants' arguments.

The Double Jeopardy Clause states, in relevant part, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. Const., amend. V.  While the Double Jeopardy Clause generally bars re-prosecution, a "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused."  *United States v. El-Mezain*, 664 F.3d 467, 559 (5th Cir. 2011) (quoting *United States v. Campbell*, 544 F.3d 577, 581 (5th Cir. 2008) (quotation marks omitted)).  "The Double Jeopardy Clause will not preclude a defendant from being retried after the district court declares a mistrial o*ver defense objection* if the mistrial was justified by a 'manifest necessity.'" *Id.* (citing *Campbell*, 544 F.3d at 580–81) (emphasis added).  "If a defendant consents to a mistrial, however, the 'manifest necessity' standard is inapplicable and double jeopardy ordinarily will not bar a reprosecution."  *Id.* (citations omitted).

## ARGUMENT

I.   **Defendants' Motions to Dismiss Based on Double Jeopardy Should be Denied.**

   A.   **None of the Defendants Timely and Explicitly Objected to the Court's Declaration of a Mistrial.**

When a defendant "does not timely and explicitly object to a trial court's *sua sponte* declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding."  *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997).  Such an objection allows the Court "sufficient notice and opportunity to resolve the defendant's concern."  *El-Mezain*, 664 F.3d at 559.  Whether or not a "defendant objected to a mistrial is made on a case-by-case basis, and the critical factor is whether a defendant's objection gave the court sufficient notice and opportunity to resolve the defendant's concern."  *Id.* (citing *United States v. Fisher*, 624 F.3d 713, 717 (5th Cir. 2010)).

7

When the Court declared a mistrial on December 13, 2022, none of the parties objected contemporaneously, nor did the Court recognize that the mistrial was made over any defendant's objection.  The Court specifically invited the parties to raise issues, Tr. Trans. 12/13/22 at 9:2–11:14, and none did.  Moreover, no defendant subsequently filed any objection to the mistrial declaration, until the instant motions to dismiss based on alleged violations of the Double Jeopardy Clause.

1.    Swiencinski

Not only did Swiencinski fail to timely and explicitly object to this Court's declaration of a mistrial on December 13, 2022, he affirmatively *requested* a mistrial no fewer than five times between December 6 and December 12, 2022.  *See supra* at 3 (citing defendant Swiencinski's requests for mistrial on December 6, 2022, Tr. Trans. 12/6/22 at 166:4–7; December 7, 2022, Tr. Trans. 12/7/22 at 37:24–38:2; 214:7–20; and December 12, 2022, Tr. Trans. 12/12/22 at 33:18–21).

Specifically, on December 12, 2022, when this Court was considering the appropriate remedy for the government's additional disclosures, this Court asked counsel for Mr. Swiencinski: "And so in regards to the relief you're seeking on behalf of your client, what is it?"  Counsel for Swiencinski responded: "Yes.  On behalf of Mr. Swiencinski, we would seek a motion for mistrial or striking the testimony in its entirety for both witnesses and a motion to dismiss with prejudice." Tr. Trans. 12/12/22 at 33:18–21.

Indeed, Swiencinski's motion cites to no actual objection to the mistrial, instead contending that he had previously argued dismissal was the only appropriate remedy, and claiming that if his request was "construed as moving for a mistrial," it was only "as alternative relief."  *See* Dkt. No. 439 at 2.  But this is just not a reasonable reading of counsel's explicit request for mistrial on

December 12, nor does it excuse counsel's failure to object on December 13 (or anytime thereafter until the filing of the motion March 22, 2023) to the declaration of mistrial.

Clearly, Swiencinski explicitly and implicitly consented to the mistrial as a result of his repeated specific requests for a mistrial and failure to object to the Court's declaration of mistrial. Accordingly, double jeopardy is inapplicable, *Palmer*, 122 F.3d at 218, and dismissal of the superseding indictment is not appropriate as to Swiencinski.

2.   <u>Breimeister</u>

Breimeister affirmatively requested mistrial on December 6, 2022, *see* Tr. Trans. 12/6/23 at 95:15–20, and also failed to object to the Court's reference to a potential declaration of mistrial on December 12, 2022 or the Court's *sua sponte* declaration of mistrial on December 13, 2022.

