UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| § | |
| v.  § | Criminal No. 18-CR-368 |
| § | |
| **BRIAN SWIENCINSKI,** § | |
| **SCOTT BREIMEISTER,** § | |
| **CHRISTOPHER INCE, and** § | |
| **RONNIE MCADA,** § | |
| § | |
| § | |
| **Defendants.** § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

FINDINGS OF FACT

1. Prior to December 13, 2022, several defense counsel moved for a mistrial: on December 6, 2022, counsel for Swiencinski, Ince, Breimeister (and Redko) moved for mistrials. *See* Tr. Trans. 12/6/22 at 95:15–20 (Redko, Breimeister); 166:4–7, 11–15 (Swiencinski, Ince).

2. On December 7, 2022, counsel for Swiencinski twice moved for a mistrial. *See* Tr. Trans. 12/7/22 at 37:24–38:2 (Swiencinski); 214:7–20 (Swiencinski).

3. On December 12, 2022, when this Court was considering the appropriate remedy for the government's mid-trial disclosures, this Court suggested a mistrial was a potential remedy. *See* Tr. Trans. 12/12/22 at 33:18-21.

4. In response, Swiencinski affirmatively requested a mistrial as one type of requested relief. *See* Tr. Trans. 12/12/22 at 33:18-21.

5. In response to this Court's suggestion, Ince's counsel responded he "was not asking for a mistrial," but did not explicitly object. *See* Tr. Trans at 36:16–36:21.

6. The other three defendants—Swiencinski, Breimeister, and McAda— did not clearly request or object to a mistrial. *See* Tr. Trans at 36:16–36:21.

7.      The Court then stated that if the additional disclosures impacted more than the four witnesses defense counsel contentions had been impacted, the Court would "entertain the possibility of a mistrial." *See* Tr. Trans. 12/12/22 at 48:25–49:9.

8.      On December 13, 2022, the Court declared a mistrial *sua sponte*, "not on any motion of any particular defendant." *See* Tr. Trans. 12/13/22 at 12:13–15.

9.      The Court explained its rationale on the record, Tr. Trans. 12/13/22 at 9:2–11:14, which is reproduced in relevant part here:

    a.      At least six of the twenty-one witnesses who had testified had been impacted by the government's additional disclosures, and "[t]he six witnesses impacted at a minimum represent a quarter by number of the witnesses called to the stand so far. Mr. Carr was one of the more lengthy witnesses so I'm sure if I would add the time up, the impact of the testimony would be significantly greater than a quarter of the testimony that has occurred";

    b.      If the Court determined that only certain witnesses and exhibits were impacted, "the Court would have to halt the trial, call up the transcript, and dissect the witnesses' testimony to pull out the testimony and exhibits impacted by the late disclosures from the government, a time-consuming exercise";

    c.      The Court had already struck "portions of [Mr. Chan's] testimony and … [struck] certain exhibits and had to give an instruction to the jury to disregard said testimony and exhibits";

    d.      In light of the additional disclosures, the Court believed it "[w]ould now have to order the striking of testimony and exhibits related to other witnesses, potentially

the entire testimony of witnesses; but at a minimum, certain testimony and certain exhibits";

  e. The Court would have had to "instruct the jury as to which portions of testimony and which portions of that witness's testimony and exhibits to be ignored during their deliberations or the Court would have to allow the recall of witnesses to the stand to allow the defense, now in possession of materials that they should have been in possession of prior to the start of the trial, to continue or reopen their cross-examination of these witnesses, another time-consuming exercise"; and

  f. In light of the dismissal of Vladimir Redko, M.D., the Court questioned whether it would have had "to unwind the questioning of counsel and/or the exhibits used by the Defendant Redko that are before this jury."

10. For these reasons and others described on the record, the Court found that continuing the trial would have placed on the jury a "heavy burden to go back and follow any crafted instruction regarding their ability to disregard testimony and exhibits in reaching a decision on these defendants' guilt, it is a burden too heavy not only for this trial, but it is a burden too heavy for this jury." Tr. Trans. 12/13/22 at 12:6–11.

11. The Court stated that "taking as a whole all of the disclosures, the wide-ranging impact, the surgery that would be required to the testimony and the exhibits that would ultimately be before this jury, in this Court's opinion, has the real possibility of altering the outcome of this trial. A just result would be in jeopardy." *Id.* at 12:21–13:1.

12. Upon returning to the courtroom to notify the jury of the Court's decision to declare a mistrial, the Court inquired of the prosecution and the defense if either party had anything to raise prior to bringing in the jury. *See* Tr. Trans. 12/13/22 at 14:4–10.

13. None of the parties raised any objection, despite the opportunity to do so. *See id.* at 14:4–10.

14. The Court reiterated similar reasoning for its declaration of a mistrial at a hearing on January 17, 2023. *See* Hrg. Trans. 1/17/23 at 5:1–6:8.

## CONCLUSIONS OF LAW

15. None of the defendants timely and explicitly objected to the Court's *sua sponte* declaration of a mistrial. Accordingly, the defendants all impliedly consented to the mistrial and may be retried in a later proceeding. *See United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997) (citation omitted).

16. The government did not "goad" any of the defendants into moving for a mistrial.

17. Even if any party had properly and timely objected to the mistrial, there was manifest necessity to declare a mistrial.

18. In summary, the defendants did not object to the Court's declaration of a mistrial and impliedly consented to the mistrial. Even if they had timely objected, there was a manifest necessity for mistrial.

19. The Double Jeopardy Clause does not bar retrial of this matter as to Swiencinski, Ince, Breimeister, and McAda.

It is so ORDERED.

_____            _____
Date                                                                   The Honorable Alfred H. Bennett
                                                                               United States District Judge