**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 4:18-CR-00368 |
| RONNIE MCADA, JR. | § § § | |

### REPLY IN SUPPORT OF RONNIE MCADA, JR.'S MOTION TO BAR RETRIAL

The government's response continues its attempts to sweep under the rug the misconduct that caused this mistrial. Its arguments rest on two points: (1) collectively, the defendants either requested the mistrial or did not object to it; and (2) manifest necessity forced the mistrial. Both arguments are contrary to the facts, the law, and the government's own arguments.

### I.    INTRODUCTION

The Court should bar retrial based on Double Jeopardy. First, a novel question exists: what standard applies when the Court declares a *sua sponte* mistrial due to egregious government misconduct over multiple defendants' objections. Precedent does not squarely address this question. The government's argument would undermine the essential purpose of the Double Jeopardy clause and strip a defendant of his right to have a verdict rendered by the first jury empaneled. Second, the record is clear. Before the Court's mistrial decision, Mr. McAda objected to a mistrial absent certain alternative remedies. So the government is plainly wrong. Further, Mr. McAda—like the government—articulated alternative remedies instead of a mistrial because he wanted a verdict from the first jury empaneled, as is his right. Third, if the Court applies the manifest necessity standard, the government cannot argue that a mistrial was required. While it now contends that record provides adequate bases for mistrial, as previously argued by Mr. McAda

and *the government*, it does not. Through this strategic pivot, the government seeks to benefit from the Court's grant of a mistrial, while disregarding reality. If the standard is applied, a mistrial was not a manifest necessity and is not a sanction on the government, it is a sanction on Mr. McAda even though he did nothing to cause it. The Court should stay its ruling on this motion until a legitimate, unbiased inquiry is made into the government's misconduct leading up to it.[1] The government's intent may be relevant to the applicable legal standard. As such, a ruling is premature.

## II.     ARGUMENT

The Double Jeopardy Clause prevents repeated harassment, through successive prosecutions, of criminal defendants in situations just like this. It protects defendants from multiple attempts by the government to prove them guilty. *Benton v. Maryland*, 309 U.S. 784, 794 (1969). The Supreme Court has consistently recognized a defendant's right to be free from the "financial and emotional burden[s]" and the "embarrassment, expense and ordeal" of successive prosecutions. *See, e.g., Arizona v. Washington*, 434 U.S. 497, 503 (1978); *Green v. United States*, 355 U.S. 184, 187-88 (1957). More importantly, the Court has recognized that defendants are more likely to be convicted if subjected to successive trials. *Id.* (noting that "repeated attempts to convict" "enhanc[e] the possibility that even though innocent he may be found guilty"). And the Double Jeopardy Clause is meant to prevent the government from garnering evidence it "failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11 (1978).

### A.     This Case Presents a Novel Question

The government's response, through its silence, concedes the novel nature of this question. It cites *United States v. El-Mezain* for the point that retrial is not precluded over an objection if a

---

[1] There is a pending Motion to Dismiss based on government misconduct, on either Due Process or the Court's supervisory powers' grounds. Mr. McAda reurges the indictment's dismissal under the Court's supervisory powers.

manifest necessity exists. 664 F.3d 467, 559 (5th Cir. 2008). But that case is factually distinct. In *El-Mezain,* neither the defendant nor the government objected to the mistrial. *Id.* at 560. Also, the alleged misconduct—inadvertently sending exhibits back with the jury that were not admitted—was insubstantial, with no evidence of intent. *Id.* Here, there is prima facie evidence of intent, and the level of misconduct in this case is stunning.[2] Moreover, it is a novel question because retrials when the government commits this level of misconduct rarely occur, either because the government resolves the case or because courts dispose of the case through dismissal under its supervisory powers. This novel question must be answered if this case is not adjudicated in the ordinary course because the significant level of governmental misconduct casts the Court and these defendants into unchartered territory.

B. **Mr. McAda Did Not Consent to a Mistrial**

Mr. McAda did not consent to a mistrial and objected to one if the Court did not impose certain remedies. The "determination of whether a defendant objected to a mistrial is made on a case-by-case basis, and the critical factor is whether a defendant's objection gave the court sufficient notice and opportunity to resolve the defendant's concern." *El Mezain*, 664 F.3d at 559 (citing *United States v. Fisher*, 624 F.3d 713, 717 (5th Cir. 2010)). Here, Mr. McAda objected to a mistrial, therefore providing sufficient notice to resolve his concern prior to declaring a *sua sponte* mistrial. Mr. McAda did "not request a mistrial at [that] stage of the proceeding[,]" but instead objected to a mistrial, and only sought one if the Court was not willing to grant very narrow

