IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– v. –<br><br>BRIAN SWIENCINSKI,<br>SCOTT BREIMEISTER,<br>CHRISTOPHER INCE, M.D.,<br>RONNIE MCADA, JR.,<br><br>*Defendants*. | No. 4:18-cr-00368 |

**DEFENDANTS' SUPPLEMENT ON GOVERNMENT'S KNOWING AND INTENTIONAL MISCONDUCT AND DEFENDANTS' REQUESTED RELIEF**

Defendants Brian Swiencinski, Scott Breimeister, Christopher Ince, M.D., and Ronnie McAda, Jr., respectfully file the following supplement to their pending motions for relief from the government's misconduct that caused the mistrial in this case. This supplemental filing specifies the government's knowing and intentional misconduct that caused the mistrial, and further explains how the government's intent informs the appropriate relief in this case.

**I.     INTRODUCTION**

The defendants have each argued that following the mistrial—which the government acknowledges it caused by its conduct alone, *see* Hrg. Tr. 5/26/23 at 35:20-24, 39:7-16, 42:8-10—the appropriate relief is dismissal of the superseding indictment. The Court may order dismissal pursuant to the Court's supervisory powers, as a consequence of the government's due process violations, or under the Double Jeopardy Clause. ECF Nos. 385, 428, 439, 444, 456, 463, 464, and 465. The defendants have also requested an evidentiary hearing to inform the cause and intent underlying the government's discovery violations, witness coaching, failure to correct false testimony, use of unreliable claims data, and other misconduct. ECF Nos. 391, 413, 424, and 440. Further underscoring the need for an evidentiary hearing are the significant questions as to how

1

the government's conduct affected the grand jury process, including the omission of information favorable to the defendants. Such omissions or other misconduct renders the indictment flawed and the product of due process violations and DOJ policy. The lingering questions regarding the grand jury process support an evidentiary hearing. *See also* ECF No. 427 (Defendants' Opposed Motion for *In Camera* Review and to Inspect Grand Jury Material).

Notwithstanding the request for an evidentiary hearing, the current record makes clear that certain misconduct by the government was knowing and intentional—and at a minimum, reckless or grossly negligent. As discussed below, and previously argued by the defense, each mental state of knowing and intentional, reckless, and grossly negligent is sufficient to support dismissal of the superseding indictment under the Court's supervisory powers. *See, e.g.*, ECF No. 428 at 9 (Breimeister's motion to dismiss arguing that conduct that is intentional, reckless, or grossly negligent justifies dismissal).[1] To be sure, an evidentiary hearing would ensure that the Court makes its findings on these issues on a full factual record, and not on hearsay and a biased government self-investigation. But even without a hearing, the objective facts and circumstances justify dismissal.

**II.    KNOWING AND INTENTIONAL MISCONDUCT BY THE GOVERNMENT**

On the present record, the objective facts and circumstances and the government's own admissions demonstrate that certain conduct by the government was done knowingly and intentionally—that is, not by mistake or accident. *See* Fifth Cir. Pattern Jury Instructions (Criminal Cases) No. 1.41 (2019) ("The word 'knowingly,' . . . means that the act was done voluntarily and

---

[1] Defendants Swiencinski, McAda, and Ince each adopted Breimeister's motion to dismiss. *See* ECF Nos. 439, 444, and 464.

intentionally, not because of mistake or accident."). That knowing and intentional conduct includes, but is not limited to:

- The government's knowing use of Erik Underwood, the IT contractor for Pharms, as a confidential informant while he was simultaneously working with the joint defense team, including to respond to government subpoenas. Among other things, Underwood recorded multiple legal conversations (with defense counsel), which the FBI undisputedly knew about because Underwood provided those recordings to the FBI. Further, the FBI waited outside Pharms's offices until only Underwood remained inside. When the coast was clear, the agents served subpoenas and obtained consent from their own informant (Underwood) to search the business, which they did. *See* Dkt. 200-1 (Defendants' Motion for a *Kastigar*-Like Evidentiary Hearing, to Suppress Illegally Obtained Evidence, or to Dismiss the Superseding Indictment).

- During trial, the prosecutors and defendants questioned the authenticity, legitimacy, and sources of scripts that came to the pharmacy. In addition, the government moved *in limine* to limit the degree to which Mr. Swiencinski and Mr. Breimeister were able to discuss Dan Milosevic during their opening statements. *See* Rough Trial Tr. 11/9/22 at 268:13-276:8 (discussion of government's motion). The government did this while knowing that just days before the trial began, government witness Leonard Carr had told the government, including lead prosecutor Aleza Remis, that Dan Milosevic brought prescriptions into the pharmacy on the weekend. See 4/4/23 Hrg. Govt. Ex. 214. This information explained how unfaxed prescriptions came to the pharmacy and undermined the government's arguments that prescriptions from unknown or unfaxed sources were evidence of the alleged conspiracy among the defendants. The government disclosed this evidence to the defense only because this Court's mid-trial discovery order required the government to do so.

