## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "Agreement") is entered into as of June 1, 2016 (the "Effective Date") by and between Jermain David Wiggins ("Seller"), and One Stop Acquisitions, LLC, a Texas limited liability company ("Purchaser").

### RECITALS

A.   JSW Prosperity, LLC, a Texas limited liability company (the "Company"), was formed pursuant to that certain Certificate of Formation filed with the Texas Secretary of State on April 3, 2014.

B.   Seller is the owner of one hundred percent (100%) of the membership interests in the Company.

C.   Seller has agreed to sell and assign to Purchaser, and Purchaser has agreed to purchase from Seller, all of Seller's interest in the Company for the price and subject to the terms and conditions set forth in this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.   Sale of Interests.

   1.1   At the Initial Closing (as such term is defined below), Seller shall sell, transfer, convey and assign to the Purchaser, and the Purchaser (in reliance upon Seller's representations, warranties and covenants as herein set forth) shall purchase from Seller, at the price and upon the terms and conditions provided in this Agreement, a portion of Seller's interest in Company, being a forty-nine percent (49.0%) membership interest in the Company (the "Initial Assigned Interest"), which Initial Assigned Interest shall be free and clear of all liens, restrictions, encumbrances or rights of third parties.

   1.2   Subject to the terms and conditions of this Agreement, the closing of Seller's transfer and conveyance of the Initial Assigned Interest to Purchaser (the "Initial Closing") shall be simultaneous with the execution of this Agreement by the parties hereto and shall take place at the offices of Purchaser, 4916 Main Street #100, Houston, Texas, 77002 (the "Initial Closing Date").

   1.3   Seller shall sell, transfer, convey and assign to Purchaser (in reliance upon Seller's representations, warranties and covenants as herein set forth) and Purchaser shall purchase from Seller, at the price and upon the terms and conditions provided in this Agreement, the remainder of Seller's interest in Company, being a fifty-one percent (51.0%) membership interest in the Company (the "Secondary Assigned Interest"), which Secondary Assigned Interest shall be free and clear of all liens, restrictions, encumbrances or rights of third parties.

   1.4   Subject to the terms and conditions of this Agreement, the closing of Seller's transfer and conveyance of the Secondary Assigned Interest to Purchaser (the "Secondary Closing") shall take place at the offices of Purchaser on April 30, 2019 (the "Secondary Closing Date"). Purchaser may elect to accelerate the Secondary Closing Date to any business day prior to April 30, 2019 by giving written notice thereof to Seller.

   1.5   The Initial Assigned Interest and the Secondary Assigned Interest, and all right, title and interest therein, shall be conveyed and assigned pursuant to an assignment document in a form as reasonably approved by Purchaser. In addition, at the Secondary Closing, Seller shall (i) deliver its

Purchase and Sale Agreement – JSW Prosperity LLC        - 1 -

GX315.001



**GOVERNMENT EXHIBIT**
**315**
**4:18-CR-368**

1STPH_000043

Membership Interest certificate (if any) to the Purchaser, and the Company shall cancel the Seller's membership interest on its books and records; and (ii) resign as a manager of the Company, and shall cause all existing managers and officers to resign their offices. The foregoing documents as well as such other documents as are required to close the transaction described herein are referred to as the "Closing Documents". On the Effective Date, Seller and Purchaser shall (i) execute and deliver to the other the Closing Documents necessary to assign the Initial Assigned Interest to Purchaser, and (ii) execute counterparts of the Closing Documents required to assign the Secondary Assigned Interest to Purchaser and deliver them to the Escrow Agent, to be held in accordance with the Escrow Agreement (defined below).

1.6   At least one (1) business day before the Secondary Closing, Purchaser and Seller shall agree upon a "Closing Settlement Statement" that shall include adjustments to the purchase price, which are known as of the Secondary Closing Date, as follows:

(a)   A proportionate decrease in the purchase price in the aggregate amount of distributions made to Seller by the Company following the Initial Closing Date;

(b)   Any adjustments resulting from a breach of any representation or warranty by Seller hereunder; and

(c)   Any other adjustments agreed to by Purchaser and Seller.

