## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "Agreement") is entered into as of September 7, 2016 (the "Effective Date") by and between Erik Underwood ("Seller") and Scott A. Breimeister ("Purchaser").

### RECITALS

A.  Seller owns ninety-nine percent (99.00%) of the Membership Interests in OptiPlus Healthcare, LLC, a Texas limited liability company (the "Company"), as the term "Membership Interest" is defined in the Operating Agreement of OptiPlus Healthcare, LLC dated October 3, 2012, as amended by that certain First Amendment to Operating Agreement of OptiPlus Healthcare, LLC dated January 1, 2014, and that certain Second Amendment to Operating Agreement of OptiPlus Healthcare, LLC dated September 30, 2014, and that certain Third Amendment to Operating Agreement of OptiPlus Healthcare, LLC dated December 1, 2014, and that certain Fourth Amendment to Operating Agreement of OptiPlus Healthcare, LLC dated December 1, 2014 (as amended, the "Operating Agreement"); and

B.  Seller has agreed to sell and assign to Purchaser, and Purchaser has agreed to purchase from Seller, all of his Membership Interest in the Company for the price and subject to the terms and conditions set forth in this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.  Sale of Interests.

    1.1  At Closing (as such term is defined below), Seller shall sell, transfer, convey and assign to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions provided in this Agreement, an undivided ninety-nine percent (99.00%) Membership Interest in the Company, which interest shall be free and clear of all liens, restrictions, encumbrances or rights of third parties, except as set forth herein.

    1.2  Subject to the terms and conditions of this Agreement, the closing of Seller's transfer and conveyance of the Membership Interest to Purchaser (the "Closing") shall be simultaneous with the execution of this Agreement by the parties hereto and shall take place on September 7, 2016 (the "Closing Date").

2.  Consideration. In consideration for Seller's conveyance, transfer and assignment of the Membership Interest, at Closing, Purchaser shall pay Seller the sum of Ten Thousand and no/100 Dollars ($10,000.00) to be paid as follows: Purchaser shall execute and deliver to Seller at Closing a promissory note in the amount of the purchase price, which note shall bear interest at the Prime Rate until paid in full, and which shall mature and be payable in full on the date that is thirty (30) days after the Closing Date. For the purposes hereof the Prime Rate shall be the base or prime interest rate as published in the Wall Street Journal.

3.  Representations and Warranties.

    3.1.  Seller's Representations and Warranties. Seller warrants and represents to Purchaser as of the Closing Date, that (a) it is the sole and exclusive owner of the Membership Interest, free and clear of all liens, charges, pledges, encumbrances, security interests or rights of third parties, except as set forth herein; (b) it has full power and authority to enter into this Agreement and to sell and convey the Membership Interest upon the terms provided in this Agreement to Purchaser, (c) there are no outstanding

GOVERNMENT
EXHIBIT
**320**
4:18-CR-368

option rights, rights of first refusal or other arrangements relating to the Membership Interest (other than as set forth herein and in the Operating Agreement), and Seller has not sold, granted, transferred or otherwise assigned to any person, entity or any party any right, title or interest in or to the Membership Interest; (d) this Agreement constitutes the valid, binding and enforceable obligation of Seller; (e) the execution and delivery by Seller of this Agreement and the performance of its respective obligations hereunder do not violate, conflict with, invalidate, cancel, or interfere with, or constitute a default under any contract, agreement or court order to which Seller is a party or is bound.

3.2 Purchaser's Representations and Warranties. Purchaser represents and warrants to Seller that (a) Purchaser has full power and authority to enter into this Agreement and to perform all of its obligations hereunder; (b) the execution and delivery by Purchaser of this Agreement and the performance of its obligations hereunder do not violate, conflict with, invalidate, cancel or interfere with, or constitute a default under any contract or other written agreement of Purchaser, or any permit, regulation, order, law or rule applicable to Purchaser; (c) Purchaser is acquiring the Membership Interest without notice of any adverse claim to such interests; (d) Purchaser has received a copy of the Operating Agreement, has read it, and agrees to be bound by its terms; and (e) Purchaser has had an opportunity to review and examine the financial records of the Company and is familiar with the assets, debts and liabilities of the Company.

4. Survival. The representations, warranties, covenants and all other provisions contained in this Agreement shall survive for a period of one (1) year after the date hereof.

5. Miscellaneous.

5.1. This Agreement is made under and shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to its conflict of laws provisions.

5.2. Neither this Agreement nor any provision hereof may be modified, waived, amended, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of the modification, waiver, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

5.3. The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

5.4. This Agreement, along with the other documents and agreements to be executed which are attached as exhibits hereto, contains the full and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein written, and this Agreement supersedes all other agreements concerning the subject matter.

5.5. This Agreement may not be assigned by any party hereto without the prior written consent of all other parties, which consent shall not be unreasonably withheld.

5.6. Time shall be of the essence with respect to all of the obligations of the parties hereunder.

5.7. This Agreement shall not be recorded or filed and any attempted recordation or filing shall be void and shall constitute a default by the party attempting such recording or filing.

5.8. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and permitted assigns.

5.9. This Agreement may be executed in one (1) or more counterparts,

5.10. This Agreement, as well the other documents and agreements executed in connection with this Agreement, have been negotiated by the parties hereto and their respective legal counsel, and legal or equitable principles that might require the construction of this Agreement, or the other documents and agreements executed in connection herewith, or any provisions thereof for or against the party drafting this Agreement (or the other documents and agreements executed in connection herewith) will not apply in any construction or interpretation of this Agreement (or the other documents and agreements executed in connection herewith).

5.11. If any term or provision of this Agreement is found to be invalid or illegal or incapable of being enforced by any rule of law or public policy, all other provisions and conditions of this Agreement shall nevertheless be legally binding and shall remain in full force and effect. Upon the determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto agree that such provision shall be amended so as to be legal and enforceable and as nearly as possible to give effect to the intentions of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under their respective hands and seals as of the day and year first above written.

"SELLER":

_____
Erik Underwood

"PURCHASER":

_____
Scott A. Breimeister