## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "Agreement") is entered into as of December 1, 2014 (the "Effective Date") by and between Scott A. Breimeister ("Seller") and Erik Underwood ("Purchaser").

### RECITALS

A.     Seller owns 11.19% of the Membership Interests in OptiPlus Healthcare, LLC, a Texas limited liability company (the "Company"), as the term "Membership Interest" is defined in the Operating Agreement of OptiPlus Healthcare, LLC dated October 3, 2012, as amended by that certain First Amendment to Operating Agreement of OptiPlus Healthcare, LLC dated January 1, 2014, and as further amended by that certain Second Amendment to Operating Agreement of OptiPlus Healthcare, LLC dated September 30, 2014 (as amended, the "Operating Agreement"); and

B.     Seller has agreed to sell and assign to Purchaser, and Purchaser has agreed to purchase from Seller, all of his Membership Interest in the Company for the price and subject to the terms and conditions set forth in this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.     Sale of Interests.

1.1     At Closing (as such term is defined below), Seller shall sell, transfer, convey and assign to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions provided in this Agreement, Seller's Membership Interest in the Company, which interest shall be free and clear of all liens, restrictions, encumbrances or rights of third parties.

1.2     Subject to the terms and conditions of this Agreement, the closing of Seller's transfer and conveyance of the Membership Interest to Purchaser (the "Closing") shall be simultaneous with the execution of this Agreement by the parties hereto and shall take place on December 1, 2014 (the "Closing Date").

1.3     All accounts receivable of the Company and all other rights of the Company to payment for goods sold or leased or for services rendered on or prior to the Closing Date shall be retained by Seller. In the event Purchaser receives payment for any accounts receivable or other payments retained by Seller hereunder, Purchaser shall promptly forward the same to Seller. All accounts payable and current obligations of the Company due and payable as of the Closing Date shall be paid by the Company at or prior to the Closing Date.

2.     Consideration. In consideration for Seller's conveyance, transfer and assignment of the Membership Interest, at Closing, Purchaser shall pay Seller the sum of Ten Thousand Seventy-One and no/100 Dollars ($10,071.00), to be paid as follows: Purchaser shall execute and deliver to Seller at Closing a promissory note in the amount of the purchase price, which note shall bear interest at the Prime Rate until paid in full, and which shall mature and be payable in full on the date that is one (1) year after the Closing Date. For the purposes hereof the Prime Rate shall be the base or prime interest rate as published in the Wall Street Journal. Further, Purchaser shall execute and deliver to Seller a security agreement granting Seller a first lien priority security interest in the limited liability company membership interests in the Company.

Purchase and Sale Agreement – OptiPlus Healthcare LLC – Breimeister to Underwod

- 1 -

GOVERNMENT
EXHIBIT
601
4:18-CR-368

3.    Representations and Warranties.

3.1.    Seller's Representations and Warranties.  Seller warrants and represents to Purchaser as of the Closing Date, that (a) it is the sole and exclusive owner of the Membership Interest, free and clear of all liens, charges, pledges, encumbrances, security interests or rights of third parties; (b) it has full power and authority to enter into this Agreement and to sell and convey the Membership Interest upon the terms provided in this Agreement to Purchaser, (c) there are no outstanding option rights, rights of first refusal or other arrangements relating to the Membership Interest (other than as set forth herein and in the Operating Agreement), and Seller has not sold, granted, transferred or otherwise assigned to any person, entity or any party any right, title or interest in or to either the Membership Interest; (d) this Agreement constitutes the valid, binding and enforceable obligation of Seller; (e) the execution and delivery by Seller of this Agreement and the performance of its respective obligations hereunder do not violate, conflict with, invalidate, cancel, or interfere with, or constitute a default under any contract, agreement or court order to which Seller is a party or is bound.

3.2    Purchaser's Representations and Warranties.  Purchaser represents and warrants to Seller that (a) Purchaser has full power and authority to enter into this Agreement and to perform all of its obligations hereunder; (b) the execution and delivery by Purchaser of this Agreement and the performance of its obligations hereunder do not violate, conflict with, invalidate, cancel or interfere with, or constitute a default under any contract or other written agreement of Purchaser, or any permit, regulation, order, law or rule applicable to Purchaser; (c) Purchaser is acquiring the Membership Interest without notice of any adverse claim to such interests; (d) Purchaser has received a copy of the Operating Agreement, has read it, and agrees to be bound by its terms; and (e) Purchaser has had an opportunity to review and examine the financial records of the Company and is familiar with the assets, debts and liabilities of the Company.

