---------- Forwarded message ----------
From: **Leonard Carr** <leonard.carr@omnipluspharmacy.com>
Date: Wed, Aug 24, 2016 at 9:07 AM
Subject: Sale Docs
To: "mikedatigr@gmail.com" <mikedatigr@gmail.com>


Mary,


Attached are copies of the following documents for your records:


1.   Assignments of Common Stock – McKinney and Symonette

2.   Closing Settlement Statement

3.   Escrow Agreements - McKinney and Symonette

4.   Copies of Escrow Disbursements to McKinney and Symonette

GOVERNMENT
EXHIBIT
**603**
4:18-CR-368

5.   Copies of Payments at Closing

6.   Purchase and Sales Agreements - McKinney and Symonette

7.   Request for Disbursement of Escrow Funds

8.   Stock Certificates - McKinney and Symonette

Please let me know if you need anything further.

Leo



Leonard Carr | Vice President of Operations | leonard.carr@omniplushealthcare.com | (832) 742-8377 direct | (713) 874-0300 pharmacy | (713) 874-0314 fax

4916 Main Street, #100, Houston, TX 77002 | www.omniplushealthcare.com

*"Please consider the environment before printing this e-mail"*

CONFIDENTIALITY: This email and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to which they are addressed. This communication may contain material such as identifiable patient health information or business information which is privileged and legally protected from disclosure and subject to protection under applicable state and federal law, including the Health Insurance Portability and Accountability Act (HIPAA). If you are not the intended recipient or the person responsible for delivering the email to the intended recipient, be advised that you have received this email in error and that any use, dissemination, forwarding, printing, or copying of this email, or any files transmitted with it, is strictly prohibited. If you have received this email in error, please immediately notify the sender at (713) 874-0300 and delete this message. Unauthorized interception of this e-mail is a violation of federal criminal law.

## ASSIGNMENT OF COMMON STOCK

This Assignment of Common Stock (the "Assignment") is made as of February 27, 2015 (the Effective Date), by and between Mary McKinney (the "Assignor"), and Bradley L. Madrid (the "Assignee").

### RECITALS

WHEREAS, Assignor owns one thousand (1,000) shares of common stock (the "Shares") in Healthy Pharmacy Solutions, Inc., a Texas corporation (the "Corporation"); and

WHEREAS, the Assignor desires to assign to the Assignee all of the Shares, and the Assignee desires by this Assignment to accept the same.

NOW, THEREFORE, FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00) and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by each party, and the above recitals which are incorporated herein by reference, the parties agree as follows:

### ASSIGNMENT

As of the Effective Date, Assignor conveys, transfers, and assigns to Assignee and the Assignee accepts from the Assignor the Shares. Assignor represents and warrants that the Shares represent all of Assignor's interest in the Corporation, and upon execution and delivery of this Assignment, Assignor shall have no further continuing ownership interest in said entity. Assignor further represents and warrants that (a) she is the owner of the Shares, free and clear of all liens, charges, pledges, encumbrances, security interests or rights of third parties; (b) she has full power and authority to enter into this Assignment and to sell and convey the Shares upon the terms provided in this Assignment to the Assignee, (c) there are no outstanding option rights, rights of first refusal or other arrangements relating to the Shares, and Assignor has not sold, granted, transferred or otherwise assigned to any person, entity or any party any right, title or interest in the Shares; (d) this Assignment constitutes the valid, binding and enforceable obligation of Assignor; (e) the execution and delivery by Assignor of this Assignment and the performance of her respective obligations hereunder do not violate, conflict with, invalidate, cancel, or interfere with, or constitute a default under any contract, agreement or court order to which Assignor is a party or is bound; (f) Assignor has not incurred any debt or liability on behalf of the Corporation, nor entered into any contract or agreement that would bind Corporation after the Effective Date, except as previously disclosed to the Assignee; and (g) Assignor is not aware of any pending or threatened claims or suits by any person or entity against the Corporation, except as previously disclosed to the Assignee.

IN WITNESS WHEREOF, each party hereto has executed and sealed this Assignment or caused it to be executed and sealed on its behalf by its duly authorized representatives, the day and year first above written.

**"ASSIGNOR":**

Mary McKinney

**"ASSIGNEE":**

Bradley L. Madrid

603.004

## ASSIGNMENT OF COMMON STOCK

This <u>Assignment of Common Stock</u> (the "Assignment") is made as of $February\ 27^{th}, 2015$ (the Effective Date), by and between Sheryl Symonette (the "Assignor"), and Bradley L. Madrid (the "Assignee").

### RECITALS

WHEREAS, Assignor owns one thousand (1,000) shares of common stock (the "Shares") in Healthy Pharmacy Solutions, Inc., a Texas corporation (the "Corporation"); and

WHEREAS, the Assignor desires to assign to the Assignee all of the Shares, and the Assignee desires by this Assignment to accept the same.

NOW, THEREFORE, FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00) and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by each party, and the above recitals which are incorporated herein by reference, the parties agree as follows:

### ASSIGNMENT

As of the Effective Date, Assignor conveys, transfers, and assigns to Assignee and the Assignee accepts from the Assignor the Shares. Assignor represents and warrants that the Shares represent all of Assignor's interest in the Corporation, and upon execution and delivery of this Assignment, Assignor shall have no further continuing ownership interest in said entity. Assignor further represents and warrants that (a) she is the owner of the Shares, free and clear of all liens, charges, pledges, encumbrances, security interests or rights of third parties; (b) she has full power and authority to enter into this Assignment and to sell and convey the Shares upon the terms provided in this Assignment to the Assignee, (c) there are no outstanding option rights, rights of first refusal or other arrangements relating to the Shares, and Assignor has not sold, granted, transferred or otherwise assigned to any person, entity or any party any right, title or interest in the Shares; (d) this Assignment constitutes the valid, binding and enforceable obligation of Assignor; (e) the execution and delivery by Assignor of this Assignment and the performance of her respective obligations hereunder do not violate, conflict with, invalidate, cancel, or interfere with, or constitute a default under any contract, agreement or court order to which Assignor is a party or is bound; (f) Assignor has not incurred any debt or liability on behalf of the Corporation, nor entered into any contract or agreement that would bind Corporation after the Effective Date, except as previously disclosed to the Assignee; and (g) Assignor is not aware of any pending or threatened claims or suits by any person or entity against the Corporation, except as previously disclosed to the Assignee.

     IN WITNESS WHEREOF, each party hereto has executed and sealed this Assignment or caused it to be executed and sealed on its behalf by its duly authorized representatives, the day and year first above written.

**"ASSIGNOR":**

Sheryl Symonette

**"ASSIGNEE":**

Bradley L. Madrid

Healthy Pharmacy Solutions
Settlement Statement

**Closing Date**                                2/27/2015


**Purchase Price**                              $        150,000.00

**Accrued Expenses to be Paid by Purchaser**
Chase Credit Card                               $         10,035.37
HD Smith                                        $         12,259.02
ANDA                                            $          4,750.75
IPC                                             $          4,620.04
Freedom                                         $          2,493.97
Davis Holdings                                  $         38,892.46
Charles Barnes - 2012 Federal Tax Return        $          3,300.00
Jambrino - ($ 2250 for 2013 and $ 1800 for 2014) $         4,050.00

Subtotal                                        $         80,401.61

**Escrow Balance**                              $         20,000.00

**Total Funds Available for Distribution at Closing** $    49,598.39

Sheryl Symonette                                $         24,799.20
Mary Bell                                       $         24,799.20



Sellers

Sheryl Symonetter:

Mary Bell:

Buyer

Brad Madrid

## ESCROW AGREEMENT

This **ESCROW AGREEMENT** ("Agreement") is made and entered into by and between **Mary McKinney** ("Seller"), **Bradley L. Madrid** ("Purchaser"), and **Jeb Brown** ("Escrow Agent").

## RECITALS:

A.       Seller and Purchaser entered into that certain Purchase and Sale Agreement dated February 27, 2015 (the "Acquisition Contract") for the sale and purchase of one thousand (1,000) shares of common stock in Healthy Pharmacy Solutions, Inc., a Texas corporation.

B.       Section 14 of the Acquisition Contract provides that at the closing thereunder, the sum of Ten Thousand Dollars ($10,000.00) would be deducted from the purchase price at closing, and placed in escrow with Escrow Agent to provide a fund to pay for certain potential claims and liabilities as more particularly described therein. .

C.       Seller and Purchaser have requested that Escrow Agent act as the escrow agent hereunder, and hold the $10,000.00 pursuant to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1.       Deposit of Escrow Funds**. At the closing of the sale of the Property, Seller and Purchaser shall deliver to Escrow Agent the sum of Ten Thousand and no/100 Dollars ($10,000.00), which is herein referred to as the "Escrow Funds". The Escrow Agent by its execution hereof acknowledges receipt of the Escrow Funds and agrees to hold, deposit and distribute the Escrow Funds pursuant to the terms of this Agreement.

