# SALES REPRESENTATION AGREEMENT

THIS SALES REPRESENTATION AGREEMENT (the "Agreement"), effective as of this first day of June 2014 (the "Effective Date"), by and between Intuitive Healthcare Solutions, LLC, an entity (or individual) domiciled in the State of Texas ("<u>Sales Representative</u>"), and PHARMS, LLC, a Texas limited liability company ("<u>Company</u>").

## RECITALS:

A.  Company is engaged in the business of providing managing services to pharmacy establishments (each, a "<u>Client</u>"), including business development, sales and marketing and other activities; and

B.  Company desires to retain the services of Sales Representative to help market Client's services, including but not limited to, Clients' pharmaceutical products; and

C.  Sales Representative has experience and skill in the area of marketing of pharmaceutical products; and

D.  Company desires to have the benefit of Sales Representative's services, and Sales Representative desires to provide those services to Company.

## AGREEMENT

NOW, THEREFORE, in recognition of the above Recitals and in consideration of the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  <u>Sales Representation Services</u>.  Company agrees to engage the services of Sales Representative, and Sales Representative agrees to provide such services upon the terms and conditions hereinafter set forth, for a term of one (1) year from the date hereof (the "<u>Initial Term</u>").  Upon the expiration of the Initial Term, the Agreement may be renewed for successive terms upon agreement of the parties.  During the Initial Term and any renewal terms, Sales Representative shall provide time and effort toward marketing of Clients' pharmaceutical products, which shall include (a) direct marketing to licensed prescribers authorized to prescribe prescription drugs, and (b) general promotion and marketing of Company's consulting and management services to the healthcare community as may be reasonably requested by the Company (collectively, "<u>Sales Activities</u>").  Sales Representative shall provide Sales Activities on a regular basis as requested by Company.  Sales Representative shall not be subject to the direct supervision of the Company.  All Sales Activities rendered by Sales Representative shall be conducted in its capacity as an independent contractor and Sales Representative shall not be considered an agent of the Company for any and all actions undertaken that are outside the course and scope of this Agreement and/or strictly prohibited by this Agreement.

GOVERNMENT
EXHIBIT
620
4:18-CR-368

Solely in connection to the rendering of the Sales Activities, the Sales Representative may use certain property of the Company, including Company's copyrights, trade secrets and trademarks (collectively, the "Company Property"). The use of the Company Property by Sales Representative shall be nonexclusive and nontransferable. All Sales Activities, whether or not involving the use of the Company Property, shall, at all times, comply with the ethical and legal requirements to which Company is subject. Sales Representative acknowledges the receipt of the Company Code of Conduct and agrees to comply with all the terms thereof. Sales Representative shall be solely responsible for any and all expenses incidental to the Sales Activities, including but not limited to, activities related to printing, phone/fax, travel, meal and lodging.

2. Compensation. Company agrees to pay to Sales Representative, as full compensation hereunder, a sum equal to fifty percent (50%) of Gross Collections less Pharmacy Cost as defined in Exhibit "A" herein. Pharmacy Cost is subject to change at the sole discretion of the Company subject to thirty (30) days written notice to the Sales Representative. Payment shall be initiated on the fifteenth (15th) day of the calendar month following the month reimbursement was adjudicated with the insurance carrier/patient. In the event the fifteenth (15th) day of the month falls on a weekend or legal holiday, payment shall be initiated on the last working day prior to the fifteenth (15th) day of the month.

3. Patient Referrals. Sales Representative shall not offer, make, solicit, or receive any payment, commission or fee to, or enter into any business arrangement with, any healthcare provider which will result in healthcare provider receiving any remuneration in return for referring an individual to any Client.

4. Termination. The Initial Term shall terminate on its date of expiration or earlier, at the election of either party, with or without cause, upon ten (10) days prior written notice to the other party.

5. Effect of Termination. The Company shall retain the rights associated with sole ownership of the Company Property at all times. Upon termination, Sales Representative shall halt all current use of the Company Property, including arranging for the disconnection and discontinuance of any phone services rendered on behalf of Company, and shall be prohibited from any further use of the Property.

6. Relationship between the Parties. Sales Representative and Company understand that the relationship established hereunder is that of an independent contractor and not that of an employee/employer relationship. Company shall not be responsible for any withholding or liability for income tax, social security, unemployment insurance, medical insurance, pension plans or other benefits on the basis of such relationship.

7. Responsibility of Each Party. At all times during the term of this Agreement, Sales Representative shall use its best commercially reasonable efforts to provide Sales Activities. Neither party to this Agreement shall be liable for any claim, loss, damage or expense that the other party or its customers or clients may sustain or incur by reason of any act

2

or omission of the other party, or in any way related to the relationship established hereunder. Specifically, (a) the Company shall not be liable for any claim, loss, charge or expenses resulting from any and all actions undertaken, representations made or any other act or omission of Sales Representative that falls outside the course and scope of this Agreement and (b) Sales Representative shall not be liable for any claim, loss, change or expense resulting from any medical treatment provided to the patients of Clients. Additionally, neither party shall, at all times during the term and after the expiration or termination of this Agreement, make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame or disparage the business reputation and practices of the other party, including any of the parties' owners, members, shareholders, directors, officers or employees.