While Breimeister argues that the Court's *sua sponte* declaration of a mistrial was "over Breimeister's objection," Dkt. No. 428 at 3, contending that the Court "did not entertain any additional input or argument from the parties in open [c]ourt," after it concluded it would declare a mistrial, *see* Dkt. No. 428 at 7, this is an inaccurate recitation of the facts: neither Breimeister nor any of the other defendants made any comment after the Court declared a mistrial on December 13, 2022, even though the Court gave them an opportunity to do so.

Breimeister's *ex parte* filing the morning of December 13, 2022, prior to the Court's declaration of mistrial, does not excuse his later failure to object to the Court's finding. This submission – filed *ex parte* for unclear reasons – does not constitute an objection as it offered conditions pursuant to which Breimeister would *affirmatively consent* to a mistrial.[7]   And this

---

[7] The *ex parte* filing stated that Breimeister "opposes a mistrial at this juncture unless one or more of the following occurs: 1. the Government makes a binding representation on the record that it will not retry him; 2. the Court makes a finding that it was forced to order a mistrial *sua sponte* solely because of the Government's misconduct and not at Breimeister's request; or 3. the Court makes a finding that Government agents (though not necessarily the prosecutors themselves)

Court *did* make a finding similar to the one contemplated by Breimeister's second caveat to his purported opposition to a mistrial in his *ex parte* filing (i.e., that it was forced to order a mistrial *sua sponte* because of the issues created by the government's additional disclosures, not upon the request of any defendant).[8]

Accordingly, defendant Breimeister did not properly present and preserve an objection to the mistrial, such that the Court could address it before entering its order.  He also, therefore, failed to object to the Court's declaration of mistrial and therefore impliedly consented.  Thus, double jeopardy is inapplicable, *Palmer*, 122 F.3d at 218, and dismissal of the superseding indictment is not appropriate as to Breimeister.

  3. <u>McAda</u>

McAda failed to object to the Court's reference to a potential declaration of mistrial on December 12, 2022 or the Court's *sua sponte* declaration of mistrial on December 13, 2022.  McAda, in a footnote to his original Motion to Dismiss, argues he is in "an analogous position" to defendant Breimeister, contending he "sought similar relief prior to the Court's declaration of a *sua sponte* mistrial," and further argues he is "identically situated to Mr. Breimeister."  Dkt. No. 444 at 4 n.3.  But McAda does not specify to what he refers in these references to Breimeister in either his Motion to Dismiss, Dkt. No. 444, or in his more recent Motion for Withdrawal, Dkt. No. 465 at 2, and the government is unaware of any similar argument made by McAda.  Because there is no evidence in the record that McAda objected to the Court's declaration of mistrial, and because

---

intentionally omitted favorable information from the written 302s that the agents prepared for the prosecutors to produce to defense counsel." Dkt. No. 385 at 27.

[8] This Court did not, however, use the term "misconduct" when describing the government's late disclosures, and has not done so to this point.  For the reasons stated in its Response to the defendants' Motions to Dismiss on the basis of due process, the government contends there was no misconduct.  *See* Dkt. No. 461.

the record is in fact clear that he raised no contemporaneous objection at the time that the Court declared a mistrial on December 13, 2022, he implicitly consented. Therefore, double jeopardy is inapplicable, *Palmer*, 122 F.3d at 218, and dismissal of the superseding indictment is not appropriate as to McAda.

    4.    <u>Ince</u>

Ince includes no facts or law in support of his double jeopardy argument. *See generally* Dkt. No. 464 (using the phrase "double jeopardy" twice in the introduction, but providing no relevant argument or authority on page 3 through 5). The record demonstrates that defendant Ince affirmatively requested a mistrial at least once on December 6, 2022. *See* Tr. Trans. 12/6/22 at 166:11–15. And although on December 12, 2022, when this Court asked defendant Ince what remedy he was seeking in response to the government's mid-trial disclosures, defendant Ince responded he was "not asking for a mistrial," he did not explicitly object to this Court's declaration of a mistrial, either on that date or when the mistrial was actually declared on December 13, 2022. *See* Tr. Trans. 12/12/22 at 36:16–21. Accordingly, Ince too at the least implicitly consented to mistrial, and thus double jeopardy is inapplicable, *Palmer*, 122 F.3d at 218, and dismissal of the superseding indictment is not appropriate as to Ince.