---

[2] One example—the trial team sought a supervisor's directive in how to handle William Chan's notes. The supervisor stated either provide the notes to the defendants unredacted or submit them to the Court for in camera review. ECF No. 411, at 14. Instead, the trial team disobeyed a supervisor's order and intentionally chose deception by providing redacted notes to the defendants while William Chan testified contrary to the material under the redactions. They did this because they knew the notes revealed witness coaching and Chan's interpretation of their conversations—if he mentions FBI agent Grace Hinton, he "pushes the red button." But, there are fifty other instances of misconduct, including systemic *Brady* violations, maintaining multiple sets of agent notes, and presenting false testimony. These many examples of misconduct require an evidentiary hearing.

remedies.[3] ECF No. 385, at 29-32. Further, he articulated the resulting prejudice if the Court declared a mistrial, sought an evidentiary hearing, and requested dismissal of the indictment due to the government's misconduct. *Id.* The Court had sufficient time to address these concerns without declaring a mistrial, and Mr. McAda presented reasonable alternatives. While not required to reurge his objection after the Court declared the mistrial, there was no opportunity to do so. Any objection after the Court's declaration of a mistrial, but before the Court called the jury back in, would not have provided the Court with additional opportunity to resolve Mr. McAda's concerns, as the mistrial had already been declared.[4] The government's contentions that Mr. McAda did not object to, and instead consented to, a mistrial are meritless.

      C.      **<u>Mistrial Was Not a Manifest Necessity</u>**

The government is engaging in doublespeak. It previously argued to this Court that a mistrial was *not* a manifest necessity. *See* ECF No. 386. So the government is now precluded from arguing that mistrial was a manifest necessity. *See United States v. Rivera*, 384 F.3d 49, 57 (3d Cir. 2004) ("[t]hat the Government itself presented the District Court with a reasonable alternative to a mistrial places the Government in a poor position to now argue that the District Court exercised such care."). The unhappy fact for the government is that it is the government's heavy burden to prove manifest necessity. *See Arizona v. Washington*, 434 U.S. 497, 505 (1978). So the government's response is without merit.

But recognizing it cornered itself, the government pivots to the tepid contention that a manifest necessity was "adequately recorded." In doing so, it seeks to benefit from the mistrial it

---

[3] Mr. McAda also never joined a co-defendant's motion for a mistrial. *See* Tr. Trans. 12/7 59:12-17 (rough).
[4] When the Court declares a mistrial and does not provide an opportunity to be heard after the declaration, an objection is unlikely and meaningless. *United States v. Jorn*, 400 U.S. 470, 487 (1971).

**RONNIE MCADA JR.'S REPLY IN SUPPORT OF MOTION TO BAR RETRIAL BASED ON DOUBLE JEOPARDY - 4**

caused while asking the Court to ignore its previous assertion that reasonable alternatives to a mistrial existed. The government cannot hold up both ends of this debate.

Indeed, it has already started taking advantage of its intentional misconduct which caused the mistrial, violating every concern the Supreme Court has consistently articulated as a basis for the Double Jeopardy Clause.[5] The Court was presented by both the government and Mr. McAda with reasonable alternatives short of a mistrial. *Jorn*, 400 U.S. at 486. Mr. McAda articulated the specific prejudice he would suffer if the Court declared a mistrial, and now those concerns are being realized. The declaration of a mistrial was not a manifest necessity and alternatives existed.

### III.  CONCLUSION

For the foregoing reasons, the Court should grant Mr. McAda's motion to bar retrial.

Dated: May 5, 2023

Respectfully submitted,

By: */s/ Jeff Ansley*
Jeffrey J. Ansley
Texas Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
Texas Bar No. 24109938
agoodman@vedderprice.com
Samuel M. Deau
S.D. Tex. No. 3791231
sdeau@vedderprice.com
**VEDDER | PRICE**
300 Crescent Court, Suite 4000
Dallas, Texas 75201
Telephone: 469.895.4790
**ATTORNEYS FOR DEFENDANT
RONNIE MCADA, JR.**

---

[5] The government is refining its case and acquiring new evidence. An example is the disclosure of a recent FD-302 created by the "review team," interviewing a co-defendant to Mr. McAda's severe prejudice. It is the precise concern articulated by the Supreme Court in *Green* in action. 355 U.S. at 187-88. The government will continue to benefit from its own misconduct until it is held accountable for its actions, which is permitted under the law, both through a bar on retrial under the Double Jeopardy Clause and on a Motion to Dismiss under the Court's Supervisory Powers.

## **CERTIFICATE OF SERVICE**

   I certify that on May 5, 2023, I electronically transmitted the foregoing document to the Clerk for the U.S. District Court, Southern District of Texas, using the ECF system of the Court.

                    */s/ Jeff Ansley*
                    Jeffrey J. Ansley