- Dino Vergara knowingly created two sets of notes for the interview of government witness Brad Madrid on February 8, 2021, used the second set of notes to create the 302 report from the interview, and knowingly declined to include all of the information from his notes in the 302 report. Hrg. Tr. 4/4/23 at 37:3-38:24.

- As to the many instances where exculpatory information was contained in the rough interview notes, but not in the 302 reports produced to defense counsel, the agents knowingly decided to omit such information. Hrg Tr. 4/4/23 at 45:17-46:5; *see also* ECF Nos. 385, 412, 467, and 471 (detailing the discrepancies between interview notes and 302 reports, and explaining how those discrepancies prejudiced the defendants).

- The prosecutors knowingly told William Chan that, "when asked" under oath, he should not refer to FBI Special Agent Grace Hinton's files, even though he relied on those files. *See* Rough Trial Tr. 12/7/22 at 22:22-24:18; *see also* Swiencinski's Appendix to *Ex Parte* Supp. Notice of Govt. Misconduct, Dkt. 412 at 23. Moreover, the prosecutors who instructed Mr. Chan in this way then knowingly redacted Mr. Chan's notes with the intent to conceal this critical information from defense counsel. Hrg. Tr. 4/4/23 at 33:10-22

(government counsel acknowledging that the prosecutors knowingly redacted Mr. Chan's notes).

- The prosecutors knowingly attempted to cover up material that was exculpatory and relevant to cross-examination related to Mr. Chan's notes. When the prosecutors discovered Chan's notes on November 29, 2022, they asked a supervisor how to proceed. The prosecutor's supervisors advised them "to either provide the notes to defense counsel, unredacted, or to the extent the trial team felt they should redact certain portions of the notes, it would be their practice to seek leave of the Court to do so via *in camera* review." ECF No. 411 at 14. Instead, the prosecutors disobeyed a superior's order. The prosecutors did not produce the notes to the defense and did not seek *in camera* review from the Court. Instead, the prosecutors redacted *Brady* and *Giglio* material with the intent to hide the material from the defense and the Court. The prosecutors' decision to disobey a supervisor's guidance evidences their knowledge and intentional decision making.

- The prosecutors knowingly allowed Mr. Chan to list incomplete and misleading sources on his summary exhibits, when they knew he had relied on more than just those sources in preparing the exhibits. *See, e.g.*, Trial Tr. 12/6/22 at 16:22-19:6, 19:24-20:25, 145:8-146:8.

- The prosecutors failed to correct or clarify Mr. Chan's testimony that he worked with only one other person—a woman from his company. *See* Trial Tr. 12/6/22 at 175:6-176:2. The prosecutors knew that was not true, as they themselves worked extensively with Mr. Chan on the exhibits.

- The government presented claims data in Government's Exhibit 1 that it knew was unreliable.

### III. THE GOVERNMENT'S MISCONDUCT AND INTENT JUSTIFIES DISMISSAL

The foregoing knowing and intentional conduct by the government warrants dismissal of the indictment under the Court's supervisory powers. The government has suggested at times that "bad faith," or a *mens rea* akin to willfulness, is required before the indictment may be dismissed. *See, e.g.*, Hrg. Tr. 4/4/23 at 10:1-7 (government framing its self-investigation and report to the Court as asking whether "something happen[ed] nefariously, in bad faith, or were there mistakes"). But while "bad faith" or willfulness (that is, acting with a bad purpose either to disobey or disregard the law) would certainly be sufficient to justify dismissal, it is not necessary. *See United States v. Richard*, 922 F.3d 639, 648 (5th Cir. 2019) ("[W]illfully . . . 'means that the act was committed voluntarily or purposely, with the specific intent to do something the law forbids; that is to say,

4

with bad purpose either to disobey or disregard the law.'"). Instead, dismissal is justified by prejudicial misconduct that is knowing, intentional, reckless, or even grossly negligent.

For example, in *United States v. Fulmer*, the Fifth Circuit recognized that conduct that is merely "intentional" justifies dismissal of an indictment under a court's supervisory powers. 722 F.2d 1192, 1195 (5th Cir. 1983). The *Fulmer* Court recognized that dismissal also may be supported by "gross negligence in prosecuting [a] case [that] has actually prejudiced the defendant." *Id.* In that case, the Fifth Circuit determined the error (providing unsworn testimony before the grand jury) was "inadvertent," and not intentional or grossly negligent. *Id.* Nor was the error prejudicial to the defense. *Id.* Even in those circumstances, the Fifth Circuit held the indictment should have been dismissed, but disagreed that the dismissal should have been with prejudice. *Id.* at 1196.