1.7   No later than forty-five (45) days following the Secondary Closing Date, the Seller and Purchaser shall make a post-Closing settlement of all amounts set forth on the Closing Settlement Statement and those amounts described in Section 1.6 hereof. Seller and Purchaser shall adjust the amount due to or from Seller or Purchaser based on the following: (i) any amount omitted from the Closing Settlement Statement that should have been reflected in the Closing Settlement Statement; (ii) any amount set forth on the Closing Settlement Statement which is found to be in error; (ii) any estimates upon which the line items in the Closing Settlement Statement were based are found to be incorrect; (iii) the actual amounts of any estimates are then known or determinable; (iv) any pre-Closing Date accounts receivable credited to Seller in accordance with Section 1.6 in anticipation of collection and not received by the Company within said forty-five (45) day period; and (v) such other adjustments as Seller and Purchaser may agree (the foregoing being referred to as the "Post-Closing Adjustments").

1.8   Seller shall be entitled to retain, and may prior to the Closing cause the Company to distribute to its members, the personal property and other assets of the Company described on Exhibit "B" attached hereto.

1.9   Upon the request of Purchaser, Seller agrees to cooperate with Buyer and cause the pharmacist-in-charge at the Company's pharmacy to continue to serve in such capacity for not more than thirty (30) days after the Initial Closing, in order to assist with the transition in control of the Company's pharmacy, with compensation for such pharmacist to be negotiated and agreed-upon prior to the Initial Closing date.

2.   Consideration. In consideration for Seller's conveyance, transfer and assignment of the Seller Membership Interest, Purchaser shall pay Seller the sum of Two Hundred Thousand and no/100 Dollars ($200,000.00) to be paid as follows:

(a)   On the Initial Closing Date, Purchaser shall pay Seller a portion of the purchase price, being the sum of One Hundred Sixty Thousand and no/100 Dollars ($160,000.00), and deliver the sum of Forty Thousand Dollars ($40,000.00) to Escrow Agent as set forth in Section 8 below.

(b)   On the Secondary Closing Date, Escrow Agent shall pay to Seller the remainder of the purchase price then being held by Escrow Agent, adjusted as described herein.

3. <u>Contracts, Agreements and Commitments, Accounts Receivable and Payable</u>. Attached hereto as <u>Exhibit "C"</u> is a list of all contracts, agreements and commitments, and complete copies thereof, that Seller has either entered into or made, either individually (but which nonetheless may constitute binding legal obligations of the Company for whatever reason) or on behalf of the Company, with third parties. Seller represents and warrants to Purchaser that (i) there are no other contracts, agreements or commitments, oral or written, in existence which Seller has entered into either individually (but which nonetheless may constitute legally binding obligations of the Company for whatever reason), or on behalf of the Company, which are not listed in <u>Exhibit "C"</u>; and (ii) Seller has provided the Purchaser with full and complete copies of such contracts and agreements, together with all amendments and modifications thereto. Following the Effective Date, Seller shall not cause or allow the Company to enter into any contracts or agreements (other than the pharmacy management agreement with Pharms, LLC) without the consent of Purchaser. Attached hereto as <u>Exhibit "D"</u> is a list of all accounts payable and receivable for the Company, including a statement of all taxes, fees, fines, assessments, or other sums owed to any governmental authority as of the Closing Date. Seller represents and warrants to Purchaser that there are no other, debts, liabilities, or accounts receivable or payable that relate to the Company which are not listed in <u>Exhibit "D"</u>. The Company reserves the right to contest or dispute the validity or any other matter under any such contracts and agreements, as well as any charges, costs, fees, or other items included in <u>Exhibit "C"</u> or <u>Exhibit "D"</u>, with the vendor or other party to said agreement.

4. <u>Books and Records</u>. On the Secondary Closing Date, Seller shall deliver to Purchaser, or its designee (i) original versions of all entity formation and governing documents; (ii) all operating statements, balance sheets, bank ledgers, and financial records of the Company, in any form; and (iii) all files, documents, titles, certificates, permits, and governmental approvals which relate to the Company's business or any assets of the Company.