4.    Survival.  The representations, warranties, covenants and all other provisions contained in this Agreement shall survive for a period of one (1) year after the date hereof.

5.    Miscellaneous.

5.1.    This Agreement is made under and shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to its conflict of laws provisions.

5.2.    Neither this Agreement nor any provision hereof may be modified, waived, amended, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of the modification, waiver, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

5.3.    The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

5.4.    This Agreement, along with the other documents and agreements to be executed which are attached as exhibits hereto, contains the full and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein written, and this Agreement supersedes all other agreements concerning the subject matter.

5.5.    This Agreement may not be assigned by any party hereto without the prior written consent of all other parties, which consent shall not be unreasonably withheld.

5.6.    Time shall be of the essence with respect to all of the obligations of the parties hereunder.

5.7.    This Agreement shall not be recorded or filed and any attempted recordation or filing shall be void and shall constitute a default by the party attempting such recording or filing.

5.8.    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and permitted assigns.

5.9.    This Agreement may be executed in one (1) or more counterparts.

5.10.    This Agreement, as well the other documents and agreements executed in connection with this Agreement, have been negotiated by the parties hereto and their respective legal counsel, and legal or equitable principles that might require the construction of this Agreement, or the other documents and agreements executed in connection herewith, or any provisions thereof for or against the party drafting this Agreement (or the other documents and agreements executed in connection herewith) will not apply in any construction or interpretation of this Agreement (or the other documents and agreements executed in connection herewith).

5.11.    If any term or provision of this Agreement is found to be invalid or illegal or incapable of being enforced by any rule of law or public policy, all other provisions and conditions of this Agreement shall nevertheless be legally binding and shall remain in full force and effect.  Upon the determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto agree that such provision shall be amended so as to be legal and enforceable and as nearly as possible to give effect to the intentions of the parties hereto.

6.    Repurchase Option.

6.1    Option to Repurchase.  Seller hereby reserves the exclusive option (the "Repurchase Option") to repurchase the Membership Interest from Purchaser upon the terms and conditions set forth herein.

6.2    Term.  The term of the Repurchase Option shall commence on the Closing Date, and shall terminate on the date that is five (5) years thereafter (the "Repurchase Option Term").

6.3    Purchase Price.  If the Repurchase Option is exercised, the purchase price for the Membership Interest shall be equal to the sum of the total distributions made to Purchaser by the Company for the three (3) month period preceding the date of the Repurchase Option Notice.  The purchase price shall be payable by Seller in cash at the Repurchase Option Closing.

6.4    Exercise.  The Repurchase Option may be exercised by Seller giving written notice (the "Repurchase Option Notice") to Purchaser at any time during the Repurchase Option Term.

6.5    Defaults and Remedies.  In the event Seller shall timely exercise the Repurchase Option but shall thereafter fail to timely close on such purchase, Purchaser may, as its sole and exclusive remedy, immediately terminate the Repurchase Option.  In the event Seller shall timely exercise the Repurchase Option but the sale is not consummated through default on the part of Purchaser, then Seller shall be entitled at Seller's election and as Seller's sole remedy to enforce specific performance of Purchaser's obligation to convey the Membership Interest or terminate the Repurchase Option.  In no event, however, shall Purchaser or Seller ever sue each other for

damages related to the Repurchase Option. Seller's failure to exercise the Repurchase Option or close the transaction to acquire the Membership Interest shall not affect the ROFR, as described below.

6.6     Closing Date. The closing of the purchase shall occur at the offices of the Company, and shall occur thirty (30) days following delivery of the Repurchase Option Notice to Purchaser or on such sooner date as the parties may agree.

6.7     Closing Matters. At the closing, Purchaser shall execute and deliver to Seller an instrument of assignment conveying to Seller the Membership Interest. At the closing, Seller shall deliver to Purchaser the purchase price as set forth in Section 6.3. The parties shall execute and deliver such other instruments as are customarily executed in Texas to effectuate the conveyance of interests similar to the Membership Interest.