**2.       Escrow Agent Establishes Account**. The Escrow Agent shall deposit the Escrow Funds into its IOLTA trust account (the "Escrow Account"). Seller and Purchaser each acknowledge that they shall not be entitled to any interest earned on the funds held by Escrow Agent hereunder. The Escrow Funds shall be used to pay the cost of (i) Seller's indemnification obligations under Section 12 of the Acquisition Contract; (ii) the payment of any claims, obligations, debts, or liabilities that arose or accrued prior to the Closing Date and were not disclosed or otherwise accounted for by Seller and Purchaser; and (iii) payment of any Post-Closing Adjustments (as such term is defined in Section 8(e) of the Acquisition Contract). Withdrawals from the Escrow Account shall be made only pursuant to the terms and provisions of this Agreement.

**3.       Disbursement Procedure**. In the event that Purchaser makes a claim based on any of the matters for which the Escrow Funds were established under the Acquisition Contract, including those described in Section 2 hereof, Purchaser shall give written notice thereof to Seller and Escrow Agent specifying the amount of the claim, the person or entity to whom such funds are owed, and otherwise describing the matters covered by the request (the "Disbursement Request"). Seller shall have a period of five (5) business days following its receipt of the Disbursement Request in which to either approve or object to the Disbursement Request. Any such approval or objection by Seller must be in writing and must be delivered to Purchaser and Escrow Agent within such five (5) business day period. If Seller fails to give notice of its approval or objection, then such failure shall be deemed approval of the Disbursement Request. Upon approval, whether received by Seller or deemed received by Seller, then Escrow Agent shall disburse to Purchaser the amount of the Escrow Funds described in the Disbursement Request.

**4.       Dispute; Interplead**. In the event of any disagreement or controversy between the parties hereto, or if conflicting demands or notices are made upon Escrow Agent arising out of or relating to this

Escrow Agreement – HPS– McKinney

1

Escrow Agreement, then Escrow Agent may refrain from acting in any manner until it receives written agreement from all parties hereto, or Escrow Agent may file a suit in interpleader in a court of appropriate jurisdiction, and the act of such interpleader shall immediately relieve Escrow Agent of its duties, liabilities and responsibilities hereunder.

5. **Escrow Agent Depositary Only; Not Liable**. Escrow Agent acts hereunder as a depositary only and is not responsible or liable in any manner whatever for the sufficiency, correctness, genuineness or validity of any instrument deposited with it hereunder, or with respect to the form or execution of the same, or the identity, authority, or rights of any person executing or depositing the same. Escrow Agent shall be protected in acting upon any notice, request, waiver, consent, receipt or other paper or document believed by Escrow Agent to be genuine or to be signed by the proper party or parties. Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for anything which it may do or refrain from doing in connection herewith, except its own willful misconduct or gross negligence, and Escrow Agent shall have no duties to anyone except those signing these instructions.

6. **Entire Agreement; Exhibits**. This Escrow Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof. This Escrow Agreement can be amended only by written agreement signed by the parties hereto, and by reference made a part hereof. All exhibits or other documents attached to or referred to in this Agreement are incorporated by reference. Notwithstanding the preceding sentence, Escrow Agent is not a party to or bound by any other agreement which may be deposited under, evidenced by, which arises out of, or which may be an exhibit to, this Agreement.

7. **Indemnity. The parties jointly and severally agree to indemnify Escrow Agent, its partners, employees, agents and counsel (each herein called an "Indemnified Party") against, and hold each Indemnified Party harmless from, any and all losses, costs, damages, expenses, claims and attorney's fees, including but not limited to costs of investigation, suffered or incurred by any Indemnified Party in connection with or arising from or out of this Agreement, except such acts or omissions as may result from the willful misconduct or gross negligence of such Indemnified Party.**

8. **Notices**. All notices and other communications ("Notices") required or provided for herein shall be in writing and shall be deemed received: (i) one (1) business day after the same are sent by nationally-recognized overnight courier (e.g. FedEx); (ii) two (2) business days after being sent by certified U.S. mail, return receipt requested; (iii) or upon receipt if sent by telecopy, provided receipt occurs between 8:00 a.m. and 5:00 p.m. on a day other than a holiday or weekend, otherwise such notice by telecopy shall be effective on the next business day. Notices given in any other manner shall be effective only as and when actually received by the Party for whom such notices are intended. Notices shall be addressed as follows:

To Seller:　　　　Mary McKinney  
　　　　　　　　19007 CAnyon Valley Ct  
　　　　　　　　Tomball TX 77377  
　　　　　　　　mikeda tigr@gmail.com  
　　　　　　　　Telecopy No.: _____

To Purchaser:　　Bradley L. Madrid  
　　　　　　　　4916 Main Street #100  
　　　　　　　　Houston, TX 77002  
　　　　　　　　Telecopy No.: Brad@pharmsmgmt.com  
　　　　　　　　Phone: 925-285-0659

2

Escrow Agreement – HPS– McKinney

Notices to Escrow Agent shall be addressed as follows:

Jeb Brown
Attorney at Law
3100 Edloe Street, Suite 220
Houston, TX 77027
Telephone 713-439-1988
Telecopy 832-460-3263

If any date or any period of time provided in this Agreement ends on a Saturday, Sunday or legal holiday, the applicable period shall be extended to the first business day following such Saturday, Sunday, or legal holiday. Any party hereto may change its designated address for notice by giving the other parties hereto not less than ten (10) days' written notice of such change.

**9.** **Consultation with Legal Counsel.** Escrow Agent may consult with its counsel or other counsel satisfactory to it concerning any question relating to its duties or responsibilities hereunder or otherwise in connection herewith and shall not be liable for any action taken, suffered or omitted by Escrow Agent in good faith upon the advice of such counsel. Escrow Agent may act through its officers, employees, agents and attorneys.

**10.** **Compensation and Reimbursement of Expenses.** Escrow Agent will not be entitled to receive any fee for Escrow Agent's services hereunder.

**11.** **Resignation.** Escrow Agent may resign upon ten (10) days' prior written notice to Seller and Purchaser and, upon joint instructions of Seller and Purchaser, shall deliver the Escrowed Funds to any designated substitute Escrow Agent mutually selected by Seller and Purchaser. If Seller and Purchaser fail mutually to designate a substitute Escrow Agent within ten (10) days after the giving of such notice, Escrow Agent may, in its sole discretion and its sole option, institute a bill of interpleader as contemplated herein.

**12.** **Severability.** If one or more of the provisions hereof shall for any reason be held to be invalid, illegal or unenforceable in any respect under applicable law, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

**13.** **Termination.** This Agreement shall terminate on the earlier of: (i) the full disbursement of the Escrow Funds; or (ii) the date which is six (6) months following the date hereof. Upon termination, the remaining Escrow Funds (if any) shall be returned to Seller.

**14.** **General.** The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The terms and provisions of this Agreement constitute the entire agreement between the parties hereto. This Agreement shall inure to the benefit of and be binding upon the parties hereto, and their respective heirs, devisees, executors, administrators, personal representatives, successors, trustees, receivers and assigns. Nothing in this Agreement, express or implied, is intended to confer upon any other person rights or remedies under or by reason of this Agreement.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment effective as of __2/27__, 2015.

"SELLER":

Mary McKinney

"PURCHASER":

Bradley L. Madrid

"ESCROW AGENT:"

_____

JEB BROWN

4

## ESCROW AGREEMENT

This **ESCROW AGREEMENT** ("Agreement") is made and entered into by and between **Sheryl Symonette** ("Seller"), **Bradley L. Madrid** ("Purchaser"), and **Jeb Brown** ("Escrow Agent").

## R E C I T A L S:

A.       Seller and Purchaser entered into that certain Purchase and Sale Agreement dated *February 27*_____, 2015 (the "Acquisition Contract") for the sale and purchase of one thousand (1,000) shares of common stock in Healthy Pharmacy Solutions, Inc., a Texas corporation.

B.       Section 14 of the Acquisition Contract provides that at the closing thereunder, the sum of Ten Thousand Dollars ($10,000.00) would be deducted from the purchase price at closing, and placed in escrow with Escrow Agent to provide a fund to pay for certain potential claims and liabilities as more particularly described therein.

C.       Seller and Purchaser have requested that Escrow Agent act as the escrow agent hereunder, and hold the $10,000.00 pursuant to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1.       Deposit of Escrow Funds**. At the closing of the sale of the Property, Seller and Purchaser shall deliver to Escrow Agent the sum of Ten Thousand and no/100 Dollars ($10,000.00), which is herein referred to as the "Escrow Funds". The Escrow Agent by its execution hereof acknowledges receipt of the Escrow Funds and agrees to hold, deposit and distribute the Escrow Funds pursuant to the terms of this Agreement.