8. <u>Confidentiality</u>. In the course of the engagement pursuant to this Agreement, Sales Representative may come in contact or become familiar with information which Company, its shareholders, directors, officers, employees, affiliates or Clients may consider proprietary and confidential, including, but not limited to, any oral, written, graphic or machine-readable information which relates to any protected health information, or individually identifiable health information, concerning a patient (other than pursuant to the requirements of the relevant state and federal privacy regulations), business plans and opportunities, business and marketing models, recipes as well as related trade secrets owned and developed by the Company or its Clients, financial structures and methodologies, inventions, processes, designs, drawings, client and customer lists, and agreements with third parties (collectively, the "<u>Confidential Information</u>"). Sales Representative shall keep in confidence all Confidential Information and shall not disclose it to any third party without the prior written approval of Company. Sales Representative shall take all reasonable measures to protect the secrecy, and avoid disclosure or use, of the Confidential Information in order to prevent it from falling into the public domain or the possession of any third parties. Confidential Information furnished by Company to Sales Representative shall be deemed the property of Company and, within five (5) business days upon written request from Company, Sales Representative shall return to Company all such Confidential Information received in tangible form. This provision shall survive any modification, expiration or termination of this Agreement.

9. <u>Compliance with All Laws and Regulations</u>. When performing duties under Section 1 of this Agreement, Sales Representative shall comply with all federal, state and local laws, rules and regulations. In the event that Sales Representative violates any law, rule or regulation, Sales Representative shall immediately notify Company of such violation and shall fully cooperate with Company to take all steps necessary and lawful to rectify such violation.

10. <u>Arbitration</u>. Any controversy, dispute, or disagreement arising out of or relating to this Agreement or the breach of this Agreement shall be settled by final and binding arbitration, which shall be conducted in Houston, Texas in accordance with the American Arbitration Association, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. Damages shall be limited to actual damages

3

only and shall exclude without limitation lost profits and punitive, exemplary, consequential, mental-anguish, pain-and-suffering, and intangible damages.

11. Miscellaneous.

(a) Additional Acts. Each party shall deliver or cause to be delivered at such times and places as shall be reasonably agreed on, such additional instruments as the other may reasonably request for the purpose of carrying out this Agreement.

(b) Legal Fees and Costs. In the event either party elects to incur legal expenses to enforce or interpret any provision of this Agreement, the prevailing party will be entitled to recover such legal expenses, including, without limitation, attorneys' fees, costs and necessary disbursements, in addition to any other relief to which such party shall be entitled.

(c) Choice of Law and Venue. The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Texas, and that the state or federal courts located in Harris County, Texas shall be the exclusive courts of jurisdiction and venue for any litigation, special proceeding or other proceeding as between the parties that may be brought, or arise out of, in connection with or by reason of this Agreement.

(d) Benefit/Assignment. Subject to provisions herein to the contrary, this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors and assigns; provided, however, that no party may assign this Agreement without the prior written consent of the other party.

(e) Waiver of Breach. The waiver by either party of breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

(f) Notice. Any notice, demand or communication required, permitted or desired to be given hereunder shall be deemed effectively given when personally delivered, mailed by prepaid certified mail, return receipt requested, or electronic mail, addressed as follows:

| | |
|---|---|
| Sales Representative: | Intuitive Healthcare Solutions, LLC |
| Address: | 15807 CR 1870 |
| | Lubbock, TX 79424 |
| Email: | southardconsulting@gmail.com |
| Attn: | Chad Southard |
| Company: | PHARMS, LLC |
| Address: | 4916 Main Street, Suite 110 |
| | Houston, Texas 77002 |
| Email: | dan@pharmsmgmt.com |
| Attn: | Dejan Milosevic, Manager |

INTUITIVE_0002447

GX620.004   DOJ_18CR368-0143729

or to such other address, and to the attention of such other person or officer as any party may designate, with copies thereof to the respective counsel thereof as notified by such party.

(g) <u>Entire Agreement/Amendment</u>. This Agreement supersedes all previous contracts, and constitutes the entire agreement of whatsoever kind or nature existing between or among the parties respecting the within subject matter and no party shall be entitled to benefits other than those specified herein. This Agreement may be executed in two or more counterparts, each and all of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

SALES REPRESENTATIVE:

_____
Name: Chad Southard, Intuitive Healthcare Solutions, LLC
Title: Manager

COMPANY:

PHARMS, LLC

By:_____
Name:_____
Title:_____

5

# EXHIBIT "A"

| Gross Collections | Pharmacy Cost |
|---|---|
| $ 201 - $ 500 | $ 150 |
| $ 501 - $ 1,000 | $ 200 |
| $ 1,001 - $ 4,500 | $ 450 |
| $ 4,501 - $ 8,000 | $ 1,000 |
| $ 8,001 or more | $ 2,000 |

**No commission shall be paid on collections less than $ 200.**

Definitions:

"Gross Collections" means the approved reimbursement amount collected by a Client from a third-party private insurance payor.