    **B.**    **There Is No Evidence the Government Goaded Defendants into Requesting – or Failing to Object to – the Mistrial.**

Faced with the reality that he *requested* a mistrial—indeed, conceding as much in his motion—Swiencinski attempts to argue that the mistrial was "forced," apparently alluding to the line of cases requiring that the government "goad" the defendant into moving for a mistrial for double jeopardy to bar retrial. *See* Dkt. No. 463 at 4 ("And even if Mr. Swiencinski is deemed to have moved for a mistrial, double jeopardy still applies because any mistrial was forced by the government's misconduct."); *see also* Dkt. No. 439 at 2 (defendant Swiencinski's Motion to

Dismiss) (arguing in a conclusory, unsupported manner that "any mistrial would have been 'forced by the government's misconduct'").

When a defendant affirmatively seeks and obtains a mistrial, a double-jeopardy claim is a non-starter, unless the defendant can somehow show that "the government conduct in question [was] intended to 'goad' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982).  "Goading," however, has been "narrowly defined, and gross negligence by the prosecutor, or even intentional conduct that seriously prejudices the defense, is insufficient to be characterized as goading.  Instead, there must be intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *United States v. Buck*, 847 F.3d 267, 272 (5th Cir. 2017) (citations and internal quotation marks omitted); *see also Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011) ("A prosecutor or judge must specifically act in 'bad faith' or must intend to goad the defendant 'into requesting a mistrial or to prejudice the defendant's prospects for an acquittal.'" (quoting *United States v. Dinitz*, 424 U.S. 600, 611–12 (1976)). "Retrial is not barred even when the prosecution engages in 'intentional misconduct that seriously prejudices the defendant.'" *United States v. Wharton*, 320 F.3d 526, 532 (5th Cir. 2003) (quoting *United States v. Singleterry*, 683 F.2d 122, 123 n.1 (5th Cir. 1982)).

There is nothing in the record to support a claim of "goading" by the government in this case, and, indeed, defendant Swiencinski points to no facts supporting the government "forcing" a mistrial.  *See* Dkt. No. 439 at 2.  There is simply no evidence of the type of egregious, intentional conduct that would meet the standards courts have set for "goading." This Court has before it the information it needs, based on the January 17 and April 4 Hearings, the multiple briefings on the issue, and the trial record, to find that the government *did not* act in bad faith or with nefarious intent.

Moreover, as described below, on December 12, 2022—a day prior to the Court's declaration of mistrial—the government set out alternative remedies that would have *avoided* a mistrial. *See generally* Dkt. No. 461 (United States' Response to Defendants' Motion to Dismiss for Outrageous Government Misconduct); *see also* Tr. Trans. 12/12/22 at 12:4–13:9 (government reiterating its desire to proceed with trial and agreeing that recalling a witness "would be sufficient to cure any potential prejudice that has been caused by the disclosures over this weekend," and would be "the appropriate relief for the Court to order").

Not only is there no evidence of the type of egregious conduct that could rise to the level of goading, the government's attempts to address the Court's and the parties' concerns indicate the government sought the opposite: to avoid a mistrial. Thus, there was no goading to serve as a basis for dismissal, and double jeopardy is inapplicable under this theory as well.

### C. Even if Defendants Had Objected to the Mistrial, the Court Adequately Recorded Why Manifest Necessity Required a Mistrial.

"When a defendant does not consent to a mistrial, the [Double Jeopardy] Clause permits reprosecution only if there was manifest necessity for the mistrial." *Fisher*, 624 F.3d at 718. If a defendant consents to a mistrial either expressly or impliedly—by failing to object—"the 'manifest necessity' standard is inapplicable and double jeopardy ordinarily will not bar a reprosecution." *El-Mezain*, 664 F.3d at 559 (citing *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982)). Setting aside the ample evidence discussed above that the defendants here both sought and failed to object to the Court's *sua sponte* declaration of mistrial, and thus there was no need for the Court to make a determination regarding manifest necessity, a review of the record demonstrates that the Court *did* make findings supporting the manifest necessity for mistrial.