Similarly, in *United States v. Swenson*, the Fifth Circuit acknowledged that recklessness or gross negligence supports dismissal: "[G]overnment ineptitude and carelessness could be so abhorrent to warrant a dismissal with prejudice." 894 F.3d 677, 685 (5th Cir. 2018) (quoting *Fulmer*, 772 F.2d at 1196). There, the Fifth Circuit reversed the dismissal of the indictment only because the government's conduct represented "benign mistakes," and not a "conscious decision" to withhold evidence. *Id.* Moreover, in *Swenson*, the evidence in question was disclosed before trial and thus the defense was not prejudiced. *Id.*

Other federal courts of appeals have similarly held that dismissal under a court's supervisory powers does not require bad faith or willfulness. The Ninth Circuit rejected a standard that would always require "malicious" or even "intentional" misconduct. *United States v. Bundy*, 968 F.3d 1019, 1038 (9th Cir. 2020). There, in affirming dismissal of the indictment with prejudice, the Court explained that "the misconduct need not be intentional" because "[r]eckless

5

disregard for the prosecution's constitutional obligations' is sufficient." *Id.* (quoting *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008)); *see also Chapman*, 524 F.3d at 1085 ("In this case, the failure to produce documents and to record what had or had not been disclosed, along with the affirmative misrepresentations to the court of full compliance, support the district court's finding of 'flagrant' prosecutorial misconduct *even if the documents themselves were not intentionally withheld from the defense*." (emphasis added)). The Third Circuit has held that "a reckless disregard for a defendant's constitutional rights" justifies dismissal of the indictment. *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 256 (3d Cir. 2005). And recklessness may be shown through "a pattern" of discovery violations. *Id.*

As demonstrated by the above list of misconduct, the government knowingly and intentionally committed numerous instances of misconduct that ultimately prejudiced the defendants. *See also* ECF Nos. 385, 412, 428, 467, and 471 (briefing before this Court describing the prejudice suffered by the defendants due to the government's misconduct). For example, the government decided to work with Underwood, to not disclose critical facts about Dan Milosevic (while simultaneously moving to limit the defense's ability to refer to Milosevic), to omit exculpatory and impeaching information from the 302s, and to coach Chan's testimony and not clarify false and misleading testimony as to the summary exhibits. All of this conduct resulted from "conscious decisions." *Swenson*, 894 F.3d at 685. Further, there is indisputably a pattern of discovery violations and other misconduct in this case that, at a minimum, shows recklessness or gross negligence on the part of the government. This intent, combined with the lengthy list of government misconduct and prejudice to the defense, is more than sufficient to warrant dismissal under the Court's supervisory powers.

## IV. CONCLUSION

Based on the foregoing, Defendants Brian Swiencinski, Scott Breimeister, Christopher Ince, M.D., and Ronnie McAda, Jr., respectfully reurge their request for dismissal of the superseding indictment.

Dated: June 13, 2023

*/s/ Samuel Louis*
Samuel Louis
Texas Bar No. 12588040
samuel.louis@hklaw.com
Holland & Knight LLP
811 Main Street, Suite 2500
Houston, Texas 77002
(713) 244-6861
(713) 821-7001 (facsimile)

Justo Mendez
Texas Bar No. 24057616
Greenspoon Marder
1318 Crystal Hills Dr.
Houston, TX 77077
(281) 757-1305
justo.mendez@gmlaw.com

**Attorneys for Dr. Christopher Ince**

*/s/ Jeffrey J. Ansley*
Jeffrey J. Ansley
Texas Bar No. 00790235
Arianna G. Goodman
Texas Bar No. 24109938
Samuel M. Deau
Vedder Price, P.C.
300 Crescent Court, Suite 400
Dallas, Texas 75201
(469) 895-4790
jansley@vedderprice.com
agoodman@vedderprice.com
sdeau@vedderprice.com

**Attorneys for Ronnie McAda, Jr.**

Respectfully submitted,

*/s/ Brandon McCarthy*
Brandon McCarthy (Texas Bar No. 24027486)
Rachel M. Riley (Texas Bar No. 24093044)
Katten Muchin Rosenman LLP
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
(214) 765-3600
brandon.mccarthy@katten.com
rachel.riley@katten.com

Mary C. Fleming (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
2900 K Street NW, North Tower - Suite 200
Washington, DC 20007
(202) 625-3754
mary.fleming@katten.com

Michael A. Villa, Jr. (Texas Bar No. 24051475)
Meadows, Collier, Reed,
Cousins, Crouch & Ungerman, LLP
901 Main Street, Suite 370
Dallas, TX 75202
(214) 744-2700
mvilla@meadowscollier.com

**Attorneys for Brian Swiencinski**

*/s/ Josh Schaffer*
Josh Schaffer (Texas Bar No. 24037439)
1021 Main, Suite 1440
Houston, Texas 77002
(713) 951-9555
josh@joshschafferlaw.com

Dan Cogdell (Texas Bar No. 04501500)
1000 Main Street, Suite 2300
Houston, TX 77002
(713) 426-2244
dan@cogdell-law.com

**Attorneys for Scott Breimeister**

7

## **CERTIFICATE OF SERVICE**

  I hereby certify that on June 13, 2023, I caused a true and correct copy of the foregoing Defendants' Supplement on Government's Knowing and Intentional Misconduct and Defendants' Requested Relief, to be served on all counsel of record by filing it with the Clerk using the Court's CM/ECF System.

                */s/ Brandon McCarthy*
                Brandon McCarthy