5. <u>Indemnity</u>. **Seller agrees to indemnify, defend, and hold the Purchaser and the Company harmless from and against any and all losses, claims, damages, costs, fines, penalties and expenses of every nature (including, without limitation, court costs and attorneys' fees) incurred by the Purchaser or the Company arising out of (i) any contracts, agreements, obligations, liabilities, or commitments which Seller incurred, executed or entered into, either individually (but which nonetheless constitute legally binding obligations of the Company), or on behalf of the Company, which are not (a) listed in <u>Exhibit "C"</u>; or (b) entered into by the Company after the Effective Date and approved or consented to by Purchaser; (ii) any liability of the Company to any governmental authority for any taxes, fees, fines, assessments, or other unpaid sums arising prior to the Closing Date, (iii) any accounts payable or other debts of the Company, which were initiated, undertaken, assumed or otherwise created by Seller on behalf of, or for the Company, which are not listed in <u>Exhibit "D"</u>; (iv) a breach of this Agreement by Seller; or (v) the breach or inaccuracy of any warranties or representations made by Seller hereunder.**

6. Representations and Warranties.

    6.1. <u>Seller's Representations and Warranties</u>. Seller warrants and represents to the Purchaser as of the Closing Date, as follows:

        6.1.1. Seller has the full power and authority to enter into this Agreement and perform its respective obligations hereunder.

        6.1.2. Seller represents and warrants that (a) it is the sole and exclusive owner of the Initial Assigned Interest and the Secondary Assigned Interest, free and clear of all liens, charges, pledges, encumbrances, security interests or rights of third parties; (b) it has full power and authority to enter into this Agreement and to sell and convey the Initial Assigned Interest and the Secondary Assigned Interest upon the terms provided in this Agreement to the Purchaser, (c) there are no outstanding option rights, rights of first refusal or other arrangements relating to the Initial Assigned Interest and the Secondary Assigned Interest, and Seller has not sold, granted, transferred or otherwise assigned to any person, entity

or any party any right, title or interest in or to the Interest; (d) this Agreement constitutes the valid, binding and enforceable obligation of Seller; and (e) the execution and delivery by Seller of this Agreement and the performance of its respective obligations hereunder do not violate, conflict with, invalidate, cancel, or interfere with, or constitute a default under any contract, agreement or court order to which Seller is a party or is bound.

    6.1.3. No representation or warranty by Seller in this Agreement, or information contained in any statement or certificate furnished by Seller or required to be furnished to any other party pursuant to this Agreement contains or will contain any untrue statement of a material fact, or omits or will omit to state a material fact required to be stated therein or necessary in order to make the statements contained therein not materially untrue.

    6.1.4 All bills and other payments then due and owing from the Company with respect to its business, operations, or assets will be paid or satisfied prior to or at Closing.

    6.1.5 There is no action, proceeding, suit or investigation pending or being prosecuted to which Seller or the Company is a party in any court or by or before any governmental entity affecting the Company, or the ownership, operation, use or condition of any assets of the Company. To Seller's knowledge, no action, suit, proceeding or investigation is contemplated or threatened.

    6.1.6 Neither Seller nor the Company has (i) made a general assignment for the benefit of creditors, (ii) filed any voluntary petition in bankruptcy or suffered the filing of an involuntary petition by their creditors, (iii) suffered the appointment of a receiver to take possession of all or substantially all of their assets, (iv) suffered the attachment or other judicial seizure of all, or substantially all, of their assets, (v) admitted in writing its inability to pay its debts as they come due, or (vi) made an offer of settlement, extension or composition to its creditors generally.

    6.1.7 Neither Seller nor the Company has received any written notice from, and is otherwise aware of no grounds for, any governmental agency requiring the correction of any condition with respect to the Company, its business or any of its assets, by reason of a violation of any applicable federal, state, county or municipal law, code, rule or regulation, which has not been cured or waived, and neither Seller nor the Company have received any written notice of an intention to revoke any governmental approval, certificate, plan, license, or permit issued in connection with the business of the Company or its assets.

    6.1.8 Seller is the only owner of equity interests in the Company.

  6.2. <u>Purchaser Representations and Warranties</u>. The Purchaser represents and warrants to Seller as follows:

    6.2.1. The Purchaser has full power and authority to enter into this Agreement and to perform all of its obligations hereunder and by proper action has duly authorized the execution and delivery of this Agreement and the performance of its obligations hereunder.

    6.2.2. The execution and delivery by the Purchaser of this Agreement and the performance of its obligations hereunder do not violate, conflict with, invalidate, cancel or interfere with, or constitute a default under any contract or other written agreement of the Purchaser, or any permit, regulation, order, law or rule applicable to the Purchaser.