7.     Right of First Refusal.

7.1     Right of First Refusal. It is the intent of Purchaser and Seller that Purchaser be restricted from selling to a third party all or part of the Membership Interest for a period of five (5) years from and after the Closing Date. Accordingly, Seller hereby reserves a right of first refusal with respect to the Membership Interest, upon the terms and conditions set forth herein.

a.     Reservation of Right of First Refusal. At such time as Purchaser shall reach an agreement with a third party to sell all or part of the Membership Interest, or any equity interest in the Company, Purchaser shall offer, by written notice to Seller (the "ROFR Notice"), the right and option exercisable during a period of thirty (30) days from Purchaser's receipt of the ROFR Notice, to unconditionally acquire the Membership Interest that is the subject of such offer upon the terms and conditions set forth herein. The ROFR Notice shall include a copy of any contract, term sheet, letter of intent or other evidence of the terms of the proposed sale to the third party.

b.     Exercise of Right of First Refusal. Seller shall have fifteen (15) days from receipt of the ROFR Notice, within which to accept the offer to acquire the Membership Interest covered by the ROFR Notice. Such acceptance and election to purchase shall be made in writing and delivered to Purchaser and the failure of Seller to deliver such response within such fifteen (15) day period shall be deemed an election not to acquire the Membership Interest described in the ROFR Notice.

c.     Rejection of ROFR. If Seller rejects or is deemed to have rejected any ROFR Notice, then Seller shall have no additional rights of first refusal with respect to the Membership Interest described in the ROFR Notice, but such right shall continue as to the remainder of the Membership Interest, if any.

d.     Purchase Price. If Seller exercises its ROFR hereunder, the purchase price for the Membership Interest shall be equal to the sum of the total distributions made to the Purchaser by the Company for the three (3) months preceding the date of the ROFR Notice, prorated to reflect the percentage of the Membership Interest covered by the ROFR Notice. The purchase price shall be payable by Seller in cash at the closing described below.

e.     Closing Date. The closing of the purchase shall occur at the offices of the Company, and shall occur thirty (30) days following delivery of Seller's acceptance of the ROFR Notice to Purchaser or on such sooner date as the parties may agree.

f.     Closing Matters. At the closing, Purchaser shall execute and deliver to Seller an instrument of assignment conveying to Seller the Membership Interest, or portion

thereof covered by the ROFR Notice. At the closing, Seller shall deliver to Purchaser the purchase price as set forth in Section 7.1(d). The parties shall execute and deliver such other instruments as are customarily executed in Texas to effectuate the conveyance of interests similar to the Membership Interest.

GX601.005                                           DOJ_18CR368-0079742

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under their respective hands and seals as of the day and year first above written.

"SELLER":

Scott A. Breimeister

"PURCHASER":

Erik Underwood

GX601.006                    DOJ_18CR368-0079743

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "Agreement") is entered into as of December 1, 2014 (the "Effective Date") by and between Brian Swiencinski ("Seller") and Erik Underwood ("Purchaser").

## RECITALS

A.      Seller owns 88.81% of the Membership Interests in OptiPlus Healthcare, LLC, a Texas limited liability company (the "Company"), as the term "Membership Interest" is defined in the Operating Agreement of OptiPlus Healthcare, LLC dated October 3, 2012, as amended by that certain First Amendment to Operating Agreement of OptiPlus Healthcare, LLC dated January 1, 2014, and as further amended by that certain Second Amendment to Operating Agreement of OptiPlus Healthcare, LLC dated September 30, 2014 (as amended, the "Operating Agreement"); and

B.      Seller has agreed to sell and assign to Purchaser, and Purchaser has agreed to purchase from Seller, all of his Membership Interest in the Company for the price and subject to the terms and conditions set forth in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.      Sale of Interests.

1.1      At Closing (as such term is defined below), Seller shall sell, transfer, convey and assign to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions provided in this Agreement, Seller's Membership Interest in the Company, which interest shall be free and clear of all liens, restrictions, encumbrances or rights of third parties.

1.2      Subject to the terms and conditions of this Agreement, the closing of Seller's transfer and conveyance of the Membership Interest to Purchaser (the "Closing") shall be simultaneous with the execution of this Agreement by the parties hereto and shall take place on December 1, 2014 (the "Closing Date").

1.3      All accounts receivable of the Company and all other rights of the Company to payment for goods sold or leased or for services rendered on or prior to the Closing Date shall be retained by Seller. In the event Purchaser receives payment for any accounts receivable or other payments retained by Seller hereunder, Purchaser shall promptly forward the same to Seller. All accounts payable and current obligations of the Company due and payable as of the Closing Date shall be paid by the Company at or prior to the Closing Date.