**2.       Escrow Agent Establishes Account**. The Escrow Agent shall deposit the Escrow Funds into its IOLTA trust account (the "Escrow Account"). Seller and Purchaser each acknowledge that they shall not be entitled to any interest earned on the funds held by Escrow Agent hereunder. The Escrow Funds shall be used to pay the cost of (i) Seller's indemnification obligations under Section 12 of the Acquisition Contract; (ii) the payment of any claims, obligations, debts, or liabilities that arose or accrued prior to the Closing Date and were not disclosed or otherwise accounted for by Seller and Purchaser; and (iii) payment of any Post-Closing Adjustments (as such term is defined in Section 8(e) of the Acquisition Contract). Withdrawals from the Escrow Account shall be made only pursuant to the terms and provisions of this Agreement.

**3.       Disbursement Procedure**. In the event that Purchaser makes a claim based on any of the matters for which the Escrow Funds were established under the Acquisition Contract, including those described in Section 2 hereof, Purchaser shall give written notice thereof to Seller and Escrow Agent specifying the amount of the claim, the person or entity to whom such funds are owed, and otherwise describing the matters covered by the request (the "Disbursement Request"). Seller shall have a period of five (5) business days following its receipt of the Disbursement Request in which to either approve or object to the Disbursement Request. Any such approval or objection by Seller must be in writing and must be delivered to Purchaser and Escrow Agent within such five (5) business day period. If Seller fails to give notice of its approval or objection, then such failure shall be deemed approval of the Disbursement Request. Upon approval, whether received by Seller or deemed received by Seller, then Escrow Agent shall disburse to Purchaser the amount of the Escrow Funds described in the Disbursement Request.

**4.       Dispute; Interplead**. In the event of any disagreement or controversy between the parties hereto, or if conflicting demands or notices are made upon Escrow Agent arising out of or relating to this

1

Escrow Agreement – HPS– Symonette

Escrow Agreement, then Escrow Agent may refrain from acting in any manner until it receives written agreement from all parties hereto, or Escrow Agent may file a suit in interpleader in a court of appropriate jurisdiction, and the act of such interpleader shall immediately relieve Escrow Agent of its duties, liabilities and responsibilities hereunder.

      **5.**    **Escrow Agent Depositary Only; Not Liable**.  Escrow Agent acts hereunder as a depositary only and is not responsible or liable in any manner whatever for the sufficiency, correctness, genuineness or validity of any instrument deposited with it hereunder, or with respect to the form or execution of the same, or the identity, authority, or rights of any person executing or depositing the same. Escrow Agent shall be protected in acting upon any notice, request, waiver, consent, receipt or other paper or document believed by Escrow Agent to be genuine or to be signed by the proper party or parties. Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for anything which it may do or refrain from doing in connection herewith, except its own willful misconduct or gross negligence, and Escrow Agent shall have no duties to anyone except those signing these instructions.

      **6.**    **Entire Agreement; Exhibits**.  This Escrow Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof.  This Escrow Agreement can be amended only by written agreement signed by the parties hereto, and by reference made a part hereof. All exhibits or other documents attached to or referred to in this Agreement are incorporated by reference. Notwithstanding the preceding sentence, Escrow Agent is not a party to or bound by any other agreement which may be deposited under, evidenced by, which arises out of, or which may be an exhibit to, this Agreement.

      **7.**    **Indemnity.  The parties jointly and severally agree to indemnify Escrow Agent, its partners, employees, agents and counsel (each herein called an "Indemnified Party") against, and hold each Indemnified Party harmless from, any and all losses, costs, damages, expenses, claims and attorney's fees, including but not limited to costs of investigation, suffered or incurred by any Indemnified Party in connection with or arising from or out of this Agreement, except such acts or omissions as may result from the willful misconduct or gross negligence of such Indemnified Party.**

      **8.**    **Notices.**  All notices and other communications ("Notices") required or provided for herein shall be in writing and shall be deemed received: (i) one (1) business day after the same are sent by nationally-recognized overnight courier (e.g. FedEx); (ii) two (2) business days after being sent by certified U.S. mail, return receipt requested; (iii) or upon receipt if sent by telecopy, provided receipt occurs between 8:00 a.m. and 5:00 p.m. on a day other than a holiday or weekend, otherwise such notice by telecopy shall be effective on the next business day.  Notices given in any other manner shall be effective only as and when actually received by the Party for whom such notices are intended.  Notices shall be addressed as follows:

To Seller:          Sheryl A. Symonette
                    4103 Sablemist Ct.
                    Houston TX 77014-2032
                    Telecopy No.: _____

To Purchaser:      Bradley L. Madrid
                    4916 Main Street #100
                    Houston, TX 77002
                    Telecopy No.: _____

Notices to Escrow Agent shall be addressed as follows:

Jeb Brown
Attorney at Law
3100 Edloe Street, Suite 220
Houston, TX 77027
Telephone 713-439-1988
Telecopy 832-460-3263

If any date or any period of time provided in this Agreement ends on a Saturday, Sunday or legal holiday, the applicable period shall be extended to the first business day following such Saturday, Sunday, or legal holiday. Any party hereto may change its designated address for notice by giving the other parties hereto not less than ten (10) days' written notice of such change.

9. **Consultation with Legal Counsel**. Escrow Agent may consult with its counsel or other counsel satisfactory to it concerning any question relating to its duties or responsibilities hereunder or otherwise in connection herewith and shall not be liable for any action taken, suffered or omitted by Escrow Agent in good faith upon the advice of such counsel. Escrow Agent may act through its officers, employees, agents and attorneys.

10. **Compensation and Reimbursement of Expenses**. Escrow Agent will not be entitled to receive any fee for Escrow Agent's services hereunder.

11. **Resignation**. Escrow Agent may resign upon ten (10) days' prior written notice to Seller and Purchaser and, upon joint instructions of Seller and Purchaser, shall deliver the Escrowed Funds to any designated substitute Escrow Agent mutually selected by Seller and Purchaser. If Seller and Purchaser fail mutually to designate a substitute Escrow Agent within ten (10) days after the giving of such notice, Escrow Agent may, in its sole discretion and its sole option, institute a bill of interpleader as contemplated herein.

12. **Severability**. If one or more of the provisions hereof shall for any reason be held to be invalid, illegal or unenforceable in any respect under applicable law, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

13. **Termination**. This Agreement shall terminate on the earlier of: (i) the full disbursement of the Escrow Funds; or (ii) the date which is six (6) months following the date hereof. Upon termination, the remaining Escrow Funds (if any) shall be returned to Seller.

14. **General.** The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The terms and provisions of this Agreement constitute the entire agreement between the parties hereto. This Agreement shall inure to the benefit of and be binding upon the parties hereto, and their respective heirs, devisees, executors, administrators, personal representatives, successors, trustees, receivers and assigns. Nothing in this Agreement, express or implied, is intended to confer upon any other person rights or remedies under or by reason of this Agreement.

Escrow Agreement – HPS– Symonette

3

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment effective as of February 27, 2015.

"SELLER":

Sheryl Symonette

"PURCHASER":

Bradley L. Madrid

"ESCROW AGENT:"

JEB BROWN

Escrow Agreement – HPS– Symonette

4

James E Brown II
Iolta Account
3100 Edloe Street Suite 220
Houston TX 77027

105
35-2572/1130

Date 6-29-2015

Pay to the order of SHERYL SYMONETTE

$ 10,000.00

TEN THOUSAND + 00/100

Dollars

Allegiance Bank Texas

Houston TX 77040-5191
MEMO _____

SIGNED _____

⑈113025723⑈ 6798⑈ 0105

James E Brown II
Iolta Account
3100 Edloe Street Suite 220
Houston TX 77027

106
35-2572/1130

Date 6-29-2015

Pay to the order of MARY MCKINNEY

$ 10,000.00

TEN THOUSAND + 00/100

Dollars

Allegiance Bank Texas

Houston TX 77040-5191
MEMO _____

SIGNED _____

603.016

**WELLS FARGO BANK**                                          1005

MIDTOWN  2714 SMITH ST  HOUSTON, TX 77006

DATE  2/27/15                                                 37-65/1119

PAY TO THE ORDER OF  Healthy Pharmacy Solutions Inc.  $ 80,401.61

Eighty Thousand Four Hundred and One 61/100        DOLLARS

BRADLEY L MADRID
PO BOX 3402
DAYTON   TX 77535-0059

⑈1119006559⑈      8100⑈1005

---

**WELLS FARGO BANK**                                          1004

MIDTOWN  2714 SMITH ST  HOUSTON, TX 77006

DATE  2/27/15                                                 37-65/1119

PAY TO THE ORDER OF  JeB Brown Trust Account  $ 10,000.00

Ten Thousand ———                      00/100        DOLLARS

BRADLEY L MADRID
PO BOX 3402
DAYTON   TX 77535-0059

Escrow Sheryl Symonette

⑈1119006559⑈      8100⑈1004

---

**WELLS FARGO BANK**                                          1001

MIDTOWN  2714 SMITH ST  HOUSTON, TX 77006

DATE  2/27/15                                                 37-65/1119

PAY TO THE ORDER OF  Sheryl Symonette  $ 24,799.20

Twenty Four Thousand Seven Hundred Ninety Nine 20/100   DOLLARS

BRADLEY L MADRID
PO BOX 3402
DAYTON   TX 77535-0059

⑈1119006559⑈      8100⑈1001

---

**WELLS FARGO BANK**                                          1003

MIDTOWN  2714 SMITH ST  HOUSTON, TX 77006

DATE  2/27/15                                                 37-65/1119

PAY TO THE ORDER OF  JeB Brown Trust Account  $ 10,000.00

Ten Thousand  00/                      00/100        DOLLARS

BRADLEY L MADRID
PO BOX 3402
DAYTON   TX 77535-0059

Escrow  MARY Bell

⑈1119006559⑈      8100⑈1003

**WELLS FARGO BANK**

1002

MIDTOWN  2714 SMITH ST  HOUSTON, TX 77005

DATE  2/27/15

37-65/1119

PAY TO THE ORDER OF  Mary Bell McKinney                    $  24,799.20

Twenty Four Thousand  Seven Hundred Ninety Nine  20/100     DOLLARS

BRADLEY L MADRID
PO BOX 3402
DAYTON   TX 77535-0059

⑈111900659⑆ ▮▮▮▮ 8100⑈ 1002

603.018

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "Agreement") is entered into as of February **27** . 2015 (the "Effective Date") by and between Mary McKinney, an individual resident of Harris County, Texas, ("Seller"), and Bradley L. Madrid ("Purchaser").