"Pharmacy Cost" means the cost in US dollars stated above.

6

# PHARMS, LLC

## CODE OF COMPLIANCE
## FOR
## INDEPENDENT PHARMACY SALES REPRESENTATIVES

## JUNE 1, 2014

INTUITIVE_0002450

GX620.007                    DOJ_18CR368-0143732

## PHARMS, LLC

### Code of Compliance
### for
### Independent Pharmacy Sales Representatives

This Code of Compliance (the "Code") for Independent Pharmacy Sales Representatives ("Sales Representatives") has been developed for the purpose of assuring that PHARMS, LLC (the "Company") and its clients maintain compliance with all applicable federal and state laws and regulations. As the regulatory environment is in a constant state of flux, the Code is subject to change by the Company.

A.  **Goals.**

As a service provider to licensed healthcare providers, including pharmacies, medical practices and other healthcare services, the Company seeks to create a corporate culture with high levels of ethical, business and healthcare practices. It is the goal of the Company to ensure all of its Sales Representatives' activities comply with all applicable federal and state laws.

B.  **Purpose of this Code.**

This Code seeks to establish strict regulatory and compliance parameters to ensure that the Sales Representatives' activities are conducted with high ethical standards, complete transparency, and in compliance with all applicable federal and state laws and regulations.

C.  **Fraud, Waste, and Abuse.**

All Sales Representatives shall conduct themselves in full compliance with all applicable federal and state laws, rules, and regulations, including but not limited to, the federal anti-kickback laws (42 U.S.C. Section 1320a-7b) and Stark law (42 U.S.C. Section 1395nn), the regulations promulgated thereunder, and equivalent state laws. Specifically, Sales Representatives shall not pay remuneration, in cash or in kind, to any person or entity in return for referrals, ordering of clinical services, or the writing of prescriptions, or participate in any other activities that may violate the anti-kickback laws.

D.  **Sales Representatives Access Limitations.**

No Sales Representative may have access to any *protected health information*, as defined in 45 C.F.R. Part 164, or *individually identifiable health information*, as defined in 45 C.F.R. Parts 160 and 164 of any patient of the Company's clients.

E. <u>Physicians</u>.

All actively practicing physicians and physician office personnel, including but not limited to, pharmacists, nurses, receptionists, and physician assistants, as well as any individual with a financial relationship with a practicing physician or office personnel, are prohibited from providing Sales Representative services to such physician's office.

F. <u>Limitations on Personal Prescriptions</u>.

Prescriptions written for Sales Representatives or immediate family members of Sales Representatives may be dispensed through a Company's client subject to the following limitations:

1) A Sales Representative must pay the full co-payment amount at the point-of-service;

2) Earned compensation will not be paid for prescriptions filled for a Sales Representative or immediate family members of a Sales Representative.

"Immediate family member" is defined as a "husband or wife; birth or adoptive parent, child or sibling; stepparent, stepchild, stepbrother, or stepsister; father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law; grandparent or grandchild; and spouse of a grandparent or grandchild."

G. <u>Advertising</u>.

Sales Representatives may not advertise, by any means, any aspect of the Company (or Company's clients) business without prior approval from the Company.

H. <u>Marketing</u>.

*Approval for Marketing Material*

Marketing materials implemented by the Company or its clients and any interactions with healthcare professionals related to marketing must meet all requisite elements of the U.S. Food and Drug Administration ("<u>FDA</u>") and Federal Trade Commission marketing and advertising laws as well as the ethical and legal guidelines provided by the Pharmaceutical Research and Manufacturers of America Code, as promulgated by the relevant laws and regulations. Any promotional materials, including for example, brochures, pamphlets and advertisements must appropriately label any and all drug products and must accurately describe any patented or trademarked products. Sales Representatives shall not create, modify, or distribute marketing materials without the prior approval of the Company.

*Content of Marketing Material*

Any and all claims made in marketing materials provided to healthcare professionals by or on behalf of the Company must be accurate, only make substantiated claims, reflect the balance between risks and benefits, and be consistent with all other FDA requirements. The marketing materials shall discuss the expertise and capabilities of the pharmacy. A Sales Representative must not make any claims regarding the efficacy of pharmacy products of the Company's clients. Anything provided to a prescribing healthcare provider is considered marketing and must be approved by the Company.

I.  <u>Effective Date</u>.

This Code is effective June 1, 2014.

or to such other address, and to the attention of such other person or officer as any party may designate, with copies thereof to the respective counsel thereof as notified by such party.

(g) <u>Entire Agreement/Amendment</u>. This Agreement supersedes all previous contracts, and constitutes the entire agreement of whatsoever kind or nature existing between or among the parties respecting the within subject matter and no party shall be entitled to benefits other than those specified herein. This Agreement may be executed in two or more counterparts, each and all of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

SALES REPRESENTATIVE:

*[signature]*
Name: Chad Southard, Intuitive Healthcare Solutions, LLC
Title: manager

COMPANY:

PHARMS, LLC

By: *[signature]*
Name: DEJAN MILOSEVIC
Title: MANAGER

5