"Manifest necessity does not mean absolute necessity that a judge declare a mistrial; we assume that there are degrees of necessity and we require a high degree before concluding that a

mistrial is appropriate." *Fisher*, 624 F.3d at 718 (citation and internal quotation marks omitted). Moreover, "[t]he phrase 'manifest necessity' does not articulate 'a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge.'" *Grandberry v. Bonner*, 653 F.2d 1010, 1014 (5th Cir. 1981) (quoting *Arizona v. Washington*, 434 U.S. 497, 506 (1978)).  Rather, "[i]n determining whether there is a manifest necessity for the declaration of a mistrial, the courts are to weigh 'the defendant's valued right to have his trial completed by a particular tribunal,' against the 'public's interest in fair trials designed to end in just judgments.'" *United States v. Alford*, 516 F.2d 941, 945 (5th Cir. 1975) (citations omitted).

Here, this Court's explanation on the record, discussed *supra* at 2–3, was more than sufficient.  It provided a lengthy explanation of how it came to its decision, which it further reiterated at the January 17, 2023, hearing.  Specifically, after reviewing several of the parties' filings, the Court also "heard from counsel regarding the effect of these late disclosures," and "ultimately determined that it would be placed in a position of unfavorable outcomes either way." Hrg. Trans. 1/17/23 at 5:16–19.  The Court explained:

> One, that the Court would be compelled to recall witnesses to testify to allow the defendants to cross-examine these witnesses with the information provided thereby extending a trial that had already been slated for two months, which was already overscheduled, thereby impacting the agreed-upon service of the members of the jury that we had put into the jury box or the Court would have been compelled to tell the jury to -- if the Court had done what was appropriate and strike certain exhibits and testimony, to ignore certain testimony and exhibits and thereby putting a lot of faith in the jury to do so in regards to the defendants' due rights to have this particular testimony excluded.
>
> The Court felt that those two options were not acceptable; and as a result, the Court declared a mistrial.

*Id.* at 5:20–6:8.

While this Court may not have used the phrase "manifest necessity," such magic words are unnecessary.  Indeed, in *Arizona v. Washington*, the Supreme Court held that the trial court need

not make an explicit finding of "manifest necessity." 434 U.S. at 516. Rather, when the "record provides sufficient justification for the . . . ruling, the failure to explain that ruling more completely does not render it constitutionally defective." *Id.* at 516–17.

Defendant Breimeister misleadingly states that: "[b]y the Government's own admission, there was not a manifest necessity to declare a mistrial." Dkt. No. 428 at 7. Not only is that an inaccurate recitation of the record, but it is also an incorrect explanation of the law: First, the defendant's comment about the government's "admission" apparently relies on the government's argument in favor of lesser sanctions on December 12, 2022, the day before the mistrial was declared when the Court was making "careful consideration of any reasonable alternative to a mistrial." *Fisher*, 624 F.3d at 722. Second, manifest necessity is not based on the government's belief, perspective, or preference, but rather on this Court's finding that there was manifest necessity when it *sua sponte* declared a mistrial. *See United States v. Bauman*, 887 F.2d 546, 549 (5th Cir. 1989) ("For purposes of appellate review, *the trial court's finding* of 'manifest necessity' for a *sua sponte* declaration of mistrial is to be upheld if the court exercised 'sound discretion' in making that determination. Application of this standard requires appellate courts to give *the judge's mistrial order* the 'highest degree of respect,' as he is most familiar with the events that compromised the trial.") (emphases added) (internal citations omitted). This Court "carefully considered the alternatives and did not act in an abrupt, erratic or precipitate manner," and its decision to declare a mistrial was fleshed out on the record. *See Campbell*, 544 F.3d at 581 (citing *Grandberry*, 653 F.2d at 1014). This Court's considerations when it *sua sponte* declared a mistrial on December 13, 2022, were sufficient to demonstrate that it believed there was manifest necessity to declare a mistrial. *See Grandberry*, 653 F.2d at 1014 ("The decision to declare a mistrial is within the sound discretion of the trial court.").

Accordingly, even if defendants had not failed to object to the Court's *sua sponte* declaration of mistrial, thus consenting to it and precluding a double jeopardy argument, the Court made clear the multiple grounds of manifest necessity for mistrial.  Under these circumstances, the Double Jeopardy Clause does not bar retrial of the defendants.