    6.2.3. The Purchaser is acquiring the Initial Assigned Interest and the Secondary Assigned Interest without notice of any adverse claim to such interests.

    6.3.4 In making the decision to enter into this Agreement and to consummate the transactions contemplated hereby, the Purchaser has relied on the representations, warranties, covenants

Purchase and Sale Agreement – JSW Prosperity LLC - 4 -

and agreements of Seller as set forth herein, and no other representations, warranties, covenants and agreements.

7. Inspection and Evaluation.

7.1 Review Documents. On the Effective Date, Seller shall deliver to Purchaser, at Seller's sole cost and expense, copies of all of the following documents and information that are within the Seller's possession (collectively, the "Review Documents"):

(a) All memoranda, letters, notices, documents and pleadings in connection with any actual or threatened lawsuits affecting any of the Company;

(b) Any contracts and agreement to which the Company is a party or which binds the Company or its business;

(c) Any and all leases, contracts or agreements for the use of real property, personal property, or equipment;

(d) A current inventory of all supplies, equipment, materials, pharmaceuticals, and other property owned by the Company;

(e) A list of employees of the Company, together with any employment or employment related agreements, identifying their respective salaries and benefits paid to such employees within the prior twelve (12) months;

(f) Any and all permits, approvals, or pending applications for the same with any governmental entity or licensing body (whether public or private) which relate in any way to the business of the Company;

(g) An operating statement for the Company for the prior twelve (12) months, reflecting all expenses and income, and accounts receivable and accounts payable;

(h) A list of all insurance policies covering or affecting the Company, together with copies of such policies, and a summary of claims on said policies within the current and prior two (2) years.

(i) All corporate formation documents, and books and records relating to the formation, organization and governance of the Company, all tax returns (state and federal) filed by the Company for the preceding five (5) years, as well as all ledgers, operating statements, budgets, and other financial records of the Company covering the preceding five (5) years.

7.2 Pharmacy Management. On the Effective Date, Seller shall execute a pharmacy management agreement with Pharms, LLC, an affiliate of Purchaser, whereby Pharms, LLC will take over the day-to-day management of the pharmacy business operated by the Company. The term of such pharmacy management agreement shall extend to at least April 30, 2019.

8. Holdback and Escrow Agreement. On the Initial Closing Date, Seller, Purchaser and the Escrow Agent shall enter into an escrow agreement (the "Escrow Agreement"), whereby the Escrow Agent shall receive and hold: (a) the Closing Documents executed by Seller; and (b) the sum of Forty Thousand Dollars ($40,000.00) out of the funds due to Seller hereunder (the "Holdback"). The Holdback shall serve as an escrow fund for payment and satisfaction of: (i) the Seller's indemnification obligations under Section 5 hereof; (ii) the payment of any claims, obligations, debts, or liabilities that arose or accrued prior to the Secondary Closing Date and were not disclosed or otherwise accounted for by Seller and Purchaser; (iii) costs or losses incurred by Purchaser after the Initial Closing resulting from a breach of a warranty or

Purchase and Sale Agreement – JSW Prosperity LLC            - 5 -

representation of Seller herein; and (iv) payment of any Post-Closing Adjustments; and shall be held and applied in accordance with the terms of the Escrow Agreement. On the Secondary Closing Date, all funds remaining in the Holdback shall be delivered by the Escrow Agent to the Seller, and the Escrow Agent shall deliver to Purchaser the executed Closing Documents.

9.    Survival. The representations, warranties, covenants and all other provisions contained in this Agreement shall survive for a period of four (4) years after the date hereof.

10.    Commissions. Purchaser and Seller each represents and warrants to the other that no broker, finder, agent or other intermediary has been employed by or on behalf of Purchaser or Seller respectively in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby except that Seller was represented by Tech Acquisitions LLC ("Seller's Broker"). Seller's Broker shall be entitled to payment of compensation by Seller pursuant to a separate written agreement between Seller and Seller's Broker. No other party has any claim for any commission, finder's fee or similar amount payable as a result of any engagement of such party by Purchaser or Seller. Each party agrees to indemnify, defend and hold harmless the other from and against any cost, expense (including reasonable attorneys' fees), claims by any broker, finder, agent or other intermediary by, through or under of such party in connection with the negotiation or consummation of this Agreement or the transaction contemplated hereby.