2.      Consideration. In consideration for Seller's conveyance, transfer and assignment of the Membership Interest, at Closing, Purchaser shall pay Seller the sum of Seventy-Nine Thousand Nine Hundred Twenty-Nine and no/100 Dollars ($79,929.00), to be paid as follows: Purchaser shall execute and deliver to Seller at Closing a promissory note in the amount of the purchase price, which note shall bear interest at the Prime Rate until paid in full, and which shall mature and be payable in full on the date that is one (1) year after the Closing Date. For the purposes hereof the Prime Rate shall be the base or prime interest rate as published in the Wall Street Journal. Further, Purchaser shall execute and deliver to Seller a security agreement granting Seller a first lien priority security interest in the limited liability company membership interests in

Purchase and Sale Agreement – OptiPlus Healthcare LLC – Swiencinski to Underwood

- 1 -

the Company.

3.     Representations and Warranties.

3.1.    Seller's Representations and Warranties.  Seller warrants and represents to Purchaser as of the Closing Date, that (a) it is the sole and exclusive owner of the Membership Interest, free and clear of all liens, charges, pledges, encumbrances, security interests or rights of third parties; (b) it has full power and authority to enter into this Agreement and to sell and convey the Membership Interest upon the terms provided in this Agreement to Purchaser, (c) there are no outstanding option rights, rights of first refusal or other arrangements relating to the Membership Interest (other than as set forth herein and in the Operating Agreement), and Seller has not sold, granted, transferred or otherwise assigned to any person, entity or any party any right, title or interest in or to either the Membership Interest; (d) this Agreement constitutes the valid, binding and enforceable obligation of Seller; (e) the execution and delivery by Seller of this Agreement and the performance of its respective obligations hereunder do not violate, conflict with, invalidate, cancel, or interfere with, or constitute a default under any contract, agreement or court order to which Seller is a party or is bound.

3.2    Purchaser's Representations and Warranties.  Purchaser represents and warrants to Seller that (a) Purchaser has full power and authority to enter into this Agreement and to perform all of its obligations hereunder; (b) the execution and delivery by Purchaser of this Agreement and the performance of its obligations hereunder do not violate, conflict with, invalidate, cancel or interfere with, or constitute a default under any contract or other written agreement of Purchaser, or any permit, regulation, order, law or rule applicable to Purchaser; (c) Purchaser is acquiring the Membership Interest without notice of any adverse claim to such interests; (d) Purchaser has received a copy of the Operating Agreement, has read it, and agrees to be bound by its terms; and (e) Purchaser has had an opportunity to review and examine the financial records of the Company and is familiar with the assets, debts and liabilities of the Company.

4.     Survival.  The representations, warranties, covenants and all other provisions contained in this Agreement shall survive for a period of one (1) year after the date hereof.

5.     Miscellaneous.

5.1.    This Agreement is made under and shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to its conflict of laws provisions.

5.2.    Neither this Agreement nor any provision hereof may be modified, waived, amended, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of the modification, waiver, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

5.3.    The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

5.4.    This Agreement, along with the other documents and agreements to be executed which are attached as exhibits hereto, contains the full and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein written, and this Agreement supersedes all other agreements concerning the subject matter.

5.5.    This Agreement may not be assigned by any party hereto without the prior written consent of all other parties, which consent shall not be unreasonably withheld.

5.6.    Time shall be of the essence with respect to all of the obligations of the parties hereunder.

5.7.    This Agreement shall not be recorded or filed and any attempted recordation or filing shall be void and shall constitute a default by the party attempting such recording or filing.

5.8.    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and permitted assigns.

5.9.    This Agreement may be executed in one (1) or more counterparts.

5.10.    This Agreement, as well the other documents and agreements executed in connection with this Agreement, have been negotiated by the parties hereto and their respective legal counsel, and legal or equitable principles that might require the construction of this Agreement, or the other documents and agreements executed in connection herewith, or any provisions thereof for or against the party drafting this Agreement (or the other documents and agreements executed in connection herewith) will not apply in any construction or interpretation of this Agreement (or the other documents and agreements executed in connection herewith).

5.11.    If any term or provision of this Agreement is found to be invalid or illegal or incapable of being enforced by any rule of law or public policy, all other provisions and conditions of this Agreement shall nevertheless be legally binding and shall remain in full force and effect. Upon the determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto agree that such provision shall be amended so as to be legal and enforceable and as nearly as possible to give effect to the intentions of the parties hereto.

6.    Repurchase Option.

6.1    Option to Repurchase.    Seller hereby reserves the exclusive option (the "Repurchase Option") to repurchase the Membership Interest from Purchaser upon the terms and conditions set forth herein.

6.2    Term.    The term of the Repurchase Option shall commence on the Closing Date, and shall terminate on the date that is five (5) years thereafter (the "Repurchase Option Term").