### RECITALS

A.    Healthy Pharmacy Solutions, Inc., a Texas corporation (the "Company"), was formed pursuant to that certain Certificate of Formation filed with the Texas Secretary of State on April 27, 2012, and which was amended by that certain Certificate of Amendment filed with the Texas Secretary of State on July 24, 2012.

B.    Seller is the owner of one thousand (1,000) shares of common stock in the Company (the "Shares").

C.    Seller has agreed to sell and assign to Purchaser, and Purchaser has agreed to purchase from Seller the Shares and all of Seller's interest in the Company for the price and subject to the terms and conditions set forth in this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.    Sale of Interests. At Closing (as such term is defined below), Seller shall sell, transfer, convey and assign to the Purchaser, and the Purchaser (in reliance upon Seller's representations, warranties and covenants as herein set forth) shall purchase from Seller, at the price and upon the terms and conditions provided in this Agreement, all of the Shares, which shall be free and clear of all liens, restrictions, encumbrances or rights of third parties.

2.    Consent to Related Transactions. Seller acknowledges and understands that concurrently with this Agreement, Purchaser is acquiring from Sheryl Symonette ("Symonette") all of Symonette's interest in the Company (the "Related Transaction"). The execution and delivery of this Agreement by Seller shall constitute Seller's written consent to the Related Transaction, and Seller's waiver of any conditions in the Company's governing documents to the Related Transaction.

3.    Consideration. In consideration for Seller's conveyance, transfer and assignment of the Shares, at Closing, Purchaser shall pay Seller the sum of Twenty Four Thousand and no/100 Dollars (\$ 24,799 00) (the "Purchase Price"). Other than the cash consideration as described in this Section 3, Seller shall not receive any other consideration in exchange for the Shares.

*Seven Hundred Ninety Nine 00/100*

4.    Escrow Deposit. Within (2) two business days after the Effective Date of this Agreement, Purchaser shall deliver to Jeb Brown, as Escrow Agent, a cash deposit of Five Thousand and no/100 Dollars (\$5,000.00), which sum shall serve as the "Escrow Deposit" to be held and disbursed as herein provided. If this transaction closes, the Escrow Deposit shall be applied to the Purchase Price. In the event of any dispute between Seller and Purchaser concerning disbursement of the Escrow Deposit, the Escrow Agent shall be authorized to file an interpleader suit in a District Court in Harris County, Texas, and the disposition of such funds shall be determined in accordance with such proceeding, and the Escrow Agent shall be released of all further liability with respect to such Escrow Deposit.

5.    Rights of Inspection. Beginning on the Effective Date and extending until the later of: (i) ten (10) business days after the Effective Date: (ii) the date that Seller has filed the 2013 Federal Income

Tax Return incorporating the income, expenses, and deductions associated with the Company, and a copy of the same is provided to Purchaser (the "Inspection Period"). Purchaser shall have the right of investigation and inspection of the Company, its books and records, governing and formation documents, accounts payable and accounts receivable, assets and liabilities, tax returns, governmental permits and approvals, personnel records, documents relating to any suits, disputes, demands, or similar matters, contracts and agreements to which the Company is a party, and such other information, materials and data that Purchaser may reasonably request, in order to determine whether or not the purchase of the Shares is a suitable investment in Purchaser's sole, absolute and unlimited discretion. Seller shall make available such information and materials during normal business hours during the Inspection Period for the purpose of conducting such investigation and inspection as Purchaser, in its sole discretion, deems proper. Such investigation, inspection and access shall not unreasonably interfere with the Seller's business operations. Any information and documentation obtained by Purchaser pursuant to this paragraph shall be kept and maintained by Purchaser as confidential and shall not be disclosed to any third party (other than Purchaser's partners, attorneys, employees, agents and consultants who are assisting Purchaser in the transaction described herein) without the express consent of Seller. If this transaction is not consummated for any reason, Purchaser shall immediately return all such information and documentation to Seller.

6.    Termination. If Purchaser determines, in Purchaser's sole judgment and discretion, that the Shares or the Company is unacceptable to Purchaser or unsuitable to Purchaser for any reason, Purchaser shall give Seller and Escrow Agent written notice of such fact on or before the end of the Inspection Period, whereupon this Agreement shall terminate and neither Seller nor Purchaser shall have any further rights or obligations hereunder. In the event that Purchaser terminates this Agreement prior to the expiration of the Inspection Period due to:

(a)    Purchaser's determination, in its reasonable judgment, that the Company and/or its pharmacy operation is not in compliance with all applicable rules and regulations, including but not limited to, failure to maintain any approval, license or permit required for the operation of the Company and/or its pharmacy operation, or the Company and/or its pharmacy operation is the subject of pending litigation or claims;

(b)    Purchaser's determination that the Company is not party to a contract in good standing with any of the following pharmacy benefits management and/or pharmacy network providers: CVS Caremark, Express Scripts, Medco, PBA/TriNet, Prime Therapeutics, Catamaran, Humana, OptumRx and Cigna; or if a party to such a contract, the Company is in breach or default thereunder; or

(c)    Seller's failure or refusal to promptly provide Purchaser with access to all the documentation related to the Company and its pharmacy operation which may be reasonably requested by Purchaser under Section 7.

Upon receipt by the Escrow Agent of written notice from Purchaser of termination under Section 6 for one of the reasons set forth in subsections a, b or c above, or as a result of a breach or default hereunder by Seller, then Escrow Agent shall release the Escrow Deposit to Purchaser. If Purchaser terminates for any reason other than as set forth in the foregoing sentence, then the Escrow Deposit shall be paid to Seller.

7.    Business in the Ordinary Course. From and after the date of this Agreement and until the Closing, Seller shall carry on its business and the business of the Company prudently and in the ordinary course consistent with past practices. Seller may continue to sell its inventory to its customers, in accordance with past practices and applicable regulations.

8.    Closing; Closing Documents. The consummation of the transaction described herein (the "Closing") shall take place at the offices of Purchaser, 4916 Main Street #100, Houston, Texas, 77002, at 10:00 o'clock a.m. local time on the date that is ten (10) days after the expiration of the Inspection Period (the "Closing Date"). The following shall occur at the Closing:

a.    The Shares, and all right, title and interest therein, shall be conveyed and assigned by Seller to Purchaser pursuant to an assignment document in a form as reasonably approved by Purchaser.

b.    Seller shall deliver its certificate representing ownership of the Shares to the Purchaser, so that the Company may cancel the Seller's ownership of the Shares on its books and records.

c.    Purchaser shall deliver the Purchase Price to Seller, adjusted as provided for herein.

d.    Seller shall deliver to Purchaser, or its designee (i) original versions of all entity formation and governing documents; (ii) all operating statements, balance sheets, bank ledgers, and financial records of the Company, in any form; and (iii) all files, documents, titles, certificates, permits, and governmental approvals which relate to the Company's business or any assets of the Company.

e.    At least one (1) business day before Closing, Purchaser and Seller shall agree upon a "Closing Settlement Statement" that shall include adjustments to the purchase price, which are known as of the Closing Date, as follows (the following adjustments shall apply only to the extent they are attributable to the Company):

(1)    All ad valorem, personal property, and other taxes and assessments owed by the Company with respect to the tax period in which the Closing Date occurs shall be apportioned as of the Closing Date between the Seller and the Purchaser.

(2)    A proportionate decrease in the purchase price in the aggregate amount of all unpaid debts, liabilities, and accounts payable of the Company existing as of the Closing Date;

(3)    A proportionate increase in the purchase price in the amount of any accounts receivable and other income not collected or received by the Company, but otherwise due and payable to the Company attributable to periods of time prior to the Closing Date (subject to adjustment as set forth below); and

(4)    Any other adjustments agreed to by Purchaser and Seller.