### D.    Defendants' Novel Argument Seeking Application of Double Jeopardy Also Fails.

In attempt to avoid this legal dead end, certain defendants contend the "extent and type of government misconduct in this case mean[s] that the Double Jeopardy Clause bars a retrial, *regardless of the test of 'manifest necessity*[.]'" Dkt. No. 463 at 4 (emphasis added).[9]  Not only is there no evidence of intentional wrongdoing by the government, there is simply no precedent recognizing an exception to double jeopardy as a result of "prosecutorial overreaching."

Defendant Swiencinski cites *Alford*, but that case does not support his argument.  In *Alford*, one of the defendants was never provided with the operative indictment before beginning trial, and the error was only realized after the jury had been empaneled and jeopardy attached.  516 F.2d at 944–45.  The language defendant Swiencinski cites that "[m]anifest necessity does not exculpate the prosecution from the constrictions of double jeopardy when there has been prosecutorial overreaching," is *dicta* within a counterfactual the court played out in determining that, in that case, there *was* manifest necessity for the mistrial as to one of the defendants.  *Id.* at 946.  Similar to the defendants' failure to explain how the government "goaded" the defense into requesting a mistrial, they do not demonstrate how there was any "prosecutorial overreaching."  That is because they cannot.  Even if defendants could demonstrate the factual basis they assert, there is no support

---

[9] Swiencinski's argument here mimics the one included in Breimeister's Motion, Dkt. No. 428, unsupported in caselaw, and which McAda, in copying this question in his motion, refers to as a "novel question."  Dkt. No. 465 at 4.

in the law for this runaround on well-established law on double jeopardy, and this additional argument also fails.

## II.    The Court Has Sufficient Information to Make Findings of Fact and Conclusions of <u>Law, and Should Do So.</u>

Without support in the record or case law for any of the established or novel arguments they put forth, defendants' request for dismissal on the basis of the Double Jeopardy Clause fails.

Swiencinski requests – and the government agrees it would be appropriate – for the Court to enter findings of fact and conclusions of law.  Dkt. No. 463 at 1.  The government is contemporaneously submitting proposed findings and conclusions, mirroring the Court's prior statements on the record.  *See*, *e.g.*, Tr. Trans. 12/13/22 at 9:2–11:14.  No further evidentiary hearing is necessary for the Court to enter these findings of fact and conclusions of law.  *See* Attachment A.  The record the Court has already created is complete and sufficient on the issue of double jeopardy.  *See, e.g.*, Hrg. Tr. 4/4/2023 at 64:25–65:2 (Mr. Schaffer) (recognizing, on behalf of defendant Breimeister, that "[t]he Court can resolve the legal claim regarding double jeopardy and barring a retrial without necessarily conducting an evidentiary hearing).

<u>CONCLUSION</u>

All but one of the defendants affirmatively sought a mistrial on at least one occasion, and none objected to this Court's *sua sponte* declaration of a mistrial.  Moreover, even if defendants had objected, this Court made sufficient findings of the manifest necessity for declaring a mistrial. Accordingly, the Court's initial ruling denying defendants' motions to dismiss based on the Double Jeopardy Clause was appropriate, and the Court should now deny or reinstate its denial of the defendants' motions to dismiss.  And although the record already contains this Court's substantial findings regarding its decision to declare a mistrial, the government respectfully requests that this Court also make findings of fact and conclusions of law explaining its denial of the defendants'

motions to dismiss, considering the findings and conclusions proposed by the government and attached to this response.   The record is complete and no further hearing is necessary on the motions to dismiss based on double jeopardy.

Respectfully submitted,

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

By:      /s/ Daniel J. Griffin
Daniel J. Griffin
Assistant Chief
Kelly M. Warner
Trial Attorney
Nicholas K. Peone
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1000 Louisiana, Suite 2300
Houston, Texas 77002
(202) 774-7985
Daniel.Griffin3@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed through ECF on April 28, 2023.

　　　　　　　　　　　　　　　　　　　 */s/ Daniel J. Griffin*　　　　　
　　　　　　　　　　　　　　　　　　　 Daniel J. Griffin