11.    Notices. All notices, requests, or other communications given under this Contract shall be deemed sufficiently given if in writing and delivered personally, by telecopy, or by recognized overnight delivery service, and shall be effective (i) on the date delivered by hand delivery or telecopy (provided such telecopy is received by the recipient's telecopy machine on a weekday before 5:00 p.m., Houston, Texas time, and a copy is sent by another permitted method of delivery, or (ii) one (1) day following the date sent by recognized overnight delivery service. For purposes of notice, the addresses of the parties shall be as follows:

To Seller:        Jermain David Wiggins
                  3811 Edgewood Hill Ct.
                  Fresno, TX 77545-8759
                  Telecopy No.: 981-417-0628

To Purchaser:     One Stop Acquisitions LLC
                  Attn: Scott Breimeister
                  4916 Main Street #100
                  Houston, TX  77002
                  Telecopy No.: 713-974-0314

Any party may change its notice address by written notice to all other parties given in accordance with this Section.

12.    Miscellaneous.

12.1.    This Agreement is made under and shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to its conflict of laws provisions.

12.2.    Neither this Agreement nor any provision hereof may be modified, waived, amended, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of the modification, waiver, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

12.3.    The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

Purchase and Sale Agreement – JSW Prosperity LLC        - 6 -

12.4. This Agreement, along with the other documents and agreements to be executed which are attached as exhibits hereto, contains the full and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein written, and this Agreement supersedes all other agreements concerning the subject matter.

12.5. This Agreement may be assigned by Purchaser to an entity owned in whole or part by Purchaser, or controlled by, or under the common control of Purchaser.

12.6. Time shall be of the essence with respect to all of the obligations of the parties hereunder.

12.7. This Agreement shall not be recorded or filed and any attempted recordation or filing shall be void and shall constitute a default by the party attempting such recording or filing.

12.8. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and permitted assigns.

12.9. This Agreement may be executed in one or more counterparts.

12.10. After the Initial Closing and Secondary Closing, each of the parties hereto will from time to time, at the request of any other party and without further cost or expense to the requesting party, and in each case within ten (10) days of delivery of the requesting party's request, execute, acknowledge, deliver and perform such other instruments of conveyance and transfer, and take such other actions as the requesting party may reasonably request, to implement the transactions contemplated hereby and to vest in the Purchaser exclusive legal title and possession and control of the Initial Assigned Interest and the Secondary Assigned Interest, and the requesting party shall deliver to the Purchaser all original copies of all related documents relating to the Initial Assigned Interest and the Secondary Assigned Interest being acquired. If any party shall violate or breach this provision in any manner, then the party in breach or violation shall be conclusively deemed to have materially breached this Agreement.

12.11. This Agreement, as well the other documents and agreements executed in connection with this Agreement, have been negotiated by the parties hereto and their respective legal counsel, and legal or equitable principles that might require the construction of this Agreement, or the other documents and agreements executed in connection herewith, or any provisions thereof for or against the party drafting this Agreement (or the other documents and agreements executed in connection herewith) will not apply in any construction or interpretation of this Agreement (or the other documents and agreements executed in connection herewith).

12.12. If any term or provision of this Agreement is found to be invalid or illegal or incapable of being enforced by any rule of law or public policy, all other provisions and conditions of this Agreement shall nevertheless be legally binding and shall remain in full force and effect. Upon the determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto agree that such provision shall be amended so as to be legal and enforceable and as nearly as possible to give effect to the intentions of the parties hereto.




IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

"SELLER":

_____
Jermain David Wiggins

"PURCHASER":

One Stop Acquisitions, LLC,
a Texas limited liability company

By: _____
Scott Breimeister, Manager

Escrow Agent joins in the execution of this Agreement to acknowledge receipt of the Holdback and to acknowledge its obligations in accordance with Section 8 hereof:

_____
Jeb Brown, Escrow Agent

Purchase and Sale Agreement – JSW Prosperity LLC      - 8 -

# EXHIBIT "A"

## Company Inventory

EXHIBIT "B"
Retained Personal Property

None

EXHIBIT "C"

Contracts, Agreements, Commitments

EXHIBIT "D"

Accounts Payable; Liabilities