6.3    Purchase Price.    If the Repurchase Option is exercised, the purchase price for the Membership Interest shall be equal to the sum of the total distributions made to the Purchaser by the Company for the three (3) month period preceding the date of the Repurchase Option Notice. The purchase price shall be payable by Seller in cash at the Repurchase Option Closing.

6.4    Exercise.    The Repurchase Option may be exercised by Seller giving written notice (the "Repurchase Option Notice") to Purchaser at any time during the Repurchase Option Term.

6.5    Defaults and Remedies.    In the event Seller shall timely exercise the Repurchase Option but shall thereafter fail to timely close on such purchase, Purchaser may, as its sole and exclusive remedy, immediately terminate the Repurchase Option. In the event Seller shall timely exercise the Repurchase Option but the sale is not consummated through default on the part of Purchaser, then Seller shall be entitled at Seller's election and as Seller's sole remedy to enforce

specific performance of Purchaser's obligation to convey the Membership Interest or terminate the Repurchase Option. In no event, however, shall Purchaser or Seller ever sue each other for damages related to the Repurchase Option. Seller's failure to exercise the Repurchase Option or close the transaction to acquire the Membership Interest shall not affect the ROFR, as described below.

6.6     Closing Date. The closing of the purchase shall occur at the offices of the Company, and shall occur thirty (30) days following delivery of the Repurchase Option Notice to Purchaser or on such sooner date as the parties may agree.

6.7     Closing Matters. At the closing, Purchaser shall execute and deliver to Seller an instrument of assignment conveying to Seller the Membership Interest. At the closing, Seller shall deliver to Purchaser the purchase price as set forth in Section 6.3. The parties shall execute and deliver such other instruments as are customarily executed in Texas to effectuate the conveyance of interests similar to the Membership Interest.

7.     Right of First Refusal.

7.1     Right of First Refusal. It is the intent of Purchaser and Seller that Purchaser be restricted from selling to a third party all or part of the Membership Interest for a period of five (5) years from and after the Closing Date. Accordingly, Seller hereby reserves a right of first refusal with respect to the Membership Interest, upon the terms and conditions set forth herein.

a.     Reservation of Right of First Refusal. At such time as Purchaser shall reach an agreement with a third party to sell all or part of the Membership Interest, or any equity interest in the Company, Purchaser shall offer, by written notice to Seller (the "ROFR Notice"), the right and option exercisable during a period of thirty (30) days from Purchaser's receipt of the ROFR Notice, to unconditionally acquire the Membership Interest that is the subject of such offer upon the terms and conditions set forth herein. The ROFR Notice shall include a copy of any contract, term sheet, letter of intent or other evidence of the terms of the proposed sale to the third party.

b.     Exercise of Right of First Refusal. Seller shall have fifteen (15) days from receipt of the ROFR Notice, within which to accept the offer to acquire the Membership Interest covered by the ROFR Notice. Such acceptance and election to purchase shall be made in writing and delivered to Purchaser and the failure of Seller to deliver such response within such fifteen (15) day period shall be deemed an election not to acquire the Membership Interest described in the ROFR Notice.

c.     Rejection of ROFR. If Seller rejects or is deemed to have rejected any ROFR Notice, then Seller shall have no additional rights of first refusal with respect to the Membership Interest described in the ROFR Notice, but such right shall continue as to the remainder of the Membership Interest, if any.

d.     Purchase Price. If Seller exercises its ROFR hereunder, the purchase price for the Membership Interest shall be equal to the sum of the total distributions made to the Purchaser by the Company for the three (3) months preceding the date of the ROFR Notice, prorated to reflect the percentage of the Membership Interest covered by the ROFR Notice. The purchase price shall be payable by Seller in cash at the closing described below.

e.     Closing Date. The closing of the purchase shall occur at the offices of the Company, and shall occur thirty (30) days following delivery of Seller's acceptance of the ROFR Notice to Purchaser or on such sooner date as the parties may agree.

Purchase and Sale Agreement – OptiPlus Healthcare LLC – Swiencinski to Underwood
- 4 -

f.      Closing Matters. At the closing, Purchaser shall execute and deliver to Seller an instrument of assignment conveying to Seller the Membership Interest, or portion thereof covered by the ROFR Notice. At the closing, Seller shall deliver to Purchaser the purchase price as set forth in Section 7.1(d). The parties shall execute and deliver such other instruments as are customarily executed in Texas to effectuate the conveyance of interests similar to the Membership Interest.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under their respective hands and seals as of the day and year first above written.

"SELLER":

Brian Swiencinski

"PURCHASER":

Erik Underwood