9.    Post-Closing Reconciliation. No later than forty-five (45) days following the Closing Date, the Seller and Purchaser shall make a post-Closing settlement of all amounts set forth on the Closing Settlement Statement and those amounts described in Section 8(e) hereof. Seller and Purchaser shall adjust the amount due to or from Seller or Purchaser based on the following: (i) any amount omitted from the Closing Settlement Statement that should have been reflected in the Closing Settlement Statement; (ii) any amount set forth on the Closing Settlement Statement which is found to be in error; (iii) any estimates upon which the line items in the Closing Settlement Statement were based are found to be incorrect; (iv) the actual amounts of any estimates are then known or determinable; (v) any pre-Closing Date accounts receivable credited to Seller in accordance with Section 8(e) in anticipation of collection are not received by the Company within said forty-five (45) day period; and (vi) such other adjustments as Seller and Purchaser may agree (the foregoing being referred to as the "Post-Closing Adjustments").

10.    Contracts and Agreements. Prior to the expiration of the Inspection Period, Seller and Purchaser shall agree on a list of all contracts, agreements and commitments that Seller has either entered into or made, either individually (but which nonetheless may constitute binding legal obligations of the Company for whatever reason) or on behalf of the Company, with third parties. At Closing, Seller and Purchaser shall enter into an amendment to this Agreement whereby such list of contracts and agreements is attached hereto and incorporated herein as Exhibit "A". Seller represents and warrants to Purchaser as of the Closing Date that (i) there are no other contracts, agreements or commitments, oral or written, in existence which Seller has entered into either individually (but which nonetheless may constitute legally binding obligations of the Company for whatever reason), or on behalf of the Company, which are not listed

February 25, 2015

603.021

in Exhibit "A"; and (ii) Seller has provided the Purchaser with full and complete copies of such contracts and agreements, together with all amendments and modifications thereto.

11.    Accounts Payable and Accounts Receivable. Prior to the expiration of the Inspection Period, Seller and Purchaser shall agree on a list of all accounts payable and receivable for the Company, including a statement of all taxes, fees, fines, assessments, or other sums owed to any governmental authority as of the Closing Date. At Closing, Seller and Purchaser shall enter into an amendment to this Agreement whereby such list of accounts payable and receivable is attached hereto and incorporated herein as Exhibit "B". As of the Closing Date, Seller represents and warrants to Purchaser that there are no other debts, liabilities, or accounts receivable or payable that relate to the Company which are not listed in Exhibit "B". The Company reserves the right to contest or dispute the validity or any other matter under any such contracts and agreements, as well as any charges, costs, fees, or other items included in Exhibit "A" or Exhibit "B", with the vendor or other party to said agreement.

12.    Indemnity. **Seller agrees to indemnify, defend, and hold the Purchaser and the Company harmless from and against any and all losses, claims, damages, costs, fines, penalties and expenses of every nature (including, without limitation, court costs and attorneys' fees) incurred by the Purchaser or the Company arising out of (i) any contracts, agreements, obligations, liabilities, or commitments which Seller incurred, executed or entered into, either individually (but which nonetheless constitute legally binding obligations of the Company), or on behalf of the Company, which are not listed in Exhibit "A"; (ii) any liability of the Company to any governmental authority for any taxes, fees, fines, assessments, or other unpaid sums arising prior to the Closing Date, (iii) any accounts payable or other debts of the Company, which were initiated, undertaken, assumed or otherwise created by Seller on behalf of, or for the Company, which are not listed in Exhibit "B"; (iv) a breach of this Agreement by Seller; or (v) the breach or inaccuracy of any warranties or representations made by Seller hereunder.**

13.    Representations and Warranties.

13.1.    Seller's Representations and Warranties. Seller warrants and represents to the Purchaser as of the Closing Date, as follows:

13.1.1. Seller has the full power and authority to enter into this Agreement and perform his respective obligations hereunder.

13.1.2. Seller represents and warrants that (a) it is the sole and exclusive owner of the Shares, free and clear of all liens, charges, pledges, encumbrances, security interests or rights of third parties; (b) it has full power and authority to enter into this Agreement and to sell and convey the Shares upon the terms provided in this Agreement to the Purchaser, (c) there are no outstanding option rights, rights of first refusal or other arrangements relating to the Shares, and Seller has not sold, granted, transferred or otherwise assigned to any person, entity or any party any right, title or interest in or to the Shares; (d) Seller and Sheryl Symonette are the owners of one hundred percent (100%) of the common stock of the Company, and there are no other shareholders; (e) this Agreement constitutes the valid, binding and enforceable obligation of Seller; and (f) the execution and delivery by Seller of this Agreement and the performance of its respective obligations hereunder do not violate, conflict with, invalidate, cancel, or interfere with, or constitute a default under any contract, agreement or court order to which Seller is a party or is bound.

13.1.3. No representation or warranty by Seller in this Agreement, or information contained in any statement or certificate furnished by Seller or required to be furnished to any other party pursuant to this Agreement contains or will contain any untrue statement of a material fact, or omits or will omit to state a material fact required to be stated therein or necessary in order to make the statements contained therein not materially untrue.

13.1.4  All bills and other payments then due and owing from the Company with respect to its business, operations, or assets will be paid or satisfied prior to or at Closing.

13.1.5  There is no action, proceeding, suit or investigation pending or being prosecuted to which Seller or the Company is a party in any court or by or before any governmental entity affecting the Company, or the ownership, operation, use or condition of any assets of the Company. To Seller's knowledge, no action, suit, proceeding or investigation is contemplated or threatened.

13.1.6  Neither Seller nor the Company has (i) made a general assignment for the benefit of creditors, (ii) filed any voluntary petition in bankruptcy or suffered the filing of an involuntary petition by their creditors, (iii) suffered the appointment of a receiver to take possession of all or substantially all of their assets, (iv) suffered the attachment or other judicial seizure of all, or substantially all, of their assets, (v) admitted in writing its inability to pay its debts as they come due, or (vi) made an offer of settlement, extension or composition to its creditors generally.

13.1.7  Neither Seller nor the Company has received any written notice from, and is otherwise aware of no grounds for, any governmental agency requiring the correction of any condition with respect to the Company, its business or any of its assets, by reason of a violation of any applicable federal, state, county or municipal law, code, rule or regulation, which has not been cured or waived, and neither Seller nor the Company have received any written notice of an intention to revoke any governmental approval, certificate, plan, license, or permit issued in connection with the business of the Company or its assets.

13.2.  Purchaser Representations and Warranties. The Purchaser represents and warrants to Seller as follows:

13.2.1.  The Purchaser has full power and authority to enter into this Agreement and to perform all of its obligations hereunder and by proper action has duly authorized the execution and delivery of this Agreement and the performance of its obligations hereunder.

13.2.2.  The execution and delivery by the Purchaser of this Agreement and the performance of its obligations hereunder do not violate, conflict with, invalidate, cancel or interfere with, or constitute a default under any contract or other written agreement of the Purchaser, or any permit, regulation, order, law or rule applicable to the Purchaser.

13.2.3.  The Purchaser is acquiring the Shares without notice of any adverse claim to such interests.

13.3.4  In making the decision to enter into this Agreement and to consummate the transactions contemplated hereby, the Purchaser has relied on the representations, warranties, covenants and agreements of Seller as set forth herein, and no other representations, warranties, covenants and agreements.

14.    Holdback and Escrow. At Closing, Seller, Purchaser and a mutually-agreed escrow agent ("Escrow Agent") (defined below) shall enter into an escrow agreement (the "Escrow Agreement"), whereby the sum of Ten Thousand Dollars ($10,000.00) out of the funds due to Seller hereunder (the "Holdback") shall be held by the Escrow Agent. The Holdback shall serve as an escrow fund for payment and satisfaction of (i) the Seller's indemnification obligations under Section 12 hereof; (ii) the payment of any claims, obligations, debts, or liabilities that arose or accrued prior to the Closing Date and were not disclosed or otherwise accounted for by Seller and Purchaser; and (iii) payment of any Post-Closing Adjustments; and shall be held and applied in accordance with the terms of the Escrow Agreement. If on the date that is six (6) months after the Closing Date, no claims have been timely made by the Purchaser under the Escrow Agreement, all funds remaining in the Holdback shall be delivered by the Escrow Agent to the Seller.

February 26, 2015

15.     Survival. The representations, warranties, covenants and all other provisions contained in this Agreement shall survive for a period of four (4) years after the date hereof.

16.     Commissions. The parties hereto mutually represent and warrant that they have not dealt with any agent, broker or finder in connection with this Agreement or the purchase and sale hereunder, and each agrees to defend, indemnify and hold the other party harmless from any breach of the parties' respective representations and warranties made pursuant to this Section 16.

17.     Notices. All notices, requests, or other communications given under this Contract shall be deemed sufficiently given if in writing and delivered personally, by telecopy, or by recognized overnight delivery service, and shall be effective (i) on the date delivered by hand delivery or telecopy (provided such telecopy is received by the recipient's telecopy machine on a weekday before 5:00 p.m., Houston, Texas time, and a copy is sent by another permitted method of delivery, or (ii) one (1) day following the date sent by recognized overnight delivery service. For purposes of notice, the addresses of the parties shall be as follows:

To Seller:          Mary McKinney
                    _____
                    _____
                    Telecopy No.: _____

To Purchaser:       Bradley L. Madrid
                    4916 Main Street #100
                    Houston, TX  77002
                    Telecopy No.: _____

Any party may change its notice address by written notice to all other parties given in accordance with this Section.

18.     Miscellaneous.

18.1.     This Agreement is made under and shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to its conflict of laws provisions.

18.2.     Neither this Agreement nor any provision hereof may be modified, waived, amended, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of the modification, waiver, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

18.3.     The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

18.4.     This Agreement, along with the other documents and agreements to be executed which are attached as exhibits hereto, contains the full and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein written, and this Agreement supersedes all other agreements concerning the subject matter.

18.5.     This Agreement may not be assigned by any party hereto without the prior written consent of all other parties, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, Purchaser may assign this Agreement to an entity owned by, controlled by or under common control or ownership of Purchaser.

18.6.    Time shall be of the essence with respect to all of the obligations of the parties hereunder.

18.7.    This Agreement shall not be recorded or filed and any attempted recordation or filing shall be void and shall constitute a default by the party attempting such recording or filing.

18.8.    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and permitted assigns.

18.9.    This Agreement may be executed in one or more counterparts.

18.10.    After the Closing, each of the parties hereto will from time to time, at the request of any other party and without further cost or expense to the requesting party, and in each case within ten (10) days of delivery of the requesting party's request, execute, acknowledge, deliver and perform such other instruments of conveyance and transfer, and take such other actions as the requesting party may reasonably request, to implement the transactions contemplated hereby and to vest in the Purchaser exclusive legal title and possession and control of the Seller Membership Interest, and the requesting party shall deliver to the Purchaser all original copies of all related documents relating to the Seller Membership Interest being acquired. If any party shall violate or breach this provision in any manner, then the party in breach or violation shall be conclusively deemed to have materially breached this Agreement.

18.11.    This Agreement, as well the other documents and agreements executed in connection with this Agreement, have been negotiated by the parties hereto and their respective legal counsel, and legal or equitable principles that might require the construction of this Agreement, or the other documents and agreements executed in connection herewith, or any provisions thereof for or against the party drafting this Agreement (or the other documents and agreements executed in connection herewith) will not apply in any construction or interpretation of this Agreement (or the other documents and agreements executed in connection herewith).

18.12.    If any term or provision of this Agreement is found to be invalid or illegal or incapable of being enforced by any rule of law or public policy, all other provisions and conditions of this Agreement shall nevertheless be legally binding and shall remain in full force and effect. Upon the determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto agree that such provision shall be amended so as to be legal and enforceable and as nearly as possible to give effect to the intentions of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

"SELLER":

Mary McKinney

"PURCHASER":

Bradley L. Madrid

**EXHIBIT "A"**

**Contracts, Agreements, Commitments**

[to be added prior to expiration of Inspection Period]

Purchase and Sale Agreement – Mary McKinney          - 9 -

February 25, 2015

## EXHIBIT "B"

Accounts Payable; Liabilities

[to be added prior to expiration of Inspection Period]

.

Purchase and Sale Agreement – Mary McKinney          - 10 -                    February 25, 2015

## PURCHASE AND SALE AGREEMENT

This <u>Purchase and Sale Agreement</u> (this "Agreement") is entered into as of February **27ᵀᴴ**, 2015 (the "<u>Effective Date</u>") by and between Sheryl A. Symonette, an individual resident of Harris County, Texas, ("Seller"), and Bradley L. Madrid ("Purchaser").

### RECITALS

A.      Healthy Pharmacy Solutions, Inc., a Texas corporation (the "Company"), was formed pursuant to that certain Certificate of Formation filed with the Texas Secretary of State on April 27, 2012, and which was amended by that certain Certificate of Amendment filed with the Texas Secretary of State on July 24, 2012.

B.      Seller is the owner of one thousand (1,000) shares of common stock in the Company (the "Shares").

C.      Seller has agreed to sell and assign to Purchaser, and Purchaser has agreed to purchase from Seller the Shares and all of Seller's interest in the Company for the price and subject to the terms and conditions set forth in this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.      Sale of Interests. At Closing (as such term is defined below), Seller shall sell, transfer, convey and assign to the Purchaser, and the Purchaser (in reliance upon Seller's representations, warranties and covenants as herein set forth) shall purchase from Seller, at the price and upon the terms and conditions provided in this Agreement, all of the Shares, which shall be free and clear of all liens, restrictions, encumbrances or rights of third parties.

2.      Consent to Related Transactions. Seller acknowledges and understands that concurrently with this Agreement, Purchaser is acquiring from Mary McKinney ("McKinney") all of McKinney's interest in the Company (the "Related Transaction"). The execution and delivery of this Agreement by Seller shall constitute Seller's written consent to the Related Transaction, and Seller's waiver of any conditions in the Company's governing documents to the Related Transaction.

3.      Consideration. In consideration for Seller's conveyance, transfer and assignment of the Shares, at Closing, Purchaser shall pay Seller the sum of _Twenty - four_ _Thousand Seven Hundred ninety-nine and 20/100_ and no/100 Dollars ($_24,799.20_) (the "Purchase Price"). Other than the cash consideration as described in this Section 3, Seller shall not receive any other consideration in exchange for the Shares.

4.      Escrow Deposit. Within (2) two business days after the Effective Date of this Agreement, Purchaser shall deliver to Jeb Brown as Escrow Agent, a cash deposit of Five Thousand and no/100 Dollars ($5,000.00), which sum shall serve as the "Escrow Deposit" to be held and disbursed as herein provided. If this transaction closes, the Escrow Deposit shall be applied to the Purchase Price. In the event of any dispute between Seller and Purchaser concerning disbursement of the Escrow Deposit, the Escrow Agent shall be authorized to file an interpleader suit in a District Court in Harris County, Texas, and the disposition of such funds shall be determined in accordance with such proceeding, and the Escrow Agent shall be released of all further liability with respect to such Escrow Deposit.

5.      Rights of Inspection. Beginning on the Effective Date and extending until the later of: (i) ten (10) business days after the Effective Date; (ii) the date that Seller has filed the 2013 Federal Income

Purchase and Sale Agreement - Sheryl Symonette          - 1 -                                        February 25, 2015

Tax Return incorporating the income, expenses, and deductions associated with the Company, and a copy of the same is provided to Purchaser (the "Inspection Period"), Purchaser shall have the right of investigation and inspection of the Company, its books and records, governing and formation documents, accounts payable and accounts receivable, assets and liabilities, tax returns, governmental permits and approvals, personnel records, documents relating to any suits, disputes, demands, or similar matters, contracts and agreements to which the Company is a party, and such other information, materials and data that Purchaser may reasonably request, in order to determine whether or not the purchase of the Shares is a suitable investment in Purchaser's sole, absolute and unlimited discretion. Seller shall make available such information and materials during normal business hours during the Inspection Period for the purpose of conducting such investigation and inspection as Purchaser, in its sole discretion, deems proper. Such investigation, inspection and access shall not unreasonably interfere with the Seller's business operations. Any information and documentation obtained by Purchaser pursuant to this paragraph shall be kept and maintained by Purchaser as confidential and shall not be disclosed to any third party (other than Purchaser's partners, attorneys, employees, agents and consultants who are assisting Purchaser in the transaction described herein) without the express consent of Seller. If this transaction is not consummated for any reason, Purchaser shall immediately return all such information and documentation to Seller.

6.     Termination. If Purchaser determines, in Purchaser's sole judgment and discretion, that the Shares or the Company is unacceptable to Purchaser or unsuitable to Purchaser for any reason, Purchaser shall give Seller and Escrow Agent written notice of such fact on or before the end of the Inspection Period, whereupon this Agreement shall terminate and neither Seller nor Purchaser shall have any further rights or obligations hereunder. In the event that Purchaser terminates this Agreement prior to the expiration of the Inspection Period due to:

(a)     Purchaser's determination, in its reasonable judgment, that the Company and/or its pharmacy operation is not in compliance with all applicable rules and regulations, including but not limited to, failure to maintain any approval, license or permit required for the operation of the Company and/or its pharmacy operation, or the Company and/or its pharmacy operation is the subject of pending litigation or claims;

(b)     Purchaser's determination that the Company is not party to a contract in good standing with any of the following pharmacy benefits management and/or pharmacy network providers: CVS Caremark, Express Scripts, Medco, PBA/TriNet, Prime Therapeutics, Catamaran, Humana, OptumRx and Cigna; or if a party to such a contract, the Company is in breach or default thereunder; or

(c)     Seller's failure or refusal to promptly provide Purchaser with access to all the documentation related to the Company and its pharmacy operation which may be reasonably requested by Purchaser under Section 7.

Upon receipt by the Escrow Agent of written notice from Purchaser of termination under Section 6 for one of the reasons set forth in subsections a, b or c above, or as a result of a breach or default hereunder by Seller, then Escrow Agent shall release the Escrow Deposit to Purchaser. If Purchaser terminates for any reason other than as set forth in the foregoing sentence, then the Escrow Deposit shall be paid to Seller.

7.     Business in the Ordinary Course. From and after the date of this Agreement and until the Closing, Seller shall carry on its business and the business of the Company prudently and in the ordinary course consistent with past practices. Seller may continue to sell its inventory to its customers, in accordance with past practices and applicable regulations.

8.     Closing; Closing Documents. The consummation of the transaction described herein (the "Closing") shall take place at the offices of Purchaser, 4916 Main Street #100, Houston, Texas, 77002, at 10:00 o'clock a.m. local time on the date that is ten (10) days after the expiration of the Inspection Period (the "Closing Date"). The following shall occur at the Closing:

a.    The Shares, and all right, title and interest therein, shall be conveyed and assigned by Seller to Purchaser pursuant to an assignment document in a form as reasonably approved by Purchaser.

b.    Seller shall deliver its certificate representing ownership of the Shares to the Purchaser, so that the Company may cancel the Seller's ownership of the Shares on its books and records.

c.    Purchaser shall deliver the Purchase Price to Seller, adjusted as provided for herein.

d.    Seller shall deliver to Purchaser, or its designee (i) original versions of all entity formation and governing documents; (ii) all operating statements, balance sheets, bank ledgers, and financial records of the Company, in any form; and (iii) all files, documents, titles, certificates, permits, and governmental approvals which relate to the Company's business or any assets of the Company.

e.    At least one (1) business day before Closing, Purchaser and Seller shall agree upon a "Closing Settlement Statement" that shall include adjustments to the purchase price, which are known as of the Closing Date, as follows (the following adjustments shall apply only to the extent they are attributable to the Company):

(1)    All ad valorem, personal property, and other taxes and assessments owed by the Company with respect to the tax period in which the Closing Date occurs shall be apportioned as of the Closing Date between the Seller and the Purchaser.

(2)    A proportionate decrease in the purchase price in the aggregate amount of all unpaid debts, liabilities, and accounts payable of the Company existing as of the Closing Date;

(3)    A proportionate increase in the purchase price in the amount of any accounts receivable and other income not collected or received by the Company, but otherwise due and payable to the Company attributable to periods of time prior to the Closing Date (subject to adjustment as set forth below); and

(4)    Any other adjustments agreed to by Purchaser and Seller.

9.    Post-Closing Reconciliation.  No later than forty-five (45) days following the Closing Date, the Seller and Purchaser shall make a post-Closing settlement of all amounts set forth on the Closing Settlement Statement and those amounts described in Section 8(e) hereof.  Seller and Purchaser shall adjust the amount due to or from Seller or Purchaser based on the following: (i) any amount omitted from the Closing Settlement Statement that should have been reflected in the Closing Settlement Statement; (ii) any amount set forth on the Closing Settlement Statement which is found to be in error; (iii) any estimates upon which the line items in the Closing Settlement Statement were based are found to be incorrect; (iv) the actual amounts of any estimates are then known or determinable; (v) any pre-Closing Date accounts receivable credited to Seller in accordance with Section 8(e) in anticipation of collection are not received by the Company within said forty-five (45) day period; and (vi) such other adjustments as Seller and Purchaser may agree (the foregoing being referred to as the "Post-Closing Adjustments").

10.    Contracts and Agreements.  Prior to the expiration of the Inspection Period, Seller and Purchaser shall agree on a list of all contracts, agreements and commitments that Seller has either entered into or made, either individually (but which nonetheless may constitute binding legal obligations of the Company for whatever reason) or on behalf of the Company, with third parties.  At Closing, Seller and Purchaser shall enter into an amendment to this Agreement whereby such list of contracts and agreements is attached hereto and incorporated herein as Exhibit "A".  Seller represents and warrants to Purchaser as of the Closing Date that (i) there are no other contracts, agreements or commitments, oral or written, in existence which Seller has entered into either individually (but which nonetheless may constitute legally binding obligations of the Company for whatever reason), or on behalf of the Company, which are not listed

February 25, 2015

in Exhibit "A"; and (ii) Seller has provided the Purchaser with full and complete copies of such contracts and agreements, together with all amendments and modifications thereto.

11.  Accounts Payable and Accounts Receivable.  Prior to the expiration of the Inspection Period, Seller and Purchaser shall agree on a list of all accounts payable and receivable for the Company, including a statement of all taxes, fees, fines, assessments, or other sums owed to any governmental authority as of the Closing Date.  At Closing, Seller and Purchaser shall enter into an amendment to this Agreement whereby such list of accounts payable and receivable is attached hereto and incorporated herein as Exhibit "B".  As of the Closing Date, Seller represents and warrants to Purchaser that there are no other debts, liabilities, or accounts receivable or payable that relate to the Company which are not listed in Exhibit "B".  The Company reserves the right to contest or dispute the validity or any other matter under any such contracts and agreements, as well as any charges, costs, fees, or other items included in Exhibit "A" or Exhibit "B", with the vendor or other party to said agreement.

12.  Indemnity.  **Seller agrees to indemnify, defend, and hold the Purchaser and the Company harmless from and against any and all losses, claims, damages, costs, fines, penalties and expenses of every nature (including, without limitation, court costs and attorneys' fees) incurred by the Purchaser or the Company arising out of (i) any contracts, agreements, obligations, liabilities, or commitments which Seller incurred, executed or entered into, either individually (but which nonetheless constitute legally binding obligations of the Company), or on behalf of the Company, which are not listed in Exhibit "A"; (ii) any liability of the Company to any governmental authority for any taxes, fees, fines, assessments, or other unpaid sums arising prior to the Closing Date, (iii) any accounts payable or other debts of the Company, which were initiated, undertaken, assumed or otherwise created by Seller on behalf of, or for the Company, which are not listed in Exhibit "B"; (iv) a breach of this Agreement by Seller; or (v) the breach or inaccuracy of any warranties or representations made by Seller hereunder.**

13.  Representations and Warranties.

13.1.  Seller's Representations and Warranties.  Seller warrants and represents to the Purchaser as of the Closing Date, as follows:

13.1.1.  Seller has the full power and authority to enter into this Agreement and perform his respective obligations hereunder.

13.1.2.  Seller represents and warrants that (a) it is the sole and exclusive owner of the Shares, free and clear of all liens, charges, pledges, encumbrances, security interests or rights of third parties; (b) it has full power and authority to enter into this Agreement and to sell and convey the Shares upon the terms provided in this Agreement to the Purchaser, (c) there are no outstanding option rights, rights of first refusal or other arrangements relating to the Shares, and Seller has not sold, granted, transferred or otherwise assigned to any person, entity or any party any right, title or interest in or to the Shares; (d) Seller and Mary McKinney are the owners of one hundred percent (100%) of the common stock of the Company, and there are no other shareholders; (e) this Agreement constitutes the valid, binding and enforceable obligation of Seller; and (f) the execution and delivery by Seller of this Agreement and the performance of its respective obligations hereunder do not violate, conflict with, invalidate, cancel, or interfere with, or constitute a default under any contract, agreement or court order to which Seller is a party or is bound.

13.1.3.  No representation or warranty by Seller in this Agreement, or information contained in any statement or certificate furnished by Seller or required to be furnished to any other party pursuant to this Agreement contains or will contain any untrue statement of a material fact, or omits or will omit to state a material fact required to be stated therein or necessary in order to make the statements contained therein not materially untrue.

13.1.4   All bills and other payments then due and owing from the Company with respect to its business, operations, or assets will be paid or satisfied prior to or at Closing.

13.1.5   There is no action, proceeding, suit or investigation pending or being prosecuted to which Seller or the Company is a party in any court or by or before any governmental entity affecting the Company, or the ownership, operation, use or condition of any assets of the Company. To Seller's knowledge, no action, suit, proceeding or investigation is contemplated or threatened.

13.1.6   Neither Seller nor the Company has (i) made a general assignment for the benefit of creditors, (ii) filed any voluntary petition in bankruptcy or suffered the filing of an involuntary petition by their creditors, (iii) suffered the appointment of a receiver to take possession of all or substantially all of their assets, (iv) suffered the attachment or other judicial seizure of all, or substantially all, of their assets, (v) admitted in writing its inability to pay its debts as they come due, or (vi) made an offer of settlement, extension or composition to its creditors generally.

13.1.7   Neither Seller nor the Company has received any written notice from, and is otherwise aware of no grounds for, any governmental agency requiring the correction of any condition with respect to the Company, its business or any of its assets, by reason of a violation of any applicable federal, state, county or municipal law, code, rule or regulation, which has not been cured or waived, and neither Seller nor the Company have received any written notice of an intention to revoke any governmental approval, certificate, plan, license, or permit issued in connection with the business of the Company or its assets.

13.2.   Purchaser Representations and Warranties.  The Purchaser represents and warrants to Seller as follows:

13.2.1.   The Purchaser has full power and authority to enter into this Agreement and to perform all of its obligations hereunder and by proper action has duly authorized the execution and delivery of this Agreement and the performance of its obligations hereunder.

13.2.2.   The execution and delivery by the Purchaser of this Agreement and the performance of its obligations hereunder do not violate, conflict with, invalidate, cancel or interfere with, or constitute a default under any contract or other written agreement of the Purchaser, or any permit, regulation, order, law or rule applicable to the Purchaser.

13.2.3.   The Purchaser is acquiring the Shares without notice of any adverse claim to such interests.

13.3.4   In making the decision to enter into this Agreement and to consummate the transactions contemplated hereby, the Purchaser has relied on the representations, warranties, covenants and agreements of Seller as set forth herein, and no other representations, warranties, covenants and agreements.

14.   Holdback and Escrow.  At Closing, Seller, Purchaser and the Escrow Agent (defined below) shall enter into an escrow agreement (the "Escrow Agreement"), whereby the sum of Ten Thousand and no/100 Dollars ($10,000.00) out of the funds due to Seller hereunder (the "Holdback") shall be held by the Escrow Agent.  The Holdback shall serve as an escrow fund for payment and satisfaction of (i) the Seller's indemnification obligations under Section 12 hereof; (ii) the payment of any claims, obligations, debts, or liabilities that arose or accrued prior to the Closing Date and were not disclosed or otherwise accounted for by Seller and Purchaser; and (iii) payment of any Post-Closing Adjustments; and shall be held and applied in accordance with the terms of the Escrow Agreement.  If on the date that is six (6) months after the Closing Date, no claims have been timely made by the Purchaser under the Escrow Agreement, all funds remaining in the Holdback shall be delivered by the Escrow Agent to the Seller.

February 26, 2015

15.     Survival. The representations, warranties, covenants and all other provisions contained in this Agreement shall survive for a period of four (4) years after the date hereof.

16.     Commissions. The parties hereto mutually represent and warrant that they have not dealt with any agent, broker or finder in connection with this Agreement or the purchase and sale hereunder, and each agrees to defend, indemnify and hold the other party harmless from any breach of the parties' respective representations and warranties made pursuant to this Section 16.

17.     Notices. All notices, requests, or other communications given under this Contract shall be deemed sufficiently given if in writing and delivered personally, by telecopy, or by recognized overnight delivery service, and shall be effective (i) on the date delivered by hand delivery or telecopy (provided such telecopy is received by the recipient's telecopy machine on a weekday before 5:00 p.m., Houston, Texas time, and a copy is sent by another permitted method of delivery, or (ii) one (1) day following the date sent by recognized overnight delivery service. For purposes of notice, the addresses of the parties shall be as follows:

To Seller:          Sheryl A. Symonette
                    4103 Sablemist Ct.
                    Houston TX 77014-2032
                    Telecopy No.: _____

To Purchaser:       Bradley L. Madrid
                    4916 Main Street #100
                    Houston, TX  77002
                    Telecopy No.: _____

Any party may change its notice address by written notice to all other parties given in accordance with this Section.

18.     Miscellaneous.

18.1.   This Agreement is made under and shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to its conflict of laws provisions.

18.2.   Neither this Agreement nor any provision hereof may be modified, waived, amended, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of the modification, waiver, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

18.3.   The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

18.4.   This Agreement, along with the other documents and agreements to be executed which are attached as exhibits hereto, contains the full and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein written, and this Agreement supersedes all other agreements concerning the subject matter.

18.5.   This Agreement may not be assigned by any party hereto without the prior written consent of all other parties, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, Purchaser may assign this Agreement to an entity owned by, controlled by or under common control or ownership of Purchaser.

18.6.   Time shall be of the essence with respect to all of the obligations of the parties hereunder.

February 25, 2015

18.7. This Agreement shall not be recorded or filed and any attempted recordation or filing shall be void and shall constitute a default by the party attempting such recording or filing.

18.8. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and permitted assigns.

18.9. This Agreement may be executed in one or more counterparts.

18.10. After the Closing, each of the parties hereto will from time to time, at the request of any other party and without further cost or expense to the requesting party, and in each case within ten (10) days of delivery of the requesting party's request, execute, acknowledge, deliver and perform such other instruments of conveyance and transfer, and take such other actions as the requesting party may reasonably request, to implement the transactions contemplated hereby and to vest in the Purchaser exclusive legal title and possession and control of the Seller Membership Interest, and the requesting party shall deliver to the Purchaser all original copies of all related documents relating to the Seller Membership Interest being acquired. If any party shall violate or breach this provision in any manner, then the party in breach or violation shall be conclusively deemed to have materially breached this Agreement.

18.11. This Agreement, as well the other documents and agreements executed in connection with this Agreement, have been negotiated by the parties hereto and their respective legal counsel, and legal or equitable principles that might require the construction of this Agreement, or the other documents and agreements executed in connection herewith, or any provisions thereof for or against the party drafting this Agreement (or the other documents and agreements executed in connection herewith) will not apply in any construction or interpretation of this Agreement (or the other documents and agreements executed in connection herewith).

18.12. If any term or provision of this Agreement is found to be invalid or illegal or incapable of being enforced by any rule of law or public policy, all other provisions and conditions of this Agreement shall nevertheless be legally binding and shall remain in full force and effect. Upon the determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto agree that such provision shall be amended so as to be legal and enforceable and as nearly as possible to give effect to the intentions of the parties hereto.

February 25, 2015

Purchase and Sale Agreement - Sheryl Symonette        - 7 -

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**"SELLER":**

Sheryl A. Symonette

**"PURCHASER":**

Bradley L. Madrid

## EXHIBIT "A"

### Contracts, Agreements, Commitments

[to be added prior to expiration of Inspection Period]

## EXHIBIT "B"

Accounts Payable; Liabilities

[to be added prior to expiration of Inspection Period]

Purchase and Sale Agreement - Sheryl Symonette          - 10 -

February 25, 2015

REQUEST FOR DISBURSEMENT

June 29, 2015

VIA EMAIL AND
FAX TO (832) 460-3263

Jeb Brown
Attorney at Law
3100 Edloe Street, Suite 220
Houston, TX 77027

Dear Jeb:

Reference is made to those certain Escrow Agreements dated as of February 27, 2015 among Bradley L. Madrid ("Purchaser"), Mary McKinney and Sheryl Symonette (collectively, "Sellers"), and Jeb Brown, as escrow agent (the "Escrow Agent"). Capitalized terms shall have the same meaning herein as in the Escrow Agreements.

Purchaser hereby certifies that it makes no claim based on any of the matters for the Escrow Funds were established and requests disbursement of all Escrow Funds to the Sellers in the amount of Twenty Thousand Dollars ($20,000.00) in the manner described below:

**Form of Disbursement:**      a. Check to Sheryl Symonette in the amount of Ten Thousand Dollars ($10,000.00), and

b. Check to Mary McKinney in the amount of Ten Thousand Dollars ($10,000.00).

Very truly yours,

By: _____

Bradley L. Madrid, Purchaser



**Healthy Pharmacy Solutions, Inc.**

INCORPORATED UNDER THE LAWS OF THE STATE OF TEXAS
2012

NUMBER
001

SHARES

AUTHORIZED: 1,000 SHARES COMMON STOCK PAR VALUE $0.01 EACH

This Certifies that *Mary Bell McKinney* is the registered holder of *1000 J* Shares of the above named Corporation, transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed this *First* day of *August* A.D. *2013*

Secretary

President

603.040

For Value Received _I_ hereby sell, assign and transfer
unto _BRad Madrid_
_1000_ Shares
represented by the within Certificate, and do hereby
irrevocably constitute and appoint
_Jeb Brown_ Attorney
to transfer the said Stock on the books of the within named
Corporation with full power of substitution in the premises.
Dated _2 / 27 / 15_ .
In presence of

NOTICE. THE SIGNATURE OF THIS ASSIGNMENT
MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE
FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITHOUT
ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATEVER.



Healthy Pharmacy Solutions, Inc.

INCORPORATED UNDER THE LAWS OF THE STATE OF TEXAS
2012

AUTHORIZED: 1,000 SHARES COMMON STOCK PAR VALUE $0.01 EACH

SHARES

NUMBER

002

This Certifies that _____ is the registered holder of _____ Shares of the above named Corporation, transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed this _____ day of _____ A.D. 2013

_____
Secretary

_____
President

603.042

*For Value Received* I *hereby sell, assign and transfer unto* Bradley L. Madrid

1000 *Shares*

*represented by the within Certificate, and do hereby irrevocably constitute and appoint*

Jeb Brown *Attorney*

*to transfer the said Stock on the books of the within named Corporation with full power of substitution in the premises.*

*Dated* February 27, 2015

*In presence of*

NOTICE. THE SIGNATURE OF THